# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Commonwealth of Pennsylvania,   )
     )
     Plaintiff,   )
     )
     v.   )
     )
Navient Corporation and Navient   )
Solutions, LLC,   )
     )
     Defendants.   )
     )

**NO. 3:17-cv-1814**

**JUDGE MARIANI**

**ELECTRONICALLY FILED**

## NAVIENT DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

Daniel T. Brier
Donna A. Walsh
MYERS BRIER & KELLY, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Jennifer Levy
Michael Shumsky
Andrew Pruitt
Patrick Brown
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005

*Counsel for Defendants Navient Corporation and Navient Solutions, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................. 1

LEGAL STANDARD ............................................................................ 4

FACTUAL BACKGROUND ................................................................. 4

    A.    FEDERAL EDUCATION LOANS ........................................ 4

    B.    PRIVATE EDUCATION LOANS ........................................ 7

ARGUMENT ........................................................................................ 9

I.    THE CFPA DOES NOT PERMIT STATE ATTORNEYS GENERAL TO FILE COPYCAT CLAIMS AFTER THE CFPB HAS FILED A MATERIALLY INDISTINGUISHABLE LAWSUIT. ................................. 9

II.    FEDERAL LAW PREEMPTS THE COMPLAINT'S STATE-LAW CLAIMS. ....................................................................................... 15

    A.    The HEA Preempts The Complaint's Federal Loan Servicing Claims. ................................................................................. 15

    B.    The Complaint's State-Law Claims Conflict With Congress's Purposes and Objectives. .................................................... 19

        1.    The Complaint's State-Law Claims Undermine Congress's Goal Of Nationwide Uniformity In Federal Loan Programs. ....................................................... 20

        2.    The Complaint's State-Law Claims Undermine TILA's Careful Balance Of Disclosure Rules For Private Loan Origination. ............................................................. 20

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNFAIR OR DECEPTIVE PRACTICES UNDER THE UTPCPL OR THE CFPA........ 22

    A.    The Attorney General Lacks the Authority to Bring A UTPCPL Claim To Enjoin Conduct That Ceased A Decade Ago..................... 22

B.      The Complaint's Origination Claim Fails To Allege
        "Deceptive" Or "Unfair" Conduct. ...................................................... 24

C.      The Attorney General Is Barred By Laches From Claiming That
        Lending To Commonwealth-Approved Schools Is "Unfair.".............. 25

D.      The Commonwealth's Federal-Loan Servicing Claims Do Not
        Allege "Deceptive" Conduct Because They Do Not Even
        Allege Failure to Disclose Material Facts. .......................................... 26

E.      The Commonwealth Cannot Sustain A UTCPCL Action On
        The Basis of Navient's Mass Marketing Statements. ......................... 29

F.      The UTCPCL Does Not Make Mistakes Or Errors Actionable
        As "Unfair" Or "Deceptive" Practices. ............................................... 29

CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Algiori v. Metro. Life Ins. Co.,*
 879 A.2d 315 (Pa. Super. Ct. 2005)................................................................. 30

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007).................................................................................................4

*Bible v. United Student Aid Funds, Inc.,*
 799 F.3d 633 (7th Cir. 2015) ........................................................................... 4, 18

*Brewer v. Andrews,*
 No. 3415 EDA 2014, 2015 WL 6681088 (Pa. Super. Ct. Aug. 21,
 2015) ....................................................................................................................... 27

*Brooks v. Sallie Mae, Inc.,*
 No. FSTCV096002530S, 2011 WL 6989888 (Conn. Super. Ct.
 Dec. 20, 2011).......................................................................................................... 18

*Burtch v. Milberg Factors, Inc.,*
 662 F.3d 212 (3d Cir. 2011)...................................................................................4

*Cahall v. Ohio Cas. Ins. Co.,*
 No. CIV.A. 14-1246, 2015 WL 4407563 (W.D. Pa. July 20, 2015)................. 27

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
 511 U.S. 164 (1994)........................................................................................ 1, 10, 4

*CFPB v. Navient Corp., et al.,*
 No. 3:17-CV-101 (M.D. Pa., filed Jan. 18, 2017) ..................................... 1, 10, 22

*Chae v. SLM Corp.,*
 593 F.3d 936 (9th Cir. 2010) ........................................................... *passim*

*Commonwealth v. Folcroft Landfill Corp.,*
 1 Pa. Commw. 356 (1971) ................................................................................... 26

*Commonwealth v. Golden Gate Nat'l Senior Care LLC,*
 158 A.3d 203 (Pa. Commw. Ct. 2017) ....................................................... 28, 29

*Conquest v. WMC Mortg. Corp.*,
   247 F. Supp. 3d 618 (E.D. Pa. 2017) .................................................25, 27

*Davis v. Michigan Dept. of Treasury*,
   489 U.S. 803 (1989) ................................................................. 2, 10

*DiCicco v. Willow Grove Bank*,
   No. CIV.A. 02-7855, 2004 WL 2150980 (E.D. Pa. Sept. 21, 2004) ................. 25

*Duncan v. Walker*,
   533 U.S. 167 (2001) .................................................................... 11

*Ford Motor Credit Co. v. Milhollin*,
   444 U.S. 555 (1980) .................................................................... 20

*Fry v. Napoleon Cmty. Sch.*,
   137 S. Ct. 743 (2017) ................................................................... 19

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000) .................................................................... 19

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ..................................................................... 19

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) ........................ 23

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012) .......................................................... 4, 30

*Johnson v. McCrackin-Sturman Ford, Inc.*,
   527 F.2d 257 (3d Cir. 1975) ........................................................... 21

*Koch v. SEC*,
   793 F.3d 147 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 1492
   (2016) ................................................................................ 15

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) .................................................................... 15

*Linsley v. FMS Inv. Corp.*,
   No. 3:11CV961 VLB, 2012 WL 1309840 (D. Conn. Apr. 17,
   2012) ................................................................................. 18

*McCauley v. Home Loan Inv. Bank, F.S.B.,*
  710 F.3d 551 (4th Cir. 2013) ................................................................ 15

*Pittsburgh & Lake Erie R.R. v. Ry. Labor Execs. Ass'n,*
  491 U.S. 490 (1989) ............................................................................. 13

*Riegel v. Medtronic, Inc.,*
  552 U.S. 312 (2008) ............................................................................. 16

*Schnell v. Bank of New York Mellon,*
  828 F. Supp. 2d 798 (E.D. Pa. 2011) ................................................... 24

*Seats v. Hooper,*
  No. CIV.A. 96-3244, 1999 WL 674321 (E.D. Pa. Aug. 19, 1999) ................... 25

