## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Commonwealth of Pennsylvania,
By Attorney General Josh Shapiro,

      Plaintiff,

      v.

Navient Corporation and Navient
Solutions, LLC,

      Defendants.

Case No. 3:17-cv-1814

(Hon. Robert D. Mariani)

(Electronically Filed)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO NAVIENT DEFENDANTS' MOTION TO DISMISS

Josh Shapiro
*Attorney General*

Michelle Henry
*First Deputy Attorney General*

Sara Manzano-Diaz
*Executive Deputy Attorney General*
*Public Protection Division*

Sarah A. E. Frasch
*Chief Deputy Attorney General*
*Director, Bureau of Consumer Protection*

John M. Abel, PA 47313
Jesse Harvey, PA 63435
Nicholas Smyth, PA 307972

*Attorneys for Plaintiff*
*Commonwealth of Pennsylvania*
*Office of Attorney General*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

LEGAL STANDARD..................................................................................3

FACTUAL AND PROCEDURAL BACKGROUND ...............................3

ARGUMENT ...............................................................................................4

I.      THE CFPA PERMITS CONCURRENT STATE CLAIMS...........................4

II.     PENNSYLVANIA'S CONSUMER PROTECTION POLICE POWERS
ARE NOT PREEMPTED BY THE HEA. ....................................................11

      A.     There is a Judicial Presumption Against Preemption. ........................11

      B.     Express Preemption of Counts II and IV is Not Warranted...............12

      C.     Conflict Preemption of Counts II and IV is Not Warranted. .............16

      D.     Conflict Preemption of Count I is Not Warranted. ............................21

III.    THE COMPLAINT STATES A CLAIM FOR UNFAIR OR DECEPTIVE
PRACTICES UNDER THE CPL AND THE CFPA. ...........................................22

      A.     Pennsylvania May Bring a CPL Claim for Past Conduct...................22

      B.     Pennsylvania's Origination Claim Sufficiently Alleges "Deceptive"
and "Unfair" Conduct..........................................................................23

      C.     Laches Is Not An Available Defense...................................................25

      D.     Pennsylvania's Loan Servicing Claims Sufficiently Allege
"Deceptive" Conduct...........................................................................26

      E.     Counts II and III Are Premised On Actionable Misstatements and
Omissions. ..........................................................................................27

      F.     Deceptive or Unfair Practices are Actionable Under the CPL Even if
Resulting From Mistake or Error. ......................................................29

CONCLUSION ...........................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Alexiou v. Brad Benson Mitsubishi*,
127 F.Supp.2d 557 (D. N.J. 2000)........................................................28

*Algiori v. Metro Life Ins. Co.*,
879 A.2d 315 (Pa. Super. Ct. 2005) ....................................................39

*Ashcroft* v. *Iqbal et al.*,
556 U.S. 662 (2009) ..............................................................................3

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431, 449 (2005) ....................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................3

*Bell v. Cheswick Generating Station*,
734 F.3d 188 (2013) ............................................................................21

*Bible v. United Student Aid Funds*,
799 F.3d 633 (7th Cir. 2015)..............................................................24

*Brannan v. United Student Aid Funds, Inc.*,
94 F.3d 1260 (9th Cir. 1996) ..............................................................22

*Cal. v. ARC Am. Corp.*,
490 U.S. 93 (1989) ..............................................................................14

*Castrol Inc. v. Pennzoil Co.*,
987 F.2d 939 (3rd Cir. 1993)..............................................................37

*CFPB v. Navient Corp. et al.*,
No. 3:17-CV-101-RDM, 2017 WL 191446 (M.D. Pa. filed Jan. 18, 2017) .........9

*CFPB v. Navient Corp. et al.*,
No. 3:17-CV-101-RDM, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017)..............36

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) .................................................. 17, 18, 22

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992) ........................................................................ 15, 18, 19, 23

*Cliff v. Payco Gen. Am. Credits, Inc.*,
   363 F.3d 1113 (11th Cir. 2004) ..........................................................................24

*College Loan Corp. v. SLM Corp.*,
   396 F.3d 588 (4th Cir. 2005) ..............................................................................23

*Com. ex rel. Corbett v. Hasan*,
   Nos. 150 C.D. 2012, 151 C.D. 2012, 2013 WL 3970234 (Pa. Commw. Ct. 2013)
   ..............................................................................................................................33

*Com. v. Folcroft Landfill Corp.*,
   1 Pa. Commw. 356 (1971) ...................................................................................33

*Com. v. Golden Gate Nat'l Senior Care LLC*,
   158 A.3d 203 (Commw. Ct. of Pa 2017)..............................................................38

*Com. v. Manson*,
   903 A.2d 69 (Pa. Commw. Ct. 2006) ...................................................................39

*Com. v. Monumental Properties*,
   329 A.2d 812 (Pa. 1974).................................................................................2, 35

*Com. v. Peoples Benefit Services, Inc.*,
   923 A.2d 1230 (Pa. Commw. Ct. 2007) ...............................................................31

*Com. v. Percudani*,
   844 A.2d 35 (Pa. Commw. Ct. 2004) ...................................................................29

*Com. v. Tap Pharm. Products et. al.*,
   36 A.3d 1197 (Pa. Commw. Ct. 2011) .................................................................29

*Com. v. Zasloff*,
   8 A.2d 801 (Pa. Super. Ct. 1939) ........................................................................33

*Dzielak, v. Whirlpool Corp.*,
   120 F.Supp.3d 409 (D. N.J. 2015).......................................................................14

*Eng. v. Gen. Elec. Co.*,
   496 U.S. 72 (1990) ..............................................................................................23

iv

*Farina v. Nokia*,
    625 F.3d 97, (3d Cir. 2010) ...................................................................15

*Fla. Lime and Avocado Growers, Inc. v. Paul*,
    373 U.S. 132, 146 (1963) ........................................................................15

*Ford Motor Credit Co. v. Milhollin*,
    444 U.S. 555 (1980) ................................................................................27

*Genna v. Sallie Mae, Inc.*,
    No. 11 Civ. 7371, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012) ........... 16, 17, 22

*Gidley v. All-State Ins. Co.*,
    No. 09-3701, 2009 WL 4893567 (E.D. Pa. Dec. 17, 2009).................................38

*Girard Fin. Co. v. Pa. Human Relations Com'n*,
    52 A.3d 523 (Pa. Commw. Ct. 2012).....................................................32

*Gutierrez v. Wells Fargo Bank, NA*,
    704 F.3d 712 (9th Cir. 2012) ........................................................... 25, 26

*Heastie v. Community Bank of Greater Peoria*,
    690 F.Supp. 716 (N.D. Ill.1988)...........................................................28

*Hillsborough County, Fla. v. Automated Med. Lab., Inc.*,
    471 U.S. 707 (1985) ................................................................................24

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) ...................30

*In re Hollis*,
    No. 07-22759, 2009 WL 3030125 (Bankr. D. N.J. Sept. 17, 2009) ...................27

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3rd Cir. 2010)..................................................................3

*In re Milbourne*,
    108 B.R. 522 (Bankr. E.D. Pa. 1989)....................................................31

*In re Smith*,
    866 F.2d 576 (3rd Cir. 1989)..................................................................31

*Jamal v. WMC Mortgage Corp.*,
   No. 04-CV-5489, 2005 WL 724204 (E.D. Pa. 2005)...........................................27

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012) ...............................................................................39

*Johnson v. McCrackin-Sturman Ford, Inc.*,
   527 F.2d 257 (3d Cir. 1975) ...............................................................................27

*King v. Capital One Bank (USA) N.A.*,
   No. 1:13-cv-513-KBM-RHS (D.N.M. filed July 2, 2013)....................................8

*King v. Capital One Bank (USA) N.A.*, No. 1:13-cv-513-WJ/RHS (D.N.M. Oct. 29,
   2013) ......................................................................................................................8

*Landau v. Viridian Energy PA, LLC*,
   223 F.Supp.3d 401 (E.D. Pa. 2016)............................................................. 35, 37

*Marshak v. Treadwell*,
   240 F.3d 184 (3d Cir. 2001) .................................................................................4

*McGlawn v. Pa. Human Relations Com'n*,
   891 A.2d 757 (Pa. Commw. Ct. 2006)................................................................32

*Medtronic, Inc., v. Lohr*,
   518 U.S. 470, 485 (1996) ...................................................................................13

*Mwantembe v. TD Bank, N.A.*,
   669 F.Supp.2d 545 (E.D. Pa. 2009)....................................................................25

*Poskin v. TD Banknorth*, N.A.,
   687 F.Supp.2d 530 (W.D. Pa. 2009) ..................................................................25

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) ...........................................................................................14

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997) .............................................................................................5

*Russello v. U.S.*,
   464 U.S. 16 (1983) ...............................................................................................6

vi

*St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Associates*,
    733 A.2d 677 (Pa. Commw. Ct. 1999) ..................................................32

*Valansi v. Ashcroft*,
    278 F.3d 203 (3d Cir. 2002) ...............................................................5

*Walkup v. Santander Bank, N.A.*,
    147 F.Supp. 3d 349 (E.D. Pa. 2015)...................................................21

*Walton v. Eaton Corp.*,
    563 F.2d 66, (3d Cir. 1977) ...............................................................11

*Washington v. Navient Corp. et al.*,
    No. 17-2-01115-1 (Wash. Super. Ct. Jul. 7, 2017) ............................17

*Wigod v. Wells Fargo Bank*, N.A.,
    673 F.3d 547 (7th Cir. 2012) .............................................................26

*Williams v. Standard Fire Ins. Co.*,
    892 F.Supp.2d 615 (M.D. Pa. 2012) ..................................................21

*Wyeth v. Levine*,
    555 U.S. 555, (2009) .........................................................................13

## Statutes

12 U.S.C. § 2607(d)(4)..............................................................................8

12 U.S.C. § 5514(c)(3)(B)(i)......................................................................6

12 U.S.C. § 5514(c)(3)(B)(ii) ..................................................................10

12 U.S.C. § 5515(c)(3)...............................................................................6

12 U.S.C. § 5531(a) .................................................................................10

12 U.S.C. § 5538(b)(3)..............................................................................10

12 U.S.C. § 5538(b)(6)...............................................................................7

12 U.S.C. § 5552(a)(1)..................................................................... passim

12 U.S.C. § 5552(b)(1)(C) .........................................................................9

vii

15 U.S.C. § 1601 *et seq.*...........................................................................20

15 U.S.C. § 1640(e) ...............................................................................8, 10

15 U.S.C. § 1679h(c)(2)(A) .........................................................................10

15 U.S.C. § 1679h(c)(4) ...............................................................................7

15 U.S.C. § 1681s(c)(2) ...............................................................................10

15 U.S.C. § 1681s(c)(4) .................................................................................7

15 U.S.C. § 2073(b)(3) .................................................................................10

15 U.S.C. § 2073(b)(5) ...................................................................................7

15 U.S.C. § 5712(f) ..................................................................................7, 10

15 U.S.C. § 6103(b) .....................................................................................10

15 U.S.C. § 6103(d) .......................................................................................7

15 U.S.C. § 6504(b) .....................................................................................10

15 U.S.C. § 6504(d) .......................................................................................7

15 U.S.C. § 7706(f)(5)(A) .............................................................................10

15 U.S.C. § 7706(f)(8) ...................................................................................7

15 U.S.C. § 7804(b) .....................................................................................10

15 U.S.C. § 7804(d) .......................................................................................7

15 U.S.C. § 8405(c) .....................................................................................10

15 U.S.C. § 8405(e) .......................................................................................7

18 U.S.C. § 248(c)(3) .....................................................................................8

20 U.S.C. § 1001 *et seq.*..............................................................................2

20 U.S.C. § 1078(d) .....................................................................................22

20 U.S.C. § 1091a ........................................................................................22

20 U.S.C. § 1095a ..............................................................................................22

20 U.S.C. § 1098g ...................................................................................... 16, 20

21 U.S.C. § 337(b)(2) .........................................................................................10

21 U.S.C. § 337(b)(2)(C) ......................................................................................7

42 U.S.C. § 1320d-5(d)(4) ..................................................................................10

42 U.S.C. § 1320d-5(d)(7) ....................................................................................7

47 U.S.C. § 227(g)(7) ............................................................................................7

49 U.S.C. § 14711 .................................................................................................8

49 U.S.C. § 14711(b)(1) ......................................................................................10

49 U.S.C. § 32709(d) ............................................................................................8

73 P.S. § 201-1 *et seq.* .........................................................................................2

73 P.S. § 201-2(4)(vii) ........................................................................................34

73 P.S. § 201-2(4)(xxi) ................................................................................. 30, 34

73 P.S. § 201-3 ....................................................................................................30

73 P.S. § 201-4 ......................................................................................... 28, 29, 30

73 P.S. § 201-8(b) ................................................................................................30

## Other Authorities

"CFPB drops Kansas payday lending case," *Kansas City Star*, January 19, 2018 .10

156 Cong. Rec. S3864 (2010).............................................................................10

S. Rep. No. 97-536 (1982) ..................................................................................16

## Rules

Fed. R Civ. P. 15(a)(2).........................................................................................30

Fed. R. Civ. P. 42(a).............................................................................................9

**INTRODUCTION**

Plaintiff Commonwealth of Pennsylvania, by Attorney General Josh Shapiro ("Pennsylvania"), respectfully submits its opposition to the motion and accompanying brief ("Br.") of Navient Corporation and Navient Solutions, LLC (collectively "Navient"). This lawsuit is brought by Pennsylvania's chief law officer to protect the public by holding Navient accountable for illegal student loan origination and servicing. Pennsylvania seeks to enforce its state law and a federal statute that expressly authorizes state enforcement. Navient seeks to thwart Pennsylvania's lawsuit by ignoring the plain meaning of that federal statute, misapplying preemption case law, and arguing against long-standing consumer protection principles underlying state law public interest actions.

***First, Pennsylvania's Complaint ("Compl.") is not inconsistent with the Consumer Financial Protection Act ("CFPA").*** Navient argues, with no basis in the statutory text, that the CFPA prohibits Pennsylvania from filing claims similar to claims being litigated by the Consumer Financial Protection Bureau ("CFPB") ("concurrent claims"). Section 1042 of the CFPA explicitly permits state attorneys general ("AGs") to bring civil actions. 12 U.S.C. § 5552(a)(1). Navient argues that 1042's notice and intervention requirements imply a prohibition on concurrent state claims, but Navient skips the first step of statutory interpretation: determining

1

whether the language has a plain meaning. The CFPA unambiguously authorizes state enforcement without the implied limitations that Navient conjures.

**Second, federal law does not preempt Pennsylvania's state-law claims.** Ignoring Pennsylvania's numerous factual averments regarding Navient's unfair and deceptive conduct, Navient attempts to boil Pennsylvania's origination (Count I), servicing (Count II), and recertification (Count IV) allegations down to a simple concept—that Pennsylvania seeks to require federally-preempted "disclosures." Navient's arguments would have the untenable result of fully immunizing Navient from liability for the violative conduct as long as its "disclosures" comply with the Higher Education Act ("HEA"), 20 U.S.C. § 1001 *et seq.* regardless of its other oral or written misrepresentations and omissions to borrowers. In fact, Pennsylvania does *not* seek a regime of curative "disclosures" but instead a more fundamental concept: compliance with the Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201-1 *et seq.*

**Third, Counts I-V and VIII-IX state a claim under the CPL.** The CPL is to be construed liberally to affect its object of preventing unfair or deceptive practices and protecting the public. *Com. v. Monumental Properties*, 329 A.2d 812, 816 (Pa. 1974). In both loan origination and servicing, Pennsylvania's claims are not barred, and they are sufficient to state a claim for relief that Navient engaged in unfair or deceptive acts or practices.

2

## LEGAL STANDARD

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not pled "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim survives a motion to dismiss where it alleges "sufficient factual matter" to move from merely conceivable to facially plausible. *Id.*; *Ashcroft* v. *Iqbal et al.*, 556 U.S. 662, 678 (2009). Courts must accept the plaintiff's factual allegations as true, construing them in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3rd Cir. 2010).

## FACTUAL AND PROCEDURAL BACKGROUND

Pennsylvania's Complaint, allegations of which are incorporated herein by reference, resulted from Pennsylvania's investigation into Navient's origination and servicing practices. Navient engaged in, and continues to engage in, unfair, deceptive and abusive conduct in violation of the CPL and CFPA.

Navient Corporation argues it is not engaged in student lending or servicing and thus is not a proper defendant. However, as the Complaint alleges, Navient Corporation assumed the liabilities of its predecessors in 2014, controls hiring in its subsidiaries, and shares its five top executives with Navient Solutions, LLC. Compl. ¶¶ 21-23. Therefore, Navient Corporation is a proper defendant.

3

## ARGUMENT

## I.    THE CFPA PERMITS CONCURRENT STATE CLAIMS.

Navient argues that the CFPA prohibits Pennsylvania's CFPA claims because they are similar to the CFPB's claims. Navient asks this Court to read implied restrictions into Section 1042 despite the fact that 1042 "'has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

"When the statutory language has a clear meaning, [a court] need not look further." *Valansi v. Ashcroft*, 278 F.3d 203, 209 (3d Cir. 2002). The relevant language of Section 1042(a)(1) is unambiguous: "[T]he attorney general…of any State may bring a civil action…to enforce provisions of this title…and to secure remedies under provisions of this title or remedies otherwise provided under other law." 12 U.S.C. § 5552(a)(1). The language authorizes Pennsylvania to enforce the CFPA and does not limit state claims where the CFPB has concurrent claims pending.

**If Congress had wished to explicitly prohibit concurrent state claims when it drafted Section 1042, it would have.** As evidence that Congress knows how to prohibit concurrent claims, this Court need look no further than the "broader context of the statute as a whole." *Robinson*, 519 U.S. at 341.

4

Specifically, CFPA Section 1024(c)(3) prohibits either the FTC or the CFPB from

filing an action against a defendant if the other agency has already filed an action

against that defendant based on the same "provision of law…for any violation

alleged in the complaint." 12 U.S.C. § 5514(c)(3)(B)(i). Similarly, CFPA Section

1025 grants the CFPB primary enforcement authority over "very large" depository

institutions and provides "backup enforcement" for the other Federal bank

regulators to act if the CFPB does not. 12 U.S.C. § 5515(c)(3). Section 1024's

prohibition on concurrent FTC/CFPB lawsuits and 1025's backup enforcement—

within the same statute as 1042 (AG enforcement)—demonstrate that Congress

intended to permit concurrent state lawsuits where there exists no prohibition.

"Where Congress includes particular language in one section of a statute but omits

it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion." *Russello v.*

*U.S.*, 464 U.S. 16, 23 (1983) (internal quotation omitted).

Moreover, at least ***thirteen*** other federal consumer protection statutes

exemplify Congress' ability to authorize state enforcement and prohibit concurrent

state claims when it so intends. For example, Section 626 of the 2009 Omnibus

Appropriations Act directed the FTC to promulgate rules for foreclosure rescue

services and was amended by the CFPA to add references to the CFPB. It states:

5

> Whenever a civil action or an administrative action has been instituted by [the CFPB or FTC] for violation of any provision of law or rule described in paragraph (1), no State may, during the pendency of such action…, institute a civil action under that paragraph against any defendant named in the complaint in such action for violation of any law or rule as alleged in such complaint.

12 U.S.C. § 5538(b)(6). Similar limitations appear in three other consumer financial protection statutes[1] and nine other consumer protection statutes.[2] At the same time, although many statutes prohibit concurrent state claims, Congress has passed five consumer protection statutes (in addition to the CFPA) that authorize state enforcement and do not prohibit concurrent claims.[3]

Navient argues that no "court has ever allowed a state AG to maintain such copycat CFPA claims." Br. at 10. But a New Mexico court has permitted that state's AG to pursue CFPA claims based on the same underlying conduct of a previously-filed CFPB consent order.[4] Moreover, Navient cannot point to any court that has *blocked* concurrent CFPA claims. As the plain meaning of 1042 is

---

[1] 15 U.S.C. § 6103(d); 15 U.S.C. § 1679h(c)(4); 15 U.S.C. § 1681s(c)(4).

[2] 21 U.S.C. § 337(b)(2)(C); 47 U.S.C. § 227(g)(7);15 U.S.C. § 5712(f); 15 U.S.C. § 6504(d); 15 U.S.C. § 7706(f)(8); 15 U.S.C. § 7804(d); 15 U.S.C. § 2073(b)(5); 42 U.S.C. § 1320d-5(d)(7); 15 U.S.C. § 8405(e).

[3] *See* 12 U.S.C. § 2607(d)(4); 15 U.S.C. § 1640(e); 18 U.S.C. § 248(c)(3); 49 U.S.C. § 32709(d); 49 U.S.C. § 14711.

[4] *See King v. Capital One Bank (USA) N.A.*, No. 1:13-cv-513-KBM-RHS (D.N.M. filed July 2, 2013); *King v. Capital One Bank (USA) N.A.*, No. 1:13-cv-513-WJ/RHS (D.N.M. Oct. 29, 2013) (denying a motion to dismiss a state claim brought under Section 1042, where the CFPB had already settled its investigation of the same conduct).

clear—Congress did not include language to prohibit concurrent state claims—this Court need not look further in interpreting it. Nonetheless, Pennsylvania will briefly address Navient's arguments.

*First*, Navient contends that concurrent state claims render the CFPA's pre-suit notice provision moot because the CFPB "already knows" the alleged facts underlying the state's proceeding. Br. at 11. But Navient misses the point of the notice provision. Since the CFPA is the CFPB's enabling act and source of its organic enforcement authority, the CFPB has a strong interest in how courts and states interpret the CFPA. Pre-suit notice enables the CFPB to decide: (1) whether to raise any concerns with a state before claims are filed and (2) whether to intervene in the case. Thus, notice is useful even where the CFPB already knows the underlying facts or is litigating.

Moreover, the language of the notice provision suggests Congress anticipated concurrent claims. The provision requires the state to describe, *inter alia*, "whether there may be a need to coordinate the prosecution of the proceeding so as not to interfere with *any action*, including any rulemaking, undertaken by the Bureau…" 12 U.S.C. § 5552(b)(1)(C). The same expansive phrase "any action" is used in Section 1031, upon which the CFPB's claims rely. *CFPB v. Navient Corp. et al.*, No. 3:17-CV-101-RDM, 2017 WL 191446 (M.D. Pa. filed Jan. 18, 2017); 12 U.S.C. § 5531(a).

7

***Second***, Navient argues that the intervention provision in Section 1042 demonstrates Congress intended to prevent concurrent state claims. But such intervention provisions exist elsewhere in the CFPA,[5] and they exist in: (A) twelve of the thirteen statutes discussed above that *prohibit* concurrent state claims and (B) two of the five that *permit* such claims.[6] Thus, an intervention provision does not imply a prohibition on concurrent claims.

Navient argues that permitting CFPB intervention in a concurrent state lawsuit would violate "the rule that a single party-plaintiff cannot simultaneously maintain two actions against the same defendant(s)." Br. at 12. However, the case upon which Navient relies is distinguishable: there, one plaintiff filed two employment lawsuits based on the same underlying facts, in the same court, against the same defendant. *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). The *Walton* Court held that filing a second action could not resurrect a previously-waived right to jury trial. In contrast, Pennsylvania and the CFPB are two separate plaintiffs with two different lawsuits. Pennsylvania's lawsuit is intended to protect the public from and remediate violations of both Pennsylvania and federal laws. If

---

[5] 12 U.S.C. § 5514(c)(3)(B)(ii).
[6] 12 U.S.C. § 5538(b)(3); 15 U.S.C. § 6103(b); 21 U.S.C. § 337(b)(2); 15 U.S.C. § 5712(f); 15 U.S.C. § 1679h(c)(2)(A); 15 U.S.C. § 1681s(c)(2); 15 U.S.C. § 6504(b)); 15 U.S.C. § 7706(f)(5)(A); 15 U.S.C. § 7804(b); 15 U.S.C. § 2073(b)(3); 42 U.S.C. § 1320d-5(d)(4); 15 U.S.C. § 8405(c); 15 U.S.C. § 1640(e); 49 U.S.C. § 14711(b)(1).

the CFPB were to intervene here, it would not be attempting to resurrect a previously-waived procedural right.[7]

**Third**, Navient contends that "the [CFPA's] lack of statutory authorization for state intervention in pending CFPB cases underscores that Congress did not intend to allow copycat claims." Br. at 13. To support its argument, Navient cites a completely unrelated statute concerning constitutional challenges to state laws, which understandably includes a state intervention provision. *Id*. However, Navient does not cite the more analogous nineteen federal consumer protection statutes referenced above that authorize state enforcement because *not a single one* authorizes state intervention in federal lawsuits. In contrast, like the CFPA, fourteen of the nineteen grant the relevant *federal agency* an intervention right in *state* lawsuits, which makes sense since that agency administers the statute. Accordingly, the CFPA's omission of an unconditional state intervention right has no bearing on whether states may file concurrent claims.

**Finally**, Navient argues that concurrent claims would unduly burden the parties and the Court. Pennsylvania's lawsuit includes nine counts. But only four rely on the CFPA, and one of Pennsylvania's five CPL counts arises from conduct

---

[7] Of course, the Court may consolidate the parts of this case and the CFPB's case that "involve a common question of law or fact," regardless of whether the CFPB intervenes. Fed. R. Civ. P. 42(a).

not addressed by the CFPB's lawsuit. Dismissing Pennsylvania's CFPA claims would not appreciably reduce the scope of this case because the CPL counts rely on similar underlying facts as the CFPA claims.[8]

Moreover, recent changes at the CFPB and its decision to dismiss a pending payday lending lawsuit[9] make it even more important to maintain Pennsylvania's CFPA claims. Congress authorized states to enforce the CFPA recognizing that the regulatory landscape may change. According to the Senator who authored Section 1042, "While the new bureau will be the main enforcer of its new rules, we have preserved the role for the State AGs to ensure that the consumers are not put at risk because Federal regulators are asleep at the switch."[10] The states in effect were fully deputized to pursue CFPA claims to enable states to protect consumers regardless of the dynamics within the CFPB. Pennsylvania has no authority to direct the CFPB, but its AG has a statutory duty to protect the public interest.

---

[8] Navient argues the Court must dismiss Pennsylvania's CFPA claims to the extent they are based on pre-July 2011 loan servicing. They are not.

[9] "CFPB drops Kansas payday lending case," *Kansas City Star*, January 19, 2018, available at: www.kansascity.com/news/politics-government/article195623824.html.

[10] Senator Tom Carper, discussing his amendment that created the near-final version of Section 1042 and passed the Senate by a vote of 80-18, 156 Cong. Rec. S3864, S3871-72 (2010).

## II.   PENNSYLVANIA'S CONSUMER PROTECTION POLICE POWERS ARE NOT PREEMPTED BY THE HEA.

### A. There is a Judicial Presumption Against Preemption.

Two principles guide courts when assessing preemption matters. First, the intent of Congress is the "ultimate touchstone." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated...in a field which the States have traditionally occupied,'…we 'start with the assumption that the historic police powers of the States were not to be superseded…unless that was the clear and manifest purpose of Congress.'" *Id*. (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Further, because states are independent sovereigns within the federal system, courts have long presumed that Congress does not cavalierly preempt state-law causes of action. *Id*. at 565 n.3. The Supreme Court has referred to this as the "presumption against preemption." *Id*.

Consumer protection is a field that states have traditionally occupied. *See, e.g., Dzielak, v. Whirlpool Corp.*, 120 F.Supp.3d 409, 418 (D. N.J. 2015) (noting that state law has historically governed the field of actions for breach of warranty or false advertising); *Cal. v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) (noting the long history of state common-law and statutory remedies against unfair business practices); *Fla. Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146 (1963)

11

(statute to "prevent the deception of consumers" within scope of state's police powers).

### B. Express Preemption of Counts II and IV is Not Warranted.

Express preemption applies where Congress explicitly states its intent to preempt state law in the statutory language. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). But the presence of an express preemption provision does not end the inquiry. *Farina v. Nokia*, 625 F.3d 97, 117-18 (3d Cir. 2010) (citing *Lohr*, 518 U.S. at 485-86). Courts still must examine congressional intent as to the scope of the preemption provision. *Id*. at 118. Although courts look primarily to the text of the statute to discern congressional intent, they also look to the context of the regulatory scheme as a whole, including its purposes and the way in which Congress intended it to affect the public and the law. *Id*. Moreover, because of the presumption against preemption, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Id*. (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

In the instant matter, Navient's express preemption argument relies on Section 1098g of the HEA, which states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g.

12

Specifically, Navient argues that the aforementioned language related to state law loan disclosure requirements preempts Pennsylvania's CPL allegations with regard to *servicing* and *recertification* misconduct.

From a practical standpoint, loan *servicing* is a different activity than loan *origination*. In *Genna v. Sallie Mae, Inc.*, No. 11 Civ. 7371, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012), the court rejected a similar express preemption argument under Section 1098g and allowed the borrowers' state breach of contract and fraudulent misrepresentation claims to proceed. *Genna*, 2012 WL 1339482, at *8-9. There, the court stated:

> [T]here is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer like Sallie Mae shall interact with a customer like Genna in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity. Sallie Mae has not shown that § 1098g, or anything else in the HEA, expressly preempts Genna's claims.

*Id.* at *8.

In *Genna,* Sallie Mae (Navient's predecessor) had argued that the court should follow the ruling in *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010). The court, however, noted that *Chae* dealt with "billing statements, coupon books and standardized forms" that "complied with federal regulations governing such

instruments." *Genna*, 2012 WL 1339482, at *8. [11] Similarly, the instant matter does

not deal with approved standardized forms; instead, Pennsylvania has alleged

Navient engaged in overarching unfair and deceptive servicing conduct in its day-

to-day interactions with customers in violation of the CPL.

In light of Navient's heavy reliance on *Chae* and its progeny, it is important

to note two points regarding this decision. First, even in *Chae*, certain state law

claims alleging fraudulent and deceptive practices survived the defendant's express

preemption argument. *Chae*, 593 F.3d at 943. Secondly, the primary concept

arising out of *Chae*—that a misrepresentation claim is merely the converse of a

disclosure claim and, therefore, subject to preemption—is based upon an

incomplete reading of *Cipollone*, 505 U.S. 504. In *Cipollone*, the Court determined

the extent to which the Cigarette Labeling and Advertising Act preempted state

law. The statutory language at issue stated: "No requirement or prohibition based

on smoking and health shall be imposed under State law with respect to the

advertising or promotion of any cigarettes the packages of which are labeled in

---

[11] Furthermore, in a pending case where the Washington AG brought very similar
state consumer protection claims related to Navient's servicing conduct, the
Washington Superior Court denied Navient's Motion to Dismiss that was based in
part upon *Chae* preemption arguments. *See* Transcript of Hearing on Defendants'
Motion for Limited Dismissal at 36-37, *Washington v. Navient Corp. et al.*, No.
17-2-01115-1 (Wash. Super. Ct. Jul. 7, 2017).

conformity with the provisions of this Act." *Cipollone*, 505 U.S. at 515 (citation omitted).

In *Cipollone,* the Petitioner's claim for fraudulent misrepresentation included two theories. First, the Petitioner alleged that Respondent's advertising neutralized the effect of the mandated warning in violation of a state law prohibition against advertisements that minimized the health hazards associated with smoking. In response, the Court found the state "prohibition" to be the "converse" of a state law requirement that warnings be included in advertising and found the claim expressly preempted. *Id.* at 527. Through *Chae*, Navient has seized upon this portion of *Cipollone*'s ruling as a basis for prohibiting any effort by Pennsylvania to seek compliance with the CPL.

The *Cipollone* Court's treatment of Petitioner's second theory, however, while not discussed in *Chae,* is of significant relevance here. The second theory alleged intentional fraud and misrepresentation both by false representation of a material fact and by concealment of a material fact. *Id.* at 528. In noting that the predicate for these claims was a state law duty not to make false statements of material fact or to conceal such facts, the court determined that these claims were not predicated on a duty "based on smoking and health," but rather on a more general obligation: the duty not to deceive. *Id.* at 528-29. As a result, the Court found that this second theory was *not preempted*, noting that Congress in

15

promulgating the Act had "offered no sign that it wished to insulate the cigarette manufacturers from longstanding rules governing fraud." *Id.* at 529.

Finally, to support such a significant result, one would expect Congress to have articulated its intention within the legislative history; but that history shows no such intent. Instead, as stated in the relevant Senate Report, the motivation behind Section 1098g was to exempt covered student loans from the Truth in Lending Act's ("TILA"), 15 U.S.C. § 1601 *et seq.* disclosure requirements because those loans were already subject to existing HEA disclosures. *See* S. Rep. No. 97-536, at 42 (1982). Essentially, Section 1098g was merely an effort to reduce paperwork. *Id.* ("…the exemption from [TILA] provisions for these students loans will help to eliminate duplicative paperwork for students, post-secondary educational institutions, state guarantee agencies and lenders while still providing all disclosures and protections to students that are currently required under the act"). Similar to the Cigarette Labeling and Advertising Act provisions in *Cipollone*, here there is no indication of a congressional intent to insulate Navient from state consumer protection law requirements.

### C. Conflict Preemption of Counts II and IV is Not Warranted.

Conflict preemption applies "when it is impossible to comply with both federal and state law…either where compliance with both laws is impossible or where state law erects an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress." *Walkup v. Santander Bank, N.A.*, 147

F.Supp.3d 349, 356 (E.D. Pa. 2015) (claims under the CPL are not preempted by

the Federal Home Ownership Modification Program (citation omitted)); *Bell v.*

*Cheswick Generating Station*, 734 F.3d 188, 193-94 (2013) (rejecting an argument

that state tort law conflicted with the objectives of the Clean Air Act); *Williams v.*

*Standard Fire Ins. Co.*, 892 F.Supp.2d 615, 622 (M.D. Pa. 2012) (state law claim

for negligent misrepresentation is not preempted by the National Flood Insurance

Act, and noting the purpose of the Act would not be thwarted by allowing a state

law claim for negligence or misrepresentations during the insurance procurement

process).

Yet again, Navient relies on the *Chae* decision; in this instance for their

position that the CPL presents an obstacle to the uniformity objectives of the HEA.

While *Chae* acknowledged the aforementioned presumption against preemption, it

then unnecessarily abandoned that precedent and cobbled together a basis for

conflict preemption relying on its review of the HEA's various statutory provisions

involving loan terms, standardized forms and a ruling from another court decision

(*Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996))

that identified a concern about exposure to lawsuits from multiple

jurisdictions. *Chae*, 593 F.3d at 944-46.

17

Navient's brief specifically embraces the exposure argument set forth in
*Brannan*, but *Genna* found fault with the quote from the Secretary of Education
upon which *Brannan,* and then *Chae*, relied upon. *Genna*, 2012 WL 1339482 at *9
(finding the quote was a "decontextualized fragment" relating to debt collection
not loan servicing, and further noting that to read the quote more broadly than its
context would be "in effect to find field preemption, which precedent precludes us
from doing").

Navient's conflict preemption argument, based upon *Chae*'s determination
that HEA demonstrates Congress intended a sweeping goal of regulatory
"uniformity," is also belied by the existence of provisions of HEA that expressly
preempt state law. *See, e.g.*, 20 U.S.C. §§ 1078(d) (usury laws), 1091a (statutes of
limitation and debt collection costs), 1095a (wage garnishment). These express
preemption provisions demonstrate that Congress intentionally did not preempt
state law generally, or in respects other than those it addressed. *See Cipollone*, 505
U.S. at 517 ("When Congress has considered the issue of pre-emption and has
included in the enacted legislation a provision explicitly addressing that issue, and
when that provision provides a reliable indicium of congressional intent with
respect to state authority, there is no need to infer congressional intent to preempt
state laws from the substantive provisions of the legislation." (internal quotations
and citations omitted)). *See also Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990)

18

(noting the Supreme Court has "observed repeatedly that pre-emption is ordinarily not to be implied absent an 'actual conflict'").

Other courts have not reached *Chae*'s conclusion that the goal of the HEA uniformity conflicts with the application of state law. In *College Loan Corp.*, a case which *Chae* declined to follow, the court stated that the existence of comprehensive federal regulations that fail to occupy the regulatory field do not, by their mere existence, preempt non-conflicting state law. *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005) ("[t]o infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive." (quoting *Hillsborough County, Fla. v. Automated Med. Lab., Inc.*, 471 U.S. 707, 717 (1985)). *See also Bible v. United Student Aid Funds*, 799 F.3d 633, 652 (7th Cir. 2015) (rejecting argument that allowing state law claim would frustrate Congress's goal of "uniformity" because it would require many state and federal courts to interpret HEA regulations in potentially inconsistent ways); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1126-31 (11th Cir. 2004) (broad purposes of HEA were not obstructed by having to comply with a provision of state debt collection law).

Similarly, in a matter dealing with the relationship between state consumer protection law and the National Bank Act ("NBA"), the Ninth Circuit recognized

19

that California's consumer protection law generally prohibiting misleading

statements was a non-discriminating state law of general applicability and was

therefore not subject to preemption by the NBA because it did not mandate the

content of any non-misleading and non-fraudulent statements and did not interfere

with federally regulated activities. *See Gutierrez v. Wells Fargo Bank, NA*, 704

F.3d 712, 727 (9th Cir. 2012). *See also Poskin v. TD Banknorth, N.A.*, 687

F.Supp.2d 530, 555-557 (W.D. Pa. 2009) (claim under the CPL is not preempted

under the NBA as the CPL is a law of general applicability and not targeted

directly at banking and lending); *Mwantembe v. TD Bank, N.A.*, 669 F.Supp.2d

545, 553 (E.D. Pa. 2009) (CPL claims related to gift-card marketing were not

subject to conflict preemption by the NBA and related regulations; "[t]he duty to

refrain from deceptive and misleading conduct is imposed on all businesses. State

laws of general application, which merely require all businesses, including banks,

to abide by contracts and refrain from making misrepresentations to customers, do

not impair a bank's ability to exercise its gift-card issuing powers"); *Wigod v.

Wells Fargo Bank, N.A.*, 673 F.3d 547, 577 (7th Cir. 2012) (providing that "laws

of general applicability survive preemption so long as they do not effectively

impose standards that conflict with federal ones").

Again, consistent with *Gutierrez*, Pennsylvania does not seek a specific

disclosure regimen that would conflict with the HEA; it merely seeks compliance

with the CPL. For the forgoing reasons, Counts II and IV are not subject to conflict preemption.

### D. Conflict Preemption of Count I is Not Warranted.

Navient mischaracterizes Count I (origination) by restyling it as simply a request for additional disclosures while ignoring the breadth of averments detailing a comprehensive predatory lending scheme. *See, e.g.,* Compl. ¶¶ 45-93. Again, this argument misses the mark in the wake of Pennsylvania's aforementioned goal of overall CPL compliance and relevant case law.

Navient's attempt to defeat the Count by shoehorning it into a conflict preemption framework must fail. First, neither of the cases cited by Navient, *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980) and *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3d Cir. 1975), involves TILA preemption issues or holds that TILA preempts state consumer protection laws.

Further, in instances where a preemption analysis has been applied to TILA, state consumer protection laws have been found compatible. *See, e.g.*, *In re Hollis*, No. 07-22759, 2009 WL 3030125, at *11 (Bankr. D. N.J. Sept. 17, 2009) (in a predatory lending case, rejecting a national bank's argument that TILA preempted New Jersey's Consumer Fraud Act and stating that "[n]ational banks can and should conduct their full panoply of powers without engaging in fraudulent activity."); *Jamal v. WMC Mortgage Corp.*, No. 04-CV-5489, 2005 WL 724204, at

*4 (E.D. Pa. 2005) (refusing to find that TILA preempted the CPL in a predatory

lending action); *Alexiou v. Brad Benson Mitsubishi*, 127 F.Supp.2d 557, 560 (D.

N.J. 2000) ("…TILA was not meant to preempt the field of laws relating to

consumer lending practices"); *Heastie v. Community Bank of Greater Peoria*, 690

F.Supp. 716, 720 (N.D. Ill.1988) ("[TILA] [p]reemption does not extend to general

state statutes prohibiting fraud.") Therefore, Navient's preemption claim fails.

### III. THE COMPLAINT STATES A CLAIM FOR UNFAIR OR DECEPTIVE PRACTICES UNDER THE CPL AND THE CFPA.

#### A. Pennsylvania May Bring a CPL Claim for Past Conduct.

On the basis of the phrase "using or about to use" that appears in Section

201-4 of the CPL, Navient argues that Count I should be dismissed because

Pennsylvania lacks authority to bring a claim to enjoin conduct that has ceased. Br.

at 22-23. Navient's argument is contrary to Pennsylvania law. In *Com. v.*

*Percudani*, 844 A.2d 35 (Pa. Commw. Ct. 2004), the court specifically rejected the

same argument Navient makes regarding the "using or about to use" language

of Section 201-4, noting that case law supports the granting of injunctive relief for

violations of the CPL based on past illegal conduct. *Percudani*, 844 A.2d at 45-46

(reasoning that if the defendant's interpretation were adopted, a party could avoid

liability by simply ceasing unlawful activity "and claim[ing] that the matter is

moot"). The Court wrote, "[t]o allow a party to avoid liability for its actions by

merely discontinuing its conduct" would render the CPL meaningless. *Id.* at 46.

*See also Com. v. Tap Pharm. Products et. al.*, 36 A.3d 1197, 1242 (Pa. Commw.

Ct. 2011) (holding that an injunction can be issued pursuant to Section 201-4 based

on prior unlawful conduct that has ceased (citing *Percudani*, 844 A.2d at 45-46

)).[12] The one case cited by Navient in support of its argument—*Hunt v. U.S.*

*Tobacco Co.*, 538 F.3d 217, 228 n.8 (3d Cir. 2008), *as amended* (Nov. 6, 2008)—is

not factually analogous or applicable.[13]

### B. Pennsylvania's Origination Claim Sufficiently Alleges "Deceptive" and "Unfair" Conduct.

Navient argues that Count I should be dismissed because Pennsylvania did

not allege that Navient failed to make any federally required loan disclosures or

disclose the loan terms. Br. at 24. Navient mischaracterizes Count I's allegations.

The alleged misconduct does not relate to the terms of the loans or federal loan

disclosures but rather to the unfair and deceptive manner in which Navient's

subprime loans were originated and implemented. Compl. ¶¶ 45-93 and 174.

Payment term disclosures cannot cure underlying deceptive and unfair practices.

---

[12] The language of Section 201-8(b) also supports this conclusion, providing for a civil penalty in an action brought under Section 201-4 if the court finds that a person or entity is willfully using or "has willfully used" a method, act or practice declared unlawful by Section 201-3. 73 P.S. § 201-8(b).

[13] *Hunt* was an interlocutory appeal addressing solely the issue of whether a private plaintiff is required to prove reliance in order to state a deception claim under Section 201-2(4)(xxi) of the CPL.

An act or practice is deceptive or unfair if it has the capacity or tendency to deceive. *Com. v. Peoples Benefit Services, Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007).

In accordance with the purpose of the CPL, courts have held that opportunistic and unfair lending practices violate the CPL. *See In re Milbourne*, 108 B.R. 522, 537 (Bankr. E.D. Pa. 1989); *In re Fricker*, 115 B.R. 809, 823 (Bankr. E.D. Pa. 1990). In *In re Smith*, 866 F.2d 576, 584 (3rd Cir. 1989), the Third Circuit aptly noted, "A borrower of money, especially the owner of a residential property mortgaged to a lending institution, may reasonably expect that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken by the lender." *In re Smith*, 866 F.2d at 584. Pennsylvania maintains that the same should hold true for students seeking to finance their futures.

Further, where a loan provider targets a vulnerable group of people and does not account for their ability to repay, then a court is likely to find there was predatory lending. *Girard Fin. Co. v. Pa. Human Relations Com'n*, 52 A.3d 523, 536 (Pa. Commw. Ct. 2012). *See also McGlawn v. Pa. Human Relations Com'n*, 891 A.2d 757, 772 (Pa. Commw. Ct. 2006). Whether lending practices are predatory and unfair is a question for the fact finder. *Girard*, 52 A.3d at 533.

24

### C. Laches Is Not An Available Defense.

Under Pennsylvania law, "laches may not be raised as a defense in situations where the Commonwealth is attempting to enforce duties and obligations under its police power." *St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Associates*, 733 A.2d 677, 681-82 (Pa. Commw. Ct. 1999) (citation omitted). In the rare case in which the defense is available against Pennsylvania, the defendant must show "a stronger case of delay or acquiescence." *Id.* at 681 (citation omitted). Finally, dismissal on the basis of laches is generally inappropriate on a motion to dismiss. *See Com. v. Folcroft Landfill Corp.*, 1 Pa. Commw. 356, 360 (1971).

Laches is not an available defense to Count I, which is an exercise of Pennsylvania's police power. *See Com. v. Zasloff*, 8 A.2d 801, 803 (Pa. Super. Ct. 1939) ("enactment of proper legislation to insure fair trade practices is undoubtedly within the police power of the State"); *Com. ex rel. Corbett v. Hasan*, Nos. 150 C.D. 2012, 151 C.D.2012, 2013 WL 3970234, at *6 (Pa. Commw. Ct. 2013) ("enforcement of consumer protection statutes is an exercise of government police…power"). Even if a laches defense were available, Navient falls far short of the heightened standard. Navient's predecessors could not reasonably have interpreted any accreditation or licensure from Pennsylvania as signaling Pennsylvania's acquiescence to lenders issuing *subprime* loans to students *with poor credit* in order for them to attend those schools. Finally, if this case proceeded

to discovery, Pennsylvania would show that many of the subprime loans were issued to students attending schools not accredited or licensed by Pennsylvania.

### D. Pennsylvania's Loan Servicing Claims Sufficiently Allege "Deceptive" Conduct.

Counts II and IV sufficiently state that Navient's loan servicing practices violated Sections 201-2(4)(vii) and (xxi) of the CPL. Navient wrongly asserts that the "Commonwealth merely claims borrowers were not provided [income-driven repayment ("IDR") plan] information enough times or through a preferred medium (i.e. by phone)." Br. at 27. Navient then incorrectly concludes such conduct does not constitute a violation of the CPL. This argument is factually and legally flawed.

First, Navient ignores and misrepresents the scope of the allegations raised under Count II. Navient only acknowledges Pennsylvania's allegation that Navient failed to meaningfully disclose to borrowers, during phone calls, the availability of IDR plans. Compl. ¶¶ 110, 177(b). However, Pennsylvania additionally alleges Navient's servicing practices steered consumers into costly forbearances, despite its public assurances to borrowers that it would help them "minimize[] [their] total interest cost." Compl . ¶¶ 108-109, 177(c). Pennsylvania further alleges Navient misrepresented the suitability of certain federal loan repayment options. Compl. ¶¶ 118, 126, 177(a). Navient does not dispute the legal sufficiency of these additional allegations.

Second, Navient incorrectly argues that "Pennsylvania law does not recognize a claim for 'deceptive' conduct based on an alleged failure to disclose material facts when those very facts were, in fact, disclosed in writing." Br. at 27. But in *Landau v. Viridian Energy PA, LLC*, 223 F.Supp.3d 401 (E.D. Pa. 2016), the Court found it deceptive for an electric supply company "to make bold assurances and then hide behind fine print of disclaimers." *Landau*, 223 F.Supp.3d at 419. The Court found this kind of bait-and-switch marketing particularly misleading. *Id.* Moreover, Navient's proposition is nowhere supported by the language of the CPL and conflicts with the legislative intent that the CPL is to be broadly construed. *Monumental Properties*, 329 A.2d at 816.

Moreover, Navient fails to establish that the email recertification notices were not misleading or deceptive as a matter of law. Despite the fact that the government permits email notifications, Navient still is obliged to ensure such notifications are not deceptive.[14]

### E. Counts II and III Are Premised On Actionable Misstatements and Omissions.

Counts II and III are premised on the statements and omissions of Navient's customer service representatives made in telephone conversations with consumers,

---

[14] Likewise, in its efforts to dismiss Count IV, Navient makes no effort to dispute or discredit the allegations of misconduct relating to the recertification notices Navient sent *by mail*. Compl. ¶¶ 135-139, 184(a)-(b).

27

*see* Compl. ¶¶ 177(a)-(b), 180(a)-(b), and statements on Navient's website misrepresenting a willingness to "help [borrowers] by identifying **options and solutions**" that will "**minimize[] [their] total interest cost**." Compl. ¶¶ 108, 177(c) (emphasis added).

This Court has already rejected Navient's attempt to cast these website statements as puffery in its opinion denying Navient's motion to dismiss the CFPB's complaint. *See CFPB v. Navient Corp. et al.*, No. 3:17-CV-101-RDM, 2017 WL 3380530, at n.9 (M.D. Pa. Aug. 4, 2017) ("In contrast [to a case cited by Navient where consumers unreasonably relied on puffery], the case at hand involves the allegation that Navient made a specific statement that it would give a borrower sufficient information to make an informed decision about which repayment plan would be best for his or her situation and then failed to follow through with that promise."). This Court's reasoning was correct and should be affirmed. The website statements are distinguishable from puffery because they falsely represented specific characteristics of Navient's services. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945-46 (3rd Cir. 1993). Contrary to the website statements, Navient informed many borrowers of only *one* option or solution: forbearance. *See, e.g.,* Comp. ¶¶ 109-124, 177(a)-(b), (d); 180(a)-(b), (d). Also contrary to the website statements, Navient's steering of borrowers towards

forbearance did *not* minimize borrowers' total interest cost. *See, e.g.,* Comp. ¶¶ 105-106, 120.

Regardless of whether or not the website statements are puffery, Counts II and III survive because they are also premised on the misstatements and omissions of Navient's customer service representatives. *See*, *e.g*., *Landau*, 223 F.Supp.3d at 416-17; *Gidley v. All-State Ins. Co.*, No. 09-3701, 2009 WL 4893567, at *4-6 (E.D. Pa. Dec. 17, 2009). The case of *Com. v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203 (Commw. Ct. of Pa 2017), cited by Navient, does not hold otherwise.[15]

### F.  Deceptive or Unfair Practices are Actionable Under the CPL Even if Resulting From Mistake or Error.

Navient concludes with an unsupported assertion that Counts VIII and IX should be dismissed because allegations that Navient engaged in "misallocating and misapplying" borrower payments fail to state a claim under the CPL as a matter of law.[16] Navient asserts that labeling errors as unfair or deceptive "does not

---

[15] *Golden Gate* is not factually analogous or applicable, as it primarily involved false advertising claims (which were not pleaded here) that were dismissed for a variety of reasons, most of which are not at issue in this case. *Golden Gate*, 158 A.3d at 216-26.

[16] It is unclear why Navient referred in this section to Count IX, which alleges violation of the CFPA, not the CPL.

transform them into the kind of intentional misconduct that is actionable under the CPL." Br. at 30.

Wrongful intent is not a required element of a claim under the CPL. "The question, then, is not whether a company or corporate officer engaged in conduct that was intended to deceive consumers. Rather, the question is whether the company or corporate officer engaged in conduct that might be 'deceptive to the ordinary consumer.'" *Com. v. Manson*, 903 A.2d 69, 74 (Pa. Commw. Ct. 2006) (citation omitted).

Navient cites no case that supports its proposition that errors or mistakes cannot give rise to a claim under the CPL. It cites only *Algiori v. Metro Life Ins. Co.*, 879 A.2d 315, 318, 322 (Pa. Super. Ct. 2005) for the undeniable statement that the CPL's purpose is to protect the public from unfair or deceptive business practices and to deter such practices, and *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012), an inapposite case. Neither supports an argument that a showing of improper intent is a prerequisite to an action under the CPL.

## **CONCLUSION**

For the forgoing reasons, Navient's Motion to Dismiss should be denied in its entirety. If any part of Navient's motion is granted, the Bureau should be granted leave to file an amended complaint. Fed. R Civ. P. 15(a)(2).

Dated: February 2, 2018      Respectfully submitted,

Josh Shapiro
*Attorney General*

   /s/ John M. Abel             
John M. Abel, PA 47313
(Email: jabel@attorneygeneral.gov)
(Phone: 717-787-9707)
(Fax: 717-705-3795)
Jesse Harvey, PA 63435
(Email: jharvey@attorneygeneral.gov)
(Phone: 412-565-5134)
(Fax: 412-880-0196)
*Senior Deputy Attorneys General*

Attorneys for Plaintiff
Commonwealth of Pennsylvania
Office of Attorney General
Bureau of Consumer Protection
417 Lackawanna Ave
Scranton, PA 18503

## CERTIFICATE OF COMPLIANCE
## <u>WITH LOCAL RULE 7.8(b)(3)</u>

I, John Abel, hereby certify that the foregoing memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss is in compliance with Local Rule 7.8(b)(3) and the December 7, 2017 Order of Court (Doc. No. 22). The brief contains 6,972 words as computed by Microsoft Office Word.

<u>/s/ John Abel</u>
John M. Abel, PA 47313
(Email: jabel@attorneygeneral.gov)
(Phone: 717-787-9707)
(Fax: 717-705-3795)
*Senior Deputy Attorney General*

Attorney for Plaintiff
Commonwealth of Pennsylvania
Office of Attorney General
Bureau of Consumer Protection
417 Lackawanna Ave
Scranton, PA 18503

Date: February 2, 2018

## CERTIFICATE OF SERVICE

I, John Abel, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss was served upon all counsel of record who are deemed to have consented to electronic filing through the Court's CM/ECF system on this 2nd day of February, 2018.

/s/ John Abel
John M. Abel, PA 47313
(Email: jabel@attorneygeneral.gov)
(Phone: 717-787-9707)
(Fax: 717-705-3795)
*Senior Deputy Attorney General*

Attorney for Plaintiff
Commonwealth of Pennsylvania
Office of Attorney General
Bureau of Consumer Protection
417 Lackawanna Ave
Scranton, PA 18503