# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Commonwealth of Pennsylvania,

        Plaintiff,

     v.

Navient Corporation and
Navient Solutions, LLC,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NO. 3:17-cv-1814-RDM**

JUDGE MARIANI


**NAVIENT DEFENDANTS' REPLY
IN SUPPORT OF THEIR MOTION FOR CERTIFICATION**

## INTRODUCTION

Prompt appellate review of the three purely legal questions presented by Defendants is warranted; each is novel and subject to substantial grounds for a difference of opinion, and appellate review of these issues would materially streamline this case.

The Commonwealth nonetheless claims that certification could be granted only if this Court were to adopt Defendants' "mischaracteriz[ations of] the well-reasoned factual and legal bases of the Opinion" and "portray[al]" of that opinion as "tenuous," Opp'n Br. at 2. But that's not what Defendants argue. Defendants assert only that the Court's Opinion was drafted "on a blank slate" as to the CFPA question, Op. at 22; confronted issues of law that have split federal judges across the country as to the preemption question, *id.* n. 9, 41; and observed the dearth of authority regarding the injunction issue, *id.* n. 12. Such orders, which involve difficult and novel questions, are properly certified. *See, e.g.*, *In re Trace Int'l Holdings, Inc.*, No. 04-CV-1295, 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009).

Given these novel, purely legal questions—and the burdensome discovery and litigation costs that inevitably will be associated with the maintenance of those claims through trial—Defendants submit that the interests of judicial economy will be best served by prompt appellate review of these dispositive matters.

**ARGUMENT**

**THIS COURT SHOULD CERTIFY FOR INTERLOCUTORY APPEAL THE THREE ISSUES RAISED IN DEFENDANTS' MOTION**

### A. The Court Should Certify The CFPA Copycat-Claims Issue.

The Commonwealth concedes that the question of whether it may pursue "copycat" Consumer Financial Protection Act ("CFPA") claims despite the Consumer Finance Protection Bureau's ("CFPB") ongoing, antecedent pursuit of its own virtually identical claims "involves a controlling question of law." Opp'n Br. at 6. Certification of this issue therefore turns on whether there is "substantial ground for difference of opinion," and whether "an immediate appeal … may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); Opp'n Br. at 6-9. There is, and it would.

### 1. Substantial ground for difference of opinion surrounds this unsettled, important question.

Substantial grounds for difference of opinion exist where a court must resolve "one or more difficult and pivotal questions of law not settled by controlling authority." *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)). That is so here, and this Court already has acknowledged as much: There is "no relevant case law" regarding whether the CFPA authorizes such copycat claims, *id*., which of course is what prompted this Court's observation that it was writing "on a blank

slate." Op. at 22 & n.4.  Such questions of first impression are properly certified. *See, e.g.*, *In re Trace Int'l Holdings, Inc.*, No. 04-CV-1295, 2009 WL 3398515, at *3 (S.D.N.Y. Oct. 21, 2009) ("Courts have certified orders for interlocutory appeal when the issues they raise are difficult and novel."); *In re Enron Creditors Recovery Corp.*, No. 01-CV-16034, 2009 WL 3349471, at *6 (S.D.N.Y. Oct. 16, 2009) ("When a controlling question of law presents an issue of first impression, permission to appeal is often granted.").

And because the copycat-claims issue involves "the meaning of a statutory or constitutional provision," it is a quintessentially "pure" legal issue suitable for certification under § 1292(b). *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000); *see also G.L. v. Ligonier Valley Sch. Dist. Auth.*, No. 2:13-CV-00034, 2013 WL 6858963, at *6 (W.D. Pa. Dec. 30, 2013), *aff'd and remanded*, 802 F.3d 601 (3d Cir. 2015).  The Commonwealth's slippery-slope protest—that granting interlocutory review here may "besiege[]" the courts "with piecemeal interlocutory appeals" Opp'n Br. at 7 (citation omitted)—not only would foreclose *any* application for interlocutory review, but has been repeatedly rejected by the Third Circuit. *See* Br. at 4 (collecting cases).  It should be rejected again here: there is not a rash of copycat claims infecting the federal courts; but where, as in this case, copycat claims are presented, by definition they burden the judiciary with duplicative litigation.  Immediate appellate review is the most efficient way to avoid

the substantial costs of such duplicative, burdensome—and potentially unnecessary—litigation.

**2.** **An immediate appeal would materially advance the ultimate termination of the litigation.**

If Defendants succeed on interlocutory review, the Commonwealth's copycat claims—Counts 3, 5, 7, and 9—would not proceed. And eliminating those four claims from this case undeniably would materially advance the ultimate termination of the litigation. The Commonwealth's only counterargument is that the copycat-claims issue and the preemption issue must **both** be "deemed to merit certification" for either to "materially advance the ultimate termination of the litigation." Opp'n Br. at 9. But as Defendants have argued, both sets of claims **do** merit certification, and the Commonwealth is wrong in any event: Even if the copycat-claims and preemption questions to some extent "warrant[] similar discovery efforts," *id.*, elimination of the Commonwealth's copycat claims would both "simplif[y]" the remaining litigation and enable the parties to "conduct[]" discovery "more expeditiously and at less expense," *Knopick*, 963 F. Supp. 2d at 398. By way of illustration, if the copycat claims are foreclosed, the Commonwealth's request for the same nationwide borrower data produced to the CFPB should be denied.

**B.** **The Court Should Certify The Preemption Issue.**

Preemption is a purely legal question that is "naturally appropriate for interlocutory review." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D.

Mass. 1997) (citing, *inter alia*, *Cipollone v. Liggen Grp., Inc.*, 789 F.2d 181, 183 (3d Cir. 1986)), *aff'd*, 122 F.3d 58 (1st Cir. 1997)). And, once again, the Commonwealth concedes that the preemption question here "involves a controlling question of law." Therefore, like the copy-cat claims issue, certification turns on whether there is "substantial ground for difference of opinion" and whether "an immediate appeal … may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); Opp'n Br. at 9-14.

### 1. Reasonable jurists have already disagreed.

"The clearest evidence of 'substantial grounds for difference of opinion' is where 'there are conflicting interpretations from numerous courts.'" *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (citation omitted); *Miron v. Siedman*, No. 04-CV-968, 2006 WL 3742772, at *3 (E.D. Pa. Dec. 13, 2006) (second § 1292(b) factor satisfied when "different courts have issued conflicting and contradictory opinions when interpreting a particular question of law") (emphasis omitted). And this Court has already recognized that there is an abundance of conflicting precedent and guidance on this very question. *See* Op. at 37-42.

The Commonwealth cannot deny the existence of this widespread division of authority, so it instead claims the anti-preemption precedents are stronger than the pro-preemption precedents and invokes the so-called presumption against preemption. *See* Opp'n Br. at 9-13. Both of those arguments are wrong, but that's

5

beside the point: Even if the Commonwealth were right that the pro-preemption precedents are less sound than the anti-preemption precedents and that courts must presume that Congress didn't intend to preempt state law despite expressly saying it intended to do so, that wouldn't change the fact that there is a genuine difference in judicial opinion and that reasonable jurists reached conflicting conclusions. And despite the Commonwealth's suggestion to the contrary, this Court's thoroughness in analyzing the widespread division in authority does not mend that division; instead, it further underscores the "clear[] evidence of 'substantial grounds for difference of opinion'" supporting certification. *Knopick*, 963 F. Supp. 2d at 398 (citation omitted).

### 2.    An immediate appeal would materially advance the ultimate termination of the litigation.

For the reasons identified above, *see supra* Part A.2, resolution of the preemption issue would advance the ultimate termination of this litigation—and such progress is not contingent on the concurrent certification of the copycat-claims issue. Simply put, a successful interlocutory appeal would resolve four of the State's claims, substantially narrowing discovery and motions practice, reducing cost, and narrowing the issues presented for trial.

### C.    The Court Should Certify The Injunctive Authority Issue.

The Commonwealth's brief begins by misstating the relevant question here, which is not "whether an injunction can be issued if the conduct is ***not likely to***

***reoccur***," Opp'n Br. at 14 (emphasis in original), but instead "whether a court can enjoin conduct that the plaintiff (a) conceded ceased a decade ago and (b) ***fails to allege will recur***." Br. at 1. And its analysis of this issue comes no closer to the mark.

As this Court noted in allowing the claims to proceed, "the CPL grants the Commonwealth the authority to bring an action to seek a temporary or permanent injunction when it 'has reason to believe that any person is using or about to use ***any method, act or practice declared by ... this act to be unlawful***, and that proceedings would be in the public interest.'" Op. at 48-49 (quoting 73 Pa. Stat. and Cons. Stat. Ann. § 201-4; emphasis added). Accordingly, the relevant question is whether Defendants are "using or about to use" the particular "method, act or practice" that the Commonwealth alleges to be unlawful, *id*., and the Commonwealth appears to argue that this standard is satisfied here because Navient "plans to use its existing infrastructure or acquire other companies to re-enter the private student loan origination market." Opp'n Br. at 15-16.

But participating in "the private student loan origination market" is not unlawful, and the Commonwealth does not contend otherwise. Instead, the Commonwealth alleges in Count I that a specific "method, act or practice" was unlawful—namely, that from 2000 to "approximately 2007 … many school financial aid offices maintained a list of 'preferred lenders," Compl. ¶ 49, and that during this

7

so-called "preferred lending era," Defendants allegedly originated money-losing "subprime" loans for the purpose of gaining access to profitable positions on schools' "preferred lender lists." *Id.* ¶¶ 53-54. This alleged trade-off—of subprime loans for preferred lender status—is the particular "method, act or practice" challenged as illegal under the UTPCPL, *id.* ¶ 93, not Navient's mere participation in the private student loan market.

Accordingly, the propriety of the request for an injunction boils down to whether the Commonwealth pled that this purportedly illegal subprime lending in exchange for preferred-lending status is ongoing, or may occur in the future. But the Commonwealth has not made any such allegation, and it cannot. By the Commonwealth's own admission, the "preferred lending era" ended a decade ago. And while it is a matter of public record that Navient may "use its existing infrastructure or acquire other companies to re-enter the private student loan origination market," Opp'n Br. at 15-16; *see also* Ex. A, October 4, 2017 Form 8-K (announcing the acquisition of Earnest),[1] the mere ***origination*** of loans cannot justify an injunction; only the ***illegal origination*** of loans could. Again, the relevant inquiry is whether Navient is "using or about to use any method, act or practice declared

---

[1] "SEC filings … are matters of public record of which the court can take judicial notice." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

by … this act to be unlawful," and Pennsylvania neither has pleaded nor argued in its brief that there is any possibility of Navient turning back the clock to the "preferred lender era" and engaging in the alleged unlawful conduct of originating "loss leader" subprime loans "to obtain preferred lender status with schools." Compl. ¶ 93.[2]  When properly considered, the question posed by Defendants— "whether a court can enjoin conduct that the plaintiff (a) conceded ceased a decade ago and (b) fails to allege will recur," Br. at 1, readily satisfies all three elements of the § 1292(b) test for certification.

### 1. The availability of an injunction is a controlling question of law as to the origination claims.

Under the CPL, an award of costs and restitution is only available "[w]henever any court issues a permanent injunction to restrain and prevent violations of this act," 73 Pa. Cons. Stat. § 201-4.1(b), and civil penalties are only available "[i]n any action brought under section 4," *id*. § 201-8.  In short, if an injunction is unavailable as a

---

[2]  To the extent that the Court's order was premised on the Court's view that "[t]here is no indication in the Complaint that Navient has promised to never again engage in loan origination or that it would be impossible for them to do so," Op. at 50, Defendants respectfully disagree that this is the proper inquiry. Defendants believe that certification is proper because reasonable jurists could conclude that the relevant inquiry is whether Navient is using or about to use the challenged activity in the future.  Again, Navient is not—the "preferred lender era" is a bygone era, as the Complaint makes clear, and the State has not alleged that there is any possibility that Navient will engage in the conduct actually challenged by the Commonwealth.

matter of law, the Commonwealth's origination claims fail entirely. This is a "controlling question of law" within the meaning of § 1292(b).

As the Third Circuit has explained, "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal. If the statute were interpreted to exclude any such order that interpretation would be inconsistent with the clear intention of the sponsors to avoid a wasted trial." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). Here, the possibility of a "wasted trial"—and vast amounts of associated time and money on discovery—are very real. Assuming, *arguendo*, that the parties proceeded to trial and the Commonwealth prevailed on its origination claims, an appeals court could conclude what Defendants believe to be apparent on the face of the Complaint—that the origination allegations are entirely premised on competition for spots on "preferred lender lists," that the "preferred lending era" ended in 2007, and that no injunction is available as a matter of law when a Complaint itself explains why the alleged misconduct cannot possibly recur.

### 2. Reasonable jurists could disagree on this issue.

The Commonwealth contends that an injunction may issue based on past conduct alone. Opp'n Br. at 14. But as this Court already noted, it is "not convinced by the Commonwealth's argument" that the CPL allows for an injunction in these circumstances. Op. at 51 n.12. Just as this Court was "not convinced," reasonable

jurists could certainly disagree on the point. Indeed, none of the Commonwealth's

cited cases, Opp'n Br. 14-15, are to the contrary:

- In *Commonwealth v. TAP Pharm. Products, Inc.*, 36 A.3d 1197, 1242 (Pa. Commw. Ct. 2011), the court determined that an injunction was proper because there was "no evidence that [defendant], in fact, ceased all its offending conduct and promised not to renew it." Those factors are present here: (1) the Complaint makes clear that the alleged misconduct ***ceased in 2009*** at the latest (which is perhaps why the Commonwealth does not point to any allegation that it is ongoing); and (2) Defendants ***have*** promised not to renew the conduct through an Assurance of Discontinuance with New York. Ex. B.

- In *Commonwealth v. Percudani*, the Commonwealth conducted a lengthy investigation of an appraiser. When the appraiser voluntarily surrendered his license two months before suit was filed, the Court allowed the suit to proceed— otherwise a defendant could "simply avoid liability under the Law by discontinuing its actions even after proceedings are commenced and claim the matter is moot." 844 A.2d 35, 46 (Pa. Commw. Ct. 2004).

- *In re Fleet* involved an injunction against a bankrupt business and its officer to prevent them from resuming a similar fraudulent scheme "under different management, or … under a different corporate guise." 95 B.R. 319, 339.

- *Beneficial Corp. v. F.T.C.* did not speak to the issue at all. Instead, that court explicitly declined to decide whether a cease-and-desist order for conduct that had ceased three years earlier was proper, and instead focused on more recent conduct. 542 F.2d 611, 617 (3d Cir. 1976).

Neither party has identified a case allowing the Commonwealth to enjoin

conduct that ceased long ago and which it does not even allege will recur. While the

Commonwealth claims that it is "telling[]" that Defendants have not found a case

where a Court declined to enjoin conduct that ended long ago, this lack of precedent

more likely reflects the fact that "at the least, it is unusual for a plaintiff to seek

injunctive relief against conduct that may have ceased over ten years ago." Op. at 51 n.12.

The Commonwealth also argues that its Complaint *does* allege a possibility of recurrence, and thus the question of whether an injunction is available is not a purely legal question. Opp'n Br. at 14. Indeed, the Court found that "[t]he Commonwealth … alleges that Navient is 'using, [has] used, or [is] about to use methods, acts or practices declared unlawful" by the CPL and that 'citizens of the Commonwealth are suffering and will continue to suffer harm unless the acts and practices complained of herein are permanently enjoined.'" Op. at 50 (citing Compl. ¶¶ 5, 12). But reasonable jurists could disagree as a matter of law whether this restatement of the CPL is a sufficient pleading to survive a Rule 12(b)(6) motion. The Commonwealth must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the "Origination of Loans" section of the Complaint, ¶¶ 45-93, contains *no* factual allegations regarding even potential present or future harm; the Complaint states that schools maintained preferred-lender lists only "[u]ntil approximately 2007," Compl. ¶ 49; and Complaint explains that the "preferred lending era" (*i.e.*, the period during which the alleged misconduct was possible) ended between 2007 and 2009 because the

federal government promulgated "new regulations … on preferred lending" that brought the challenged conduct to an end. *See id.* ¶ 50.

### 3. An immediate appeal would materially advance the ultimate termination of the litigation.

"If present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate." 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.). Here, the Commonwealth essentially advances two distinct issues for trial with no overlap: one alleging origination conduct at Navient's predecessor, Sallie Mae, between 2000 and 2007, *see* Compl. ¶¶ 45-93; and one alleging servicing conduct beginning years later, *see id.* ¶¶ 94-172. A successful interlocutory appeal on this issue would halve this case.

### CONCLUSION

For these reasons and for those set forth in Defendants' initial motion and memorandum, Defendants respectfully ask this Court to certify for interlocutory appeal the three identified issues from its December 17, 2018 Order.

Dated: February 1, 2019                     Respectfully submitted,

By:  /s/ Daniel T. Brier
_____
     Daniel T. Brier (PA 52348)
     Myers Brier & Kelly, LLP
     425 Spruce Street, Suite 200
     Scranton, PA 18503
     dbrier@mbklaw.com
     Tel: 570-342-6100
     Fax: 570-342-6147



     Jennifer Levy (DC 461921)
     Patrick Brown (DC 1033415)
     Mike Kilgarriff (DC 1032598)
     KIRKLAND & ELLIS LLP
     655 Fifteenth Street, NW
     Washington, DC 20005
     Tel: 202-879-5000
     Fax: 202-879-5200

     *Counsel for Defendants*
     *Navient Corporation and*
     *Navient Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2019, I filed the foregoing document with the Clerk of Court via CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Daniel T. Brier
Daniel T. Brier