*In re Sheppard,*
  299 B.R. 753 (Bankr. E.D. Pa. 2003) ................................................... 24

*Stahl v. First Pa. Banking & Tr. Co.,*
  411 Pa. 121, 191 A.2d 386 (1963) ....................................................... 26

*Taggart v. Wells Fargo Home Mortg., Inc.,*
  563 F. App'x 889 (3d Cir. 2014) (per curiam) ..................................... 24

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,*
  484 U.S. 365 (1988) ....................................................................... 10, 13

*Walton v. Eaton Corp.,*
  563 F.2d 66 (3d Cir. 1977) (en banc) ................................................. 12

**Statutes**

24 Pa. Cons. Stat. § 6503 ....................................................................... 26

73 Pa. Cons. Stat. § 201-4 ..................................................................... 23

73 Pa. Cons. Stat. § 201-8 ..................................................................... 23

73 Pa. Cons. Stat. § 201-4.1(b) ............................................................. 23

12 U.S.C. § 5511(a) ............................................................................... 14

12 U.S.C. § 5511(b) ................................................................................. 1

12 U.S.C. § 5531 .................................................................... 15

12 U.S.C. § 5536(a)(1)(B) ....................................................... 15

12 U.S.C. § 5552 .................................................................2, 14

12 U.S.C. § 5552(a) ....................................................... 9, 10, 12, 13

12 U.S.C. § 5552(b) ........................................................... 12, 13

12 U.S.C. § 5552(b)(1)(A) ............................................... 1, 10, 11

12 U.S.C. § 5552(b)(1)(C) ......................................................... 11

12 U.S.C. § 5552(b)(2)(A) ................................................... 1, 11

15 U.S.C. § 1601 *et seq.* ...........................................................2

15 U.S.C. § 1601(a) ...................................................................8

15 U.S.C. § 1604 ......................................................................8

15 U.S.C. § 1631-32 .................................................................8

15 U.S.C. § 1664 ......................................................................8

15 U.S.C. § 1638(e)(5)(C) ..........................................................9

20 U.S.C. § 1001 *et seq.* .......................................................2,4,

20 U.S.C. § 1077(a)(2)(h) ..........................................................6

20 U.S.C. § 1083 .................................................................... 26

20 U.S.C. § 1083(a)(11) .............................................................6

20 U.S.C. § 1083(b)(6) ..............................................................6

20 U.S.C. § 1083(e)(1) ..............................................................6

20 U.S.C. § 1083(e)(2) ..............................................................7

20 U.S.C. § 1087a *et seq.* .........................................................5

20 U.S.C. § 1087e ................................................................... 27

20 U.S.C. § 1087(e)(d)(1)(D)-(E). ..................................................................6

20 U.S.C. § 1087e(p) .............................................................................. 6, 7

20 U.S.C. § 1092(a)............................................................................... 7, 21

20 U.S.C. § 1092(c)...................................................................................7

20 U.S.C. § 1098g ........................................................................... *passim*

28 U.S.C. § 2403(b) ................................................................................ 13

31 U.S.C. § 3730 ..................................................................................... 13

## Rules & Regulations

12 C.F.R. § 226 ........................................................................................9

12 C.F.R. § 226 App. G ............................................................................9

12 C.F.R. § 226 App. H ........................................................................ 8, 9

12 C.F.R. § 226 Supp. I ........................................................................ 8, 9

12 C.F.R. § 226.17 ...................................................................................8

12 C.F.R. § 226.17(b)...............................................................................8

12 C.F.R. § 226.17(c)(1) ..........................................................................8

12 C.F.R. § 226.18 ...................................................................................8

12 C.F.R. § 226.18(b)...............................................................................8

12 C.F.R. § 226.18(e)...............................................................................8

12 C.F.R. § 226.18(f) ...............................................................................8

12 C.F.R. § 226.18(k)-(l) .........................................................................8

12 C.F.R. § 226.24 ....................................................................................8

12 C.F.R. § 226.34(a)(4) ........................................................................ 21

12 C.F.R. § 226.46-48 .............................................................................9

12 C.F.R. § 226 Supp. I, Cmt. 17(i)(1) ...................................................8

34 C.F.R. § 601.10 ..................................................................................9

34 C.F.R. § 668.45 ..................................................................................7

34 C.F.R. § 682.202 ................................................................................5

34 C.F.R. § 682.205 ............................................................................5, 27

34 C.F.R. § 682.205(d) ...........................................................................7

34 C.F.R. § 682.205(e) ...........................................................................6

34 C.F.R. § 682.208 ................................................................................5

34 C.F.R. § 682.209 ................................................................................5

34 C.F.R.§ 682.210 .................................................................................5

34 C.F.R. § 682.211 .............................................................................5, 6

34 C.F.R. § 682.211(a)(1) .......................................................................6

34 C.F.R. § 682.215(e)(1) .......................................................................6

34 C.F.R. § 682.700(a) ...........................................................................5

34 C.F.R. § 682.702 ................................................................................5

34 C.F.R. § 685.204 ................................................................................5

34 C.F.R. § 685.205 ................................................................................5

34 C.F.R. § 685.205(a) ...........................................................................6

34 C.F.R. § 685.208 ................................................................................5

34 C.F.R. § 685.221(e)(1) .......................................................................6

74 Fed. Reg. 36,572 (July 23, 2009).................................................. 28

75 Fed. Reg. 57,252 (Sept. 20, 2010) ................................................ 15

97 Fed. Res. Bull. 4, 2011 WL 12504541 ..............................................9

22 Pa. Code § 40.1 *et seq.* ...............................................................26

22 Pa. Code § 73.1 *et seq.* ...............................................................26

Fed. R. Civ. P. 12(b)(6)............................................................... 3, 30

Fed. R. Civ. P. 24 .......................................................................... 12

Fed. R. Civ. P. 24(a)(1) ................................................................... 12

## INTRODUCTION

The Commonwealth's Complaint against the Navient Defendants[1] is legally deficient for three reasons:

*First, the Commonwealth's complaint is an unauthorized "copycat" lawsuit.* The Commonwealth's CFPA claims merely parrot allegations from a materially indistinguishable lawsuit filed by the Consumer Financial Protection Bureau ("CFPB") nearly a year ago.[2] That is impermissible. While the CFPA authorizes state attorneys general to file suit in some circumstances, such copycat claims are inconsistent with the CFPA's pre-suit notice provisions (12 U.S.C. § 5552(b)(1)(A)); cannot be squared with the CFPA's intervention provisions (*id.* § 5552(b)(2)(A)) and Congress's practice of permitting state intervention where it intends that states should be heard on pending claims; would unnecessarily burden this Court and the parties; and would risk generating inconsistent rulings across the country, thereby undermining the CFPA's core purpose of "enforc[ing] Federal consumer financial law consistently," *id.* § 5511(b). In short, the Commonwealth's

---

[1]   Navient Corporation is a holding company that does not engage in student lending or servicing activities. To the extent the Complaint ("Compl.") addresses "Navient Corporation," its claims are thus factually incorrect and legally insufficient. Because those matters, while easily discoverable, require a factual response, Navient Corporation expects to move separately for summary judgment in due course if the Attorney General continues to pursue these claims against Navient Corporation.

[2]   *CFPB v. Navient Corp., et al.*, No. 3:17-CV-101 (M.D. Pa., filed Jan. 18, 2017).

copycat lawsuit is unnecessarily duplicative, is structurally irreconcilable with the rest of § 5552, and would violate the fundamental principle of statutory construction that "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989).

*Second, federal law preempts the Commonwealth's state-law claims regarding origination (Count I) and federal-loan servicing (Counts II and IV).* The federal Higher Education Act ("HEA"), 20 U.S.C. §§ 1001 *et seq.*, and Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, comprehensively regulate the disclosures lenders and servicers must make to student-loan borrowers throughout a loan's lifecycle. The HEA expressly preempts the Commonwealth's state-law claims regarding federal-loan servicing (Counts II and IV) by barring the enforcement of "any disclosure requirements of any State law," 20 U.S.C. § 1098g, and the Complaint's origination claim (Count I) cannot be reconciled with the careful balance TILA and its implementing regulations struck regarding loan originations. Both sets of claims directly conflict with Congress's goal of imposing uniform nationwide standards for student loans and should be dismissed.

*Third, Counts I-V and VIII-IX of the Complaint fail to allege "unfair" or "deceptive" practices as a matter of law.* Count I (regarding loan origination) fails to state a claim because the Attorney General cannot enjoin conduct that the

2

Complaint itself alleges ceased a decade ago. The Commonwealth's claim that Navient "offered and originated risky, expensive subprime loans" also fails to allege unfair or deceptive conduct under Pennsylvania's Unfair Trade Practices & Consumer Protection Law ("UTPCPL") because it does not claim Navient violated any federal regulations or misrepresented any loan terms. And the doctrine of laches bars the Commonwealth from claiming it is *per se* "unfair" to help students attend schools that the Commonwealth itself licensed.

The allegations in Counts II-III (forbearance "steering") and Counts IV-V (recertification) fail to allege "unfair or deceptive" practices because they only allege that Navient failed to disclose certain information using the Attorney General's preferred method, not that Navient actually failed to disclose all material facts or violated controlling federal disclosure regulations. Counts II-III likewise cannot form the basis of a "misrepresentation" claim because the statements at issue are not actionable under the UTPCPL. Finally, Counts VIII and IX ("unfair" processing errors) fail to state a claim because mistakes and errors themselves are neither deceptive nor fraudulent, and thus are not actionable.

The Commonwealth's Complaint therefore should be dismissed under Fed. R. Civ. P. 12(b)(6).

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the complaint's factual allegations are presumed true, the trial court is to "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

**FACTUAL BACKGROUND**

Navient Corporation is a holding company that formed following the split of SLM Corporation ("Sallie Mae") in 2014. Its subsidiary Navient Solutions, LLC ("Navient") services federal and private student loans. As set forth below, such loans are subject to comprehensive federal regulations that control the terms under which companies like Navient must service such loans.

**A.   FEDERAL EDUCATION LOANS**

In 1965, Congress enacted the Higher Education Act ("HEA"), 20 U.S.C. § 1001 *et seq.*, "to keep the college door open to all students of ability, regardless of socioeconomic background." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015) (quotation and citation omitted). The HEA established two federal student loan programs: (1) the Direct Loan Program, under which the federal

Department of Education ("ED") provides loans directly to eligible borrowers, 20 U.S.C. § 1087a *et seq.*, and (2) the Federal Family Education Loan Program ("FFELP"), under which the federal government guarantees privately funded loans.

Not surprisingly, the federal government tightly regulates these federal programs. Under the HEA, Congress required ED to promulgate regulations that would ensure "clear, uniform standards" for the origination and servicing of federal loans on a nationwide basis. *Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010); *id.* at 945 ("Congress's instructions to [ED] on how to implement the student-loan statutes carry this unmistakable command: Establish a set of rules that will apply across the board."). Today, ED's regulations govern every aspect of the federal loan process, including: permissible charges (34 C.F.R. §§ 682.202, 685.205); repayment plans (*id.* §§ 682.209, 685.208); the availability of both deferments and forbearances for borrowers in repayment (*id.* §§ 682.210-211, 685.204-205); and due diligence in loan servicing (*id.* § 682.208). Federal regulations even dictate the forms that lenders and servicers must use, and ED may terminate the participation of loan servicers who violate these federal regulations. 34 C.F.R. §§ 682.700(a), 682.709.

The HEA also established two relevant mechanisms to assist borrowers who encounter difficulties during repayment: (1) forbearance and (2) income-driven repayment ("IDR"). Forbearance allows struggling borrowers to stop making payments for a fixed period of time and defer any interest due during the forbearance

5

term.  34 C.F.R. §§ 682.211(a)(1), 685.205(a).  Before placing borrowers into forbearance, federal regulations require loan servicers like Navient to disclose the terms of forbearance, including the fact that deferred interest will be capitalized.  34 C.F.R. § 682.211.  Servicers must repeat that disclosure within 30 days of granting forbearance, and must disclose every 180 days during forbearance how much interest will be capitalized and when capitalization will occur.  *Id.*

Under IDR, rather than temporarily deferring payments, qualified borrowers can adjust their monthly payments to reflect their current income and family size. To qualify for IDR, borrowers must fill out a federal application and submit supporting documents, and recertify their income and family size annually.[3]  34 C.F.R. §§ 682.215(e)(1), 685.221(e)(1).  Under federal law, servicers must make extensive and repeated disclosures to borrowers regarding IDR, including:

- when the loan is disbursed and before repayment begins, disclosing the availability of IDR and other repayment plans, 20 U.S.C. §§ 1083(a)(11), (b)(6), 1087e(p);

- before repayment begins, disclosing the availability of and procedures for enrolling in IDR, *id.* §§ 1077(a)(2)(H), 1087e(d)(1)(D)-(E), 1087e(p); 34 C.F.R. § 682.205(e);

- throughout repayment, disclosing specified information regarding IDR, including a link to ED's IDR website, 20 U.S.C. §§ 1083(e)(1), 1087e(p); and

---

[3]  The borrower may do this online through a federal website or by submitting original documents to the servicer.

- whenever "a borrower [] has notified the lender that the borrower is having difficulty making payments," disclosing instructions for seeking modification of IDR and a description of the expected costs associated with forbearance if the borrower chooses that option, *id.* §§ 1083(e)(2), 1087e(p).

The regulations further provide that these notices may be made through printed or electronic means. *Id.* § 1087e(p); 34 C.F.R. § 682.205(d).

The Complaint does not allege that Navient failed to provide any of these federally required disclosures regarding forbearance or IDR.

## B.   PRIVATE EDUCATION LOANS

Private loans are also subject to extensive federal regulations. During the time period relevant to the Complaint's origination allegations (2004-2007), those requirements took two principal forms. First, the HEA required schools (but not lenders or servicers) to make disclosures to students regarding both affordability and other factors that can impact enrollment decisions, including the cost of attendance, accreditation and licensing status, and graduation rates. 20 U.S.C. § 1092(a) (in effect Oct. 28, 2002 to Aug. 13, 2008). Moreover, the HEA required schools (but, again, not lenders or servicers) to employ full-time personnel "to assist students or potential students in obtaining information" regarding financial assistance. *Id.* § 1092(c). ED promulgated regulations to enforce these requirements. *See, e.g.*, 34 C.F.R. § 668.45.

Second, during the relevant time period, the federal Truth in Lending Act ("TILA") governed all private student-loan origination disclosures. TILA sought to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601(a); *see also id.* §§ 1604, 1631-32, 1664; 12 C.F.R. §§ 226.17, 226.18, 226.24, 226 App. H, 226 Supp. I (establishing extensive disclosure rules for lenders). Under TILA, private student loan originators, like other consumer-credit providers, had to disclose "the terms of the legal obligation between the parties," 12 C.F.R. §§ 226.17(b), (c)(1), including the "amount financed," *id.* § 226.18(b); the annual percentage rate ("APR") along with "a brief description such as 'the cost of your credit as a yearly rate,'" *id.* § 226.18(e); for variable-rate loans, information about how the APR may change, *id.* § 226.18(f); information about prepayment and late payment charges, *id.* § 226.18(k)-(l); and "information about nonpayment, default, the right to accelerate the maturity of the obligation, and prepayment rebates and penalties," *id.* § 226.18(p). Once a repayment schedule was set, creditors also had to make additional disclosures concerning finance charges, payment schedules, and total payments. *Id.* § 226 Supp. I, Cmt. 17(i)(1); *id.* § 226.17(i).

In 2008, Congress amended the HEA and TILA to impose new disclosure rules for private education lenders that would apply prospectively—that is, to loans

which post-date the time period relevant to the Complaint. Higher Education Opportunity Act of 2008, Pub. L. No. 110-315, 122 Stat. 3078 (Aug. 14, 2008). In 2009, ED promulgated new rules that prospectively required the disclosure of so-called "preferred lender arrangement[s]" to student borrowers. 34 C.F.R. § 601.10. In 2010, the Federal Reserve Board ("FRB") promulgated its own set of prospective regulations regarding interest rates, fees, repayment terms, other borrowing options, and consumer rights that apply to private student loans. 12 C.F.R. § 226.46-48. FRB also developed TILA-compliant model forms for private education lenders and announced that any lender using those forms would be "deemed to be in compliance with" TILA. 97 Fed. Res. Bull. 4, 2011 WL 12504541, at *1; 12 C.F.R. § 226, Supp. I, App. G & H; 15 U.S.C § 1638(e)(5)(C).

## ARGUMENT

I. **THE CFPA DOES NOT PERMIT STATE ATTORNEYS GENERAL TO FILE COPYCAT CLAIMS AFTER THE CFPB HAS FILED A MATERIALLY INDISTINGUISHABLE LAWSUIT.**

The Attorney General purports to bring his CFPA claims under 12 U.S.C. § 5552(a), which generally provides that an "attorney general (or the equivalent thereof) of any State may bring a civil action in the name of such State . . . to enforce provisions of this title." The statute, however, does not contemplate or authorize such actions where, as here, the CFPB itself has been pursuing materially indistinguishable CFPA claims against Navient for more than nine months. *CFPB*

9

*v. Navient Corp. et al.*, No. 3:17-CV-101 (M.D. Pa., filed Jan. 18, 2017). Indeed, the Attorney General's copycat CFPA claims are essentially cut-and-pasted from the CFPB's long-ago filed complaint. No court has ever allowed a state AG to maintain such copycat CFPA claims, and this Court should not break new ground here.

Because the Attorney General's copycat claims simply parrot the CFPB's long-pending claims, they not only are pointless; they are barred by § 5552, whose remaining text and structure make clear that § 5552(a)'s general grant of litigating authority does not permit state AGs to pursue such claims *after* the CFPB has filed identical CFPA claims. *See Davis*, 489 U.S. at 809 ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (explaining that "[s]tatutory construction . . . is a holistic endeavor" and that statutory meaning "is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law").

Three features of the statute support this conclusion. *First*, copycat litigation by state AGs is inconsistent with the CFPA's pre-suit notice provisions, which condition state-initiated CFPA claims on the AG "provid[ing] a copy of the complete complaint to be filed and written notice describing such action or proceeding to the

Bureau." 12 U.S.C. § 5552(b)(1)(A). To discharge that obligation, notice "shall, at a minimum, describe . . . the alleged facts underlying the proceeding and whether there may be a need to coordinate the prosecution of the proceeding so as not to interfere with any action, including any rulemaking, undertaken by the Bureau, a prudential regulator, or another Federal agency." *Id.* § 5552(b)(1)(C).

These pre-suit notice provisions demonstrate Congress's intent that state CFPA claims involve facts or theories (i) about which the CFPB previously was unaware and (ii) which were not already subject to a pending CFPB lawsuit. After all, where (as here) a state AG simply cribs allegations and claims the CFPB already has filed, notifying the CFPB of "the alleged facts underlying the proceeding" serves no purpose and renders the provision superfluous; the CFPB already knows those allegations. *Id.* And where (as here) the CFPB already has responded to those allegations by filing materially indistinguishable claims, it already has concluded that litigation will "not . . . interfere with any [regulatory] action . . . undertaken by the Bureau." *Id.* In short, allowing copycat claims based on factual allegations that already are known to the CFPB and already are being pursued by the CFPB would make the statute's pre-suit notice requirements irrelevant, in derogation of the rule that every clause of a statute should be construed in a manner that makes it meaningful. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give

effect, if possible, to every clause and word of a statute.") (internal quotation marks omitted).

**Second**, state copycat litigation is inconsistent with the statute's intervention provisions, which authorize the CFPB to intervene as a party-plaintiff in any state-initiated CFPA litigation. 12 U.S.C. § 5552(b)(2)(A). That provision makes sense where the CFPB has *not* already filed suit: because a state AG's CFPA claims necessarily implicate subject matter that falls within the CFPB's purview, the CFPB invariably has an interest in such litigation—and intervention, of course, is the usual mechanism for interested parties to participate in pending cases. Fed. R. Civ. P. 24. It thus is not surprising that Congress sought to enable CFPB participation whenever a state AG seeks to step into the CFPB's shoes. Fed. R. Civ. P. 24(a)(1) (allowing "anyone" to intervene when "given an unconditional right to intervene by a federal statute").

Where the CFPB already is pursuing materially indistinguishable claims, however, § 5552(b)'s provision for CFPB intervention runs headlong into the rule that a single party-plaintiff cannot simultaneously maintain two actions against the same defendant(s): "[I]t is clear that [a plaintiff] ha[s] no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc). Construing § 5552(a) to permit state copycat lawsuits would create

a direct conflict between § 5552(b)(2)(A)'s authorization for CFPB intervention and longstanding precedent that otherwise would bar the CFPB from acting as a party-plaintiff in parallel lawsuits.

Courts are supposed to avoid such conflicts, *Pittsburgh & Lake Erie R.R. v. Ry. Labor Execs. Ass'n*, 491 U.S. 490, 510 (1989), and the best interpretation of a statute is always the one which "produces a substantive effect that is compatible with the rest of the law." *United Sav.*, 484 U.S. at 371. Consistent with those rules, § 5552(a) should be construed as permitting state AGs to pursue CFPA claims *only* where the CFPB has not yet filed suit; that interpretation (i) gives substantive effect to both § 5552(a) *and* the government's intervention rights under § 5552(b), without (ii) drawing § 5552(b)'s intervention provisions into conflict with the bar against duplicative actions by party-plaintiffs.

*Third*, the lack of statutory authorization for state intervention in pending CFPB cases underscores that Congress did not intend to allow copycat claims. Again, intervention is the normal mechanism for parties to address pending claims, and Congress thus routinely allows parties (including states) to intervene in pending cases that affect them. *See, e.g.*, 28 U.S.C. § 2403(b) (permitting states to intervene where constitutionality of state laws are challenged); 31 U.S.C. § 3730 (permitting federal government to intervene in False Claims Act suits). That Congress did not do so here shows it did not intend to authorize AG-sponsored claims *after* the CFPB

13

has filed suit. Were it otherwise, Congress would have done what it usually does: grant state AGs the right to intervene. *See, e.g., Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 184 (1994).

***Finally,*** there is no sensible rationale for allowing state AGs to pursue copycat CFPA claims and thus no reason to think Congress intended to allow them. Both the CFPB's lawsuit and this Complaint challenge the same alleged conduct, raise the same CFPA claims, and purport to protect the same consumers. Such wholly redundant claims thus would tax this Court's resources and burden the parties to existing litigation without producing any conceivable benefit. But permitting such copycat claims would come at a heavy price: they threaten long-term chaos that is at odds not only with the law's concern for judicial economy, but with the CFPA's avowed "purpose" to "enforce Federal consumer financial law ***consistently.***" 12 U.S.C. § 5511(a) (emphasis added). In short, if § 5552 is construed as permitting copycat litigation despite a materially indistinguishable CFPB lawsuit, nothing would stop state AGs from filing competing copycat lawsuits in distinct venues nationwide—risking inconsistent rulings and plunging entire industries into uncertainty. Copycat state AG actions thus conflict with Congress's express intent. This Court should dismiss the Commonwealth's CFPA claims.[4]

---

[4]   Even if this Court disagrees, it must at least dismiss the CFPA claims to the extent they are based on conduct before July 21, 2011. The Attorney General filed those

## II.   FEDERAL LAW PREEMPTS THE COMPLAINT'S STATE-LAW CLAIMS.

Federal law expressly preempts the Commonwealth's state-law claims regarding federal-loan servicing (Counts II and IV) by barring the enforcement of "any disclosure requirements of any State law." 20 U.S.C. § 1098g. The Commonwealth's state-law claims regarding origination (Count I) and federal loan-servicing (Counts II and IV) likewise are preempted because they directly conflict with Congress's goal of imposing uniform nationwide standards for student loans.

### A.   The HEA Preempts The AG's Federal Loan-Servicing Claims.

The HEA includes an express preemption clause which provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act . . . *shall not be subject to any disclosure requirements of any State law*." 20 U.S.C. § 1098g (emphasis added). That language is broad and

---

claims under 12 U.S.C. § 5536(a)(1)(B), but that provision did not take effect until July 11, 2011. Pub. L. No. 111-203, § 1037, 124 Stat. 1376, 2011 (codified at 12 U.S.C. § 5531 (note)) (provision not effective until the "designated transfer date"); 75 Fed. Reg. 57252 (Sept. 20, 2010) (declaring the "designated transfer date" as July 11, 2011). Insofar as the Complaint's CFPA claims are based on conduct before that date, they must be dismissed. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 257 (1994) ("A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."); *see also Koch v. SEC*, 793 F.3d 147, 157-58 (D.C. Cir. 2015) (holding that the CFPA does not apply retroactively), *cert. denied*, 136 S. Ct. 1492 (2016); *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 n.2 (4th Cir. 2013) (same).

unqualified; it requires only that a "loan" was "made, insured or guaranteed" pursuant to a federal lending program, and for those loans, it preempts "any" state claim that purports to require "any" disclosure regarding such loans.  That language expressly preempts Counts II and IV because those claims unquestionably seek to hold Navient liable under Pennsylvania law for making allegedly insufficient disclosures regarding federal loans.  For instance, the Commonwealth alleges that Navient:

- *"failed to meaningfully disclose* . . . that the federal government offers IDR plans to help borrowers avoid default," Compl. ¶ 177(b) (ECF No. 1);

- *"[f]ail[ed] to disclose"* a "date certain" for submitting recertification for IDR plans, *id.* ¶ 184(a); and

- *"[f]ail[ed] to adequately notify* borrowers" of the existence of renewal notices, *id.* ¶ 184(c).

Such "failure to disclose" claims are expressly preempted.  20 U.S.C. § 1098g; *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 325 (2008) (where Congress uses the term "requirements" in an express preemption clause, it bars statutory, regulatory, and common law causes of action by a state).

Couching the Complaint's other allegations in terms of "misrepresentation"[5] does not save them.  *Chae*, 593 F.3d at 943 (plaintiff's state-law "misrepresentation"

---

[5]   *E.g.*, Compl. ¶ 177(a) (alleging Navient *"[m]isrepresented . . .* the suitability of certain federal loan repayment options"); *id.* ¶ 177(c) (alleging Navient

claims regarding federal loans preempted by § 1098g because they were, in substance, nothing more than "restyled improper-disclosure claims"). Indeed, *Chae* is directly on point.   In *Chae*, the plaintiffs brought claims under California's consumer protection statute accusing Sallie Mae of "misrepresenting" and "failing to disclose" information about federal loans. *Id.* at 942-43.   The Ninth Circuit concluded that both sets of claims were barred by Section 1098g:

> ***At bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims. . . .***   We consider these allegations in substance to be a challenge to the allegedly-misleading method [defendant] used to communicate with the plaintiffs about its practices. ***In this context, the state-law prohibition on misrepresenting a business practice "is merely the converse" of a state-law requirement that alternate disclosures be made.***

*Id.* (emphases added).   Like in *Chae*, the Commonwealth's "misrepresentation" allegations here are "merely the converse" of a claim that "alternate disclosures be made." *Id.*   The Complaint's claim that Navient "*[m]isrepresented* . . . the suitability of certain federal loan repayment options," Compl. ¶ 177(a) (emphasis added), is "merely the converse" of claiming that Navient *failed to disclose the availability and suitability of IDR*. Its claim that Navient "*misrepresented*" that it would "work

---

"*misrepresented*" that it would "work with" borrowers to identify repayment plans); *id.* ¶ 184(b) (alleging Navient "*[r]epresented by implication*" the potential consequences of failing to renew IDR plans).

with" borrowers by "identifying options and solutions," *id.* ¶ 177(c), is "merely the converse" of alleging that Navient ***failed to disclose IDR as the best option or solution***.   And its allegation that Navient "***[r]epresented by implication***" the potential consequences of failing to submit IDR recertifications, *id.* ¶ 184(b), is "merely the converse" of claiming Navient ***failed to disclose the actual consequences***.

Other courts have adopted *Chae*'s "substance over form" approach to find "misrepresentation" claims preempted by Section 1098g. *Linsley v. FMS Inv. Corp.*, No. 3:11CV961 VLB, 2012 WL 1309840, at *6 (D. Conn. Apr. 17, 2012) ("[A]s . . . in *Chae*, [plaintiff] may not avoid preemption by relabeling his otherwise-preempted claim as one of misrepresentation and not improper disclosure.") (App. Tab 7); *Brooks v. Sallie Mae, Inc.*, No. FSTCV096002530S, 2011 WL 6989888, at *6 (Conn. Super. Ct. Dec. 20, 2011) (citing *Chae* and dismissing state-law claims despite being characterized as "misrepresentation" claims) (App. Tab 2); *cf. Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 654 (7th Cir. 2015) (invoking *Chae* and authorizing plaintiff's federal loan-related claims to proceed only because those

claims were "not attempting to require more of the defendant than was already required by the HEA and its regulations"), *cert. denied*, 136 S. Ct. 1607 (2016).[6]

At bottom, the Complaint's state-law claims regarding federal-loan servicing are expressly preempted either as (i) "failure to disclose" claims or as (ii) "restyled improper-disclosure claims." *Chae*, 593 F.3d at 943. Because the gravamen of these claims is that Navient should have made alternate or additional disclosures, Section 1098g bars Counts II and IV. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017) (courts must "consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters.").

### B.    The Complaint's State-Law Claims Conflict With Congress's Purposes and Objectives.

Beyond express preemption under Section 1098g, conflict-preemption principles bar both the Complaint's state-law origination claim (Count I) and federal-loan servicing claims (Counts II and IV) because they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869-70 (2000) (express preemption clauses do not preclude "the ordinary working of conflict preemption principles").

---

[6]   The unpublished decisions cited herein are reproduced in the attached appendix (App.).

1. **The Complaint's State-Law Claims Regarding Federal Loan Programs Undermine Congress's Goal Of Nationwide Uniformity.**

Congress intended the HEA to establish "clear, uniform standards" for federal loan programs that would apply nationwide. *Chae*, 593 F.3d at 944; *id.* at 945 ("Congress's instructions to [ED] . . . carry this "unmistakable command: Establish a set of rules that will apply across the board."). "[W]ere the law to indulge the plaintiffs' . . . state law claims, and thereby to endorse the possibility of similar claims being asserted under varying state laws in each of the fifty states, it would impair and threaten the efficacy of the federal lending effort for students." *Id.* at 945. Thus, allowing state law claims would "pose[] an obstacle to the uniform implementation of the FFELP sought by Congress," *id.* at 950. For this reason, Counts II and IV must be dismissed under conflict-preemption principles.

2. **The Complaint's State-Law Claims Undermine TILA's Careful Balance Of Disclosure Rules For Private Loan Origination.**

The same principles likewise bar the Commonwealth's state-law origination claim (Count I). Private student loans are governed by TILA, which reflects Congress's desire to carefully "balance . . . competing considerations of complete disclosure and the need to avoid informational overload." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568-69 (1980) (alterations omitted). Consistent with Congress's goal for striking a balance between too much and too little disclosure,

TILA enumerates only "the credit terms considered most important by Congress," *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 263 (3d Cir. 1975); *see also supra* at 5-7 (detailing federal TILA regulations).

The Complaint's allegation that Navient's predecessors were obligated to disclose additional details regarding "preferred lender" agreements, school graduation rates, default potential, and the effect of default on credit scores, Compl. ¶ 174, would directly conflict with TILA's carefully constructed disclosure scheme. Indeed, subsequent actions by Congress indicate that it never intended to impose such disclosure obligations on private education lenders. For instance, Congress has never imposed "repayment-ability" requirements on student lending, even though it has done so for various other types of lending.[7] *See, e.g.*, 12 C.F.R. § 226.34(a)(4) (effective before Oct. 1, 2009). Likewise, Congress has never placed responsibility for disclosing graduation rates on lenders, even though it has expressly done so for educational institutions through the HEA. 20 U.S.C. § 1092(a). Given the comprehensive disclosure rules that Congress decided to impose—and, equally important, not to impose—on private loan originators, imposing different state-law

---

[7] Indeed, such a requirement would be impossible to implement given that student lending, unlike almost any other type of lending, is based upon assumptions of *future* job attainment and *future* earnings.

disclosure requirements would conflict with TILA's carefully-balanced federal disclosure scheme. Count I is preempted.

## III. THE COMPLAINT FAILS TO STATE A CLAIM FOR UNFAIR OR DECEPTIVE PRACTICES UNDER THE UTPCPL OR THE CFPA.

Separate and apart from federal preemption of the Commonwealth's claims, Counts I-V and VIII-IX of the Complaint[8] must be dismissed for failure to allege "unfair" or "deceptive" practices under the UTPCPL or the CFPA.[9]

### A. The Attorney General Lacks the Authority to Bring A UTPCPL Claim To Enjoin Conduct That Ceased A Decade Ago.

Count I of the Complaint purports to seek an "injunction" based on alleged conduct in connection with the origination of private student loans. But the Complaint itself alleges that any such conduct ceased in 2007, Compl. ¶ 49 (alleging origination-related conduct that occurred "[u]ntil approximately 2007"), and Navient does not currently originate student loans. There is no basis to enjoin

---

[8] Navient does not seek dismissal of the Commonwealth's private-loan servicing claims regarding "cosigner release" (Counts VI and VII) at the present time. Navient vigorously denies these allegations and, should the Attorney General's claims be permitted to proceed, Navient intends to seek summary judgment on those claims in due course.

[9] For the same reasons Navient previously asserted in the *CFPB* litigation, the Complaint's CFPA claims (Counts III, V, and IX) fail to state a claim and should be dismissed. Given this Court's prior rejection of Navient's similar CFPA arguments in the *CFPB* litigation, however, Navient will not reiterate each of its CFPA-specific arguments here but rather will assert those defenses and arguments in a responsive pleading.

conduct that ceased a decade ago. And the Attorney General is not permitted to do so: the UTPCPL only permits the Attorney General to "bring an action in the name of the Commonwealth" for a "temporary or permanent injunction" when a defendant "*is using or is about to use* any method, act, or practice" that is unlawful under the UTPCPL. 73 Pa. Cons. Stat. § 201-4 (emphasis added). Because there is no imminent or ongoing conduct to enjoin, the Attorney General is not authorized to bring suit under Section 201-4. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 228 n.8 (3d Cir. 2008), *as amended* (Nov. 6, 2008) (Section 201-4 is "[t]he provision authorizing suits by the Attorney General").

That matters here because the Attorney General's authority to seek any other relief (including restitution or damages) hinges on it first securing injunctive relief. 73 Pa. Cons. Stat. § 201-4.1(b) (costs and restitution available only "[w]henever any court issues a permanent injunction to restrain and prevent violations of this act"); *id.* § 201-8 (civil penalties available only "[i]n any action brought under section 4"). Because the Complaint's explicit concession that the relevant conduct ceased in 2007 precludes any possibility of injunctive relief in connection with Count I, and because the pursuit of restitution, damages, costs, or civil penalties is preconditioned on the Attorney General's ability to obtain injunctive relief, Section 201-4 requires dismissal of Count I as a matter of law.

**B.     The Complaint's Origination Claim Fails To Allege "Deceptive" Or "Unfair" Conduct.**

Even if Count I could proceed, it fails on its own terms. That claim alleges that certain student loans were originated knowing that some borrowers might struggle to repay them. Compl. ¶ 174(a) (alleging Defendants "[u]nfairly and deceptively offered and originated risky, expensive subprime loans to borrowers in spite of the high likelihood those loans would default . . ."). But the Complaint alleges neither that Navient failed to make any federally required disclosure to borrowers, *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014) (per curiam) (affirming dismissal of plaintiff's UTPCPL claim for failure to state a claim, including for failure to establish any violation of TILA) (App. Tab 7), nor falsely misrepresented or failed to disclose any of material terms of the loans. *See Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 807 (E.D. Pa. 2011) (dismissing UTPCPL claim for failure to allege deceptive conduct against mortgage lender because the plaintiff "admit[ted] in her Complaint that she was aware of the higher interest rate and still signed the contract"). In the absence of any "misrepresentations about *the terms* of the [loan]," the UTPCPL does not authorize "relief from the burdensome agreement that they voluntarily entered." *In re Sheppard*, 299 B.R. 753, 769 (Bankr. E.D. Pa. 2003) (emphasis added).

The fact that a borrower *may* default on a loan—even if reasonably foreseen by the lender—does not make the origination of the loan "unfair" or "deceptive." In Pennsylvania, "it is well established that a lender does not owe a fiduciary duty to a borrower." *Conquest v. WMC Mortg. Corp.*, 247 F. Supp. 3d 618, 634 (E.D. Pa. 2017) (dismissing UTPCPL claim and claim for breach of fiduciary duty); *see also DiCicco v. Willow Grove Bank*, No. CIV.A. 02-7855, 2004 WL 2150980, at *5 (E.D. Pa. Sept. 21, 2004) ("The law presumes the relationship between lenders and borrowers is conducted at arms-length and the parties are each acting in their own interest.") (App. Tab 4). The Complaint does not allege Navient represented to any borrower that she would be able to repay her loans, nor could a borrower reasonably have relied on any such representation. In short, the Complaint does not allege that Navient assumed any "further obligation" beyond the ordinary lender-borrower relationship. *Seats v. Hooper*, No. CIV.A. 96-3244, 1999 WL 674321, at *2 (E.D. Pa. Aug. 19, 1999) (App. Tab 6). Count I should be dismissed.

**C.    The Attorney General Is Barred By Laches From Claiming That Lending To Commonwealth-Approved Schools Is "Unfair."**

The Commonwealth similarly claims it was "unfair" for Navient to extend loans to students who wished to attend schools with "low graduation rates," Compl. ¶ 76, and a "high likelihood of default," *id.* ¶ 174(c). But because all postsecondary institutions must be approved by the Commonwealth, the Commonwealth cannot

seriously claim it was "unfair" for Navient to help students attend those schools. *See, e.g.*, 22 Pa. Code § 40.1 *et seq.* (colleges and universities); 22 Pa. Code § 73.1 *et seq.* (private licensed schools). Indeed, the Attorney General's Director of the Bureau of Consumer Protection was a voting member of the State Board of Privately Licensed Schools, which approves postsecondary institutions that offer career training. *See* 24 Pa. Cons. Stat. § 6503. Given that the Commonwealth deemed these schools fit for student enrollment, laches estops the Attorney General from claiming now that low graduation rates made it "unfair" for lenders to help Pennsylvania borrowers attend such schools. *See Stahl v. First Pa. Banking & Tr. Co.*, 411 Pa. 121, 128, 191 A.2d 386, 390 (1963) ("[L]aches may be asserted against the Commonwealth."); *Commonwealth v. Folcroft Landfill Corp.*, 1 Pa. Commw. 356, 358 (1971) (holding that defendant could assert laches against the Commonwealth where its agents "considered the . . . operation to be legal"). Indeed, if anything about this case is "unfair," it is the Attorney General's contention today that Navient should be faulted for helping students attend the very schools his office helped approve. Count I should be dismissed.

### D.   The Commonwealth's Federal-Loan Servicing Claims Do Not Allege "Deceptive" Conduct Because They Do Not Even Allege Failure to Disclose Material Facts.

The Commonwealth's forbearance "steering" claims (Counts II-III) likewise fail as a matter of law. Those claims are premised on allegations that Navient

"[m]isrepresented . . . the suitability of certain federal loan repayment options," Compl. ¶ 177(a), "[i]n phone calls, failed to meaningfully disclose" the availability of IDR, *id.* ¶ 177(b), and offered forbearances, rather than IDR, to borrowers who were unable to repay their loans, *id.* ¶ 177(d). But the Complaint does not allege Navient failed to disclose all material facts regarding the availability of IDR plans, or that Navient failed to comply with any of the extensive federal disclosure requirements regarding IDR plans. 20 U.S.C. §§ 1083, 1087e; 34 C.F.R. § 682.205. The Commonwealth merely claims borrowers were not provided this information ***enough times*** or ***through a preferred medium*** (i.e., by phone). Compl. ¶ 177(b).

Pennsylvania law does not recognize a claim for "deceptive" conduct based on an alleged failure to disclose material facts when those very facts were, in fact, disclosed in writing. *See Conquest*, 247 F. Supp. 3d at 647 (plaintiff failed to state UTPCPL claim regarding mortgage company's handing of his insurance policy where letter sent by defendant accurately disclosed the mortgage's terms to plaintiff); *Cahall v. Ohio Cas. Ins. Co.*, No. CIV.A. 14-1246, 2015 WL 4407563, at *1, *6 (W.D. Pa. July 20, 2015) (plaintiffs could not maintain UTPCPL claim for misrepresentations regarding insurance benefits when there was a properly noticed and executed waiver of these benefits) (App. Tab 3); *see also Brewer v. Andrews*, No. 3415 EDA 2014, 2015 WL 6681088, at *2 (Pa. Super. Ct. Aug. 21, 2015) (holding that defendant signing but later rejecting rental agreement was not

misleading because defendant informed plaintiff that the agreement was contingent on employment verification) (App. Tab 1). Counts II and III should be dismissed for failure to allege unfair or deceptive practices as a matter of law.

It likewise was not deceptive to alert customers by email that they should review documents regarding IDR recertification, as alleged in Counts IV and V. To the extent the Commonwealth claims Navient's emails to borrowers were "deceptive" because they failed to disclose "information about the purpose or contents of the notice in the subject line or body of the email," Compl. ¶ 184(c), that claim conflicts with ED's specific authorization that disclosures could be made through "secure e-mail *or electronic links* to the borrowers' account-specific information," 74 Fed. Reg. 36,572 (July 23, 2009) (emphasis added). It also fails to explain how borrowers—who consented to receive email notifications—were deceived by receiving such communications. Again, the Complaint never alleges that Navient's emails misstated the e-mail's content or purpose, contained a false representation of specific characteristics of the services offered, or directed borrowers to the wrong place. Counts IV and V therefore should be dismissed for failure to allege unfair or deceptive practices as a matter of law.

### E.   The Commonwealth Cannot Sustain A UTCPCL Action On The Basis of Navient's Mass Marketing Statements.

The Commonwealth's forbearance "steering" claims (Counts II and III) are premised on the assertion that Navient misrepresented that they would "help" and "work with" borrowers in various ways. Compl. ¶ 177(c). But "statements of subjective analysis or extrapolations, such as opinions, motives and intentions, or general statements of optimism," are not actionable under the UTPCPL. *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 215 (Pa. Commw. Ct. 2017) (describing such statements as akin to "puffery"). Navient's statements that it would "work with" borrowers, "help . . . make the right decision," and "help . . . by identifying options and solutions," Compl. ¶ 108, do not claim something that is "specific and measurable by comparative research," and so are not actionable as a matter of law. *Golden Gate*, 158 A.3d at 215-16. Moreover, Navient's general statements are not actionable under the UTPCPL because they are "not likely to make a difference" in borrowers' enrollment in IDR plans. *Id.* at 222. Counts II and III therefore should be dismissed.

### F.   The UTCPCL Does Not Make Mistakes Or Errors Actionable As "Unfair" Or "Deceptive" Practices.

In Counts VIII and IX, the Commonwealth alleges that Navient "unfairly" erred in "misallocating and misapplying" borrower payments. Mistakes and errors are neither deceptive nor fraudulent and thus are insufficient to state a claim as a

matter of law. The UTPCPL's purpose is to protect the public from unfair or deceptive business practices, and to deter such practices. *See Algiori v. Metro. Life Ins. Co.*, 879 A.2d 315, 318, 322 (Pa. Super. Ct. 2005). By definition, mistakes and errors cannot be deterred, and simply labeling errors "unfair" or "deceptive" does not transform them into the kind of intentional misconduct that is actionable under the UTPCPL. *James*, 700 F.3d at 679. Counts VIII and IX therefore should be dismissed.

## CONCLUSION

For the reasons set forth above, the Navient Defendants respectfully submit that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  December 22, 2017                              Respectfully submitted,

By:  /s/ Daniel T. Brier
         Daniel T. Brier (PA 52348)
         MYERS BRIER & KELLY, LLP
         425 Spruce Street, Suite 200
         Scranton, PA 18503
         dbrier@mbklaw.com
         Tel: 570-342-6100
         Fax: 570-342-6147

Jennifer Levy (DC 461921)
Michael Shumsky (DC 495078)
Andrew Pruitt (DC 1011430)
Patrick Brown (DC 1033415)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: 202-879-5000
Fax: 202-879-5200

*Counsel for Defendants Navient
Corporation and Navient Solutions,
LLC*

31

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULE 7.8(b)(3)

I, Daniel T. Brier, hereby certify that the foregoing Memorandum of
Law in Support of Defendants' Motion To Dismiss is in compliance with Local
Rule 7.8(b)(3) and the December 7, 2017 Order of Court (Doc. No. 22).  The brief
contains 6,851 words as computed by Microsoft Office Word.


/s/ Daniel T. Brier

Date:  December 22, 2017

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Support of Motion To Dismiss was served upon all counsel

of record who are deemed to have consented to electronic filing through the Court's

CM/ECF system on this 22nd day of December, 2017.


/s/ Daniel T. Brier
Daniel T. Brier