THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA,

    Plaintiff,

v.

NAVIENT CORPORATION, et al.,

    Defendants.

3:17-CV-1814
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. BACKGROUND

In this lawsuit, the Commonwealth of Pennsylvania (the "Plaintiff" or "Commonwealth") alleges that Navient Corporation and Navient Solutions, LLC (collectively, "Defendants" or "Navient") have harmed student loan borrowers by violating the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5536, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 Pa. Stat. and Cons. Stat. Ann § 201-1, et seq. (Doc. 1). In a Memorandum Opinion and Order (the "Order") dated December 17, 2018, the Court denied Navient's motion to dismiss the Commonwealth's complaint. (Doc. 47, Doc. 48). Navient now moves for an order from the Court pursuant to 28 U.S.C. § 1292(b) certifying for immediate appeal several issues that were considered by the Court in issuing the December 17, 2018 Order (the "Motion for Certification"). (Doc. 53, Doc. 54,

Doc. 59). The Commonwealth opposes this request. (Doc. 57). For the reasons stated below, the Court will grant Navient's Motion for Certification.

## II. STANDARD FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

In most cases, only "final decisions" of district courts are appealable to the courts of appeals. *See* 28 U.S.C. § 1291; Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). An interlocutory order by a district court, such as the Court's December 17, 2018 Order denying Navient's motion to dismiss and which has allowed the case to proceed, is not such a "final decision." *See Tara M. by Kanter v. City of Phila.*, 145 F.3d 625, 627 (3d Cir. 1998).

However, under 28 U.S.C. § 1292(b), interlocutory orders can be appealable if certified by the district court and subsequently accepted by the court of appeals for consideration. 28 U.S.C. § 1292(b). "Section 1292(b) was the result of dissatisfaction with the prolongation of litigation and with harm to litigants uncorrectable on appeal from a final judgment which sometimes resulted from strict application of the federal final judgment rule." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir. 1974). The purpose of Section 1292(b) is to avoid "a wasted protracted trial if it could early be determined that there might be no liability," such as "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action." *Id.* at 754 (citing legislative history of Section 1292(b)). "Congress intended that [S]ection 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal

2

may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).

Section 1292(b) states:

> **b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that **such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation**, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis added). Thus, "[f]or a district court to properly grant a certificate of appealability under § 1292(b), its order must: (1) involve a 'controlling question of law,' (2) offer 'substantial grounds for difference of opinion' as to its correctness, and (3) if immediately appealed, 'materially advance the ultimate termination of the litigation.'" *G.L. v. Ligonier Valley Sch. Dist. Auth.*, No. 2:13-CV-00034, 2013 WL 6858963, at *6 (W.D. Pa. Dec. 30, 2013) (quoting *Katz*, 496 F.2d at 754), *aff'd and remanded*, 802 F.3d 601 (3d Cir. 2015).

Courts in the Third Circuit have further defined the three elements of the Section 1292(b) test. First, "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755.

"'Controlling' means serious to the conduct of the litigation in a practical or legal sense." *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014) (citations omitted), *aff'd*, 799 F.3d 236 (3d Cir. 2015).

Next, "[a] 'substantial ground for difference of opinion' must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation." *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2014 WL 12539666, at *1 (W.D. Pa. July 3, 2014) (citing *Glover v. Udren*, Civ. No. 08-990, 2013 WL 3072377, at *3 (W.D. Pa. June 18, 2013)). Questions of first impression can present substantial grounds for difference of opinion. *Nationwide Life Ins. Co. v. Commonw. Land Title Ins. Co.*, Civ. No. 05-281, 2011 WL 1044864, at *3 (E.D. Pa. Mar. 23, 2011) ("The sheer absence of any persuasive, let alone controlling, law on this issue is sufficient on its own to provide substantial grounds for difference of opinion."); *see also Wyndham*, 10 F. Supp. 3d at 634-35 (certifying for appeal an issue of first impression regarding the application of the FTC Act to a data security breach and noting that the "novelty" of the liability issues means that "reasonable jurists may differ over the court's resolution" of the issues). However, "[a] party's strong disagreement with the Court's ruling does not constitute a 'substantial ground for difference of opinion[,] . . . [n]or does a dispute over the application of settled law to a particular set of facts." *Karlo*, 2014 WL 12539666, at *1 (citations omitted).

"Finally, a § 1292(b) certification 'materially advances the ultimate termination of the litigation' where the interlocutory appeal eliminates: '(1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome.'" *Karlo*, 2014 WL 12539666, at *1 (quoting *Litgo N.J., Inc. v. Martin*, Civ. No. 06-2891 (AET), 2011 WL 1134676, at *3 (D.N.J. Mar. 25, 2011)).

In addition to the three elements of the Section 1292(b) test, another factor for district courts meriting consideration is whether the issues in the action are of "nationwide significance." *Wyndham*, 10 F. Supp. 3d at 636 (considering, in a consumer protection enforcement action brought by the FTC, "the nationwide significance of the issues in this action—which indisputably affect customers and businesses in a climate where we collectively struggle to maintain privacy while enjoying the benefits of the digital age"); *Nationwide*, 2011 WL 1044864, at *4 ("Moreover, the Third Circuit's determination of this issue could potentially have a widespread impact on the underwriting and application of land title insurance policies in the United States.").

### III. ANALYSIS

In its Motion for Certification, Navient argues that three issues considered by the Court in denying Navient's motion to dismiss should be certified for interlocutory appeal. The Court finds that these issues are appropriately framed as:

> (A) whether the CFPA prohibits "copycat" claims brought by a state when the Consumer Financial Protection Bureau (CFPB) has its own parallel lawsuit against the same defendants regarding the same conduct (the CFPA "copycat" issue);

5

(B) whether the Higher Education Act (HEA), 20 U.S.C. § 1098g, preempts state law claims brought under the CPL challenging Navient's loan servicing practices (the HEA preemption issue); and

(C) whether the Commonwealth has adequately pled a claim for relief under the CPL regarding Navient's subprime student loan origination practices where all the factual allegations relate to past misconduct (Doc. 1 ¶¶ 45-93), and where the allegations of prospective conduct are limited to statements that Navient "[is] using, [has] used, or [is] about to use methods, acts or practices declared unlawful by Section 201-3 of the [CPL]" and that "citizens of the Commonwealth are suffering and will continue to suffer harm" absent injunctive relief (Doc. 1 ¶¶ 5, 12) (the CPL injunctive authority issue).

The Court will certify all three issues for interlocutory appeal under 28 U.S.C. § 1292(b).

## A. THE CFPA "COPYCAT" ISSUE IS PROPER FOR INTERLOCUTORY APPEAL.

In its December 17, 2018 Memorandum Opinion and Order, the Court considered and rejected Navient's argument that the CFPA prevents the Commonwealth from bringing its CFPA claims because the CFPB has a parallel lawsuit against Navient alleging the same CFPA violations. (Doc. 47 at 17-30). The Court analyzed the statutory language of the section of the CFPA that authorizes states to file actions in federal district court for violations of the CFPA, 12 U.S.C. § 5552(a)(1), and noted that it wrote "on a blank slate" because there was "no relevant case law on the interpretive task presented here." (*Id.* at 22).

Seizing upon this language, Navient argues that the Court's ruling on the CFPA "copycat" issue satisfies all three elements of Section 1292(b) because the CFPA "copycat" issue is a "pure" legal issue which does not require factual analysis, is without settled precedent, and its reversal would materially advance the ultimate termination of the litigation by streamlining and simplifying the case by eliminating all of the Commonwealth's CFPA

6

claims. The Commonwealth responds that neither the second nor the third elements of Section 1292(b) are satisfied, contending that the Court's approach to statutory interpretation is sound and that the ultimate termination of the litigation would not be materially advanced if the Third Circuit reversed on the issue because the remaining CPL claims are based on identical conduct and require identical discovery.

The Court agrees with Navient that the CFPA "copycat" issue satisfies all elements of Section 1292(b). To start, both parties agree that the CFPA "copycat" issue is a "controlling question of law," and the Court similarly finds that it is so, as it would constitute "reversible error on final appeal." See Katz, 496 F.2d at 754-55 (also noting that purpose of Section 1292(b) is to avoid "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action").

The Court further finds that the CFPA "copycat" issue presents an issue "as to which there is substantial ground for difference of opinion" under Section 1292(b). While the Court believes that its approach to interpreting the CFPA is sound, it recognizes that "given the novelty" of the issue and the CFPA in general, "reasonable jurists may differ" on the Court's finding in the Memorandum Opinion and Order that "copycat" lawsuits by states are not prohibited by the CFPA. Wyndham, 10 F. Supp. 3d at 634. Navient's arguments regarding this issue were not so specious as to be summarily dismissed by the Court, as evidenced by the deep and lengthy analysis that had to be undertaken by the Court to reason to its conclusion. And though the Court agrees with the Commonwealth that an issue of first

7

impression may not require the exceptional resort to certifying the issue for interlocutory appeal (Doc. 57 at 7), the novelty and complexity of this issue point in favor of advancing the issue to the Third Circuit. *Wyndham*, 10 F. Supp. 3d at 634-35 (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.")).

Lastly, "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the Third Circuit reverses the Court on the CFPA "copycat" issue, all federal claims against Navient would be dismissed, leaving only the state law claims under the CPL. Of those CPL claims, Navient sought dismissal of the forbearance steering and income-driven repayment plan recertification claims in Counts II and IV of the Commonwealth's complaint on the grounds that the HEA preempts the claims, and Navient now seeks appellate review of the Court's denial of Navient's HEA preemption arguments. Navient also seeks appellate review of the Court's rejection of its argument that the Commonwealth fails to state a claim for relief under the CPL for Navient's subprime student loan origination-related conduct (Count I). However, Navient does not seek appellate intervention as to the remaining CPL claims in Counts VI and VIII regarding cosigner release and payment processing errors. Thus, if the Third Circuit were to find those claims which Navient asserts to be preempted by the HEA are preempted, or that the

Commonwealth failed to state a claim for relief for its subprime student loan origination claim, or that the Court was incorrect with respect to both issues, what would remain would only be a small subset of the Commonwealth's original CPL claims. In that event, the Court will have to consider if the remaining CPL claims justify the exercise of the Court's supplemental jurisdiction under 28 U.S.C. § 1367, which could terminate the entire case. Regardless of the Third Circuit's resolution of the HEA preemption and CPL injunctive authority issues, if the Circuit reverses this Court on the CFPA "copycat" issue and this Court decides to exercise supplemental jurisdiction over the remaining CPL claims, the case will be simplified. It will no longer be necessary to consider Navient's liability under the legal standards set forth in the CFPA, which may differ from those in the CPL. See 12 U.S.C. §§ 5531(c)-(d), 5536(a)(1) (setting forth unfair and abusive conduct standards). Moreover, an appellate decision on the CFPA "copycat" issue could bolster or foreclose the ability of other states to bring consumer protection enforcement actions under the CFPA and is thus properly considered an important issue of nationwide significance. As a result, the Court will certify this issue for interlocutory appeal.

### B. THE HEA PREEMPTION ISSUE IS PROPER FOR INTERLOCUTORY APPEAL.

The Court will also certify the HEA preemption issue for interlocutory appeal. This issue featured prominently in Navient's motion to dismiss and the Court's subsequent ruling. The Court found that the HEA did not expressly or through conflict preemption foreclose the Commonwealth's forbearance steering and income-driven repayment plan recertification

9

claims brought under the CPL. (Doc. 47 at 31-42). The Court determined that the relevant language from the HEA, that federal student loans "shall not be subject to any disclosure requirements of any State law," 20 U.S.C. § 1098g, did not cover the type of affirmative misconduct alleged by the Commonwealth that the Court found was not directly governed by HEA disclosure requirements. (*Id.* at 35-39). Navient's argument that the HEA's purported goal of "uniformity" created a conflict between the HEA and the CPL claims also did not convince the Court. (*Id.* at 40-42).

Navient argues in its Motion for Certification that the HEA preemption issue is a pure legal issue that goes to the right of the Commonwealth to bring some of its CPL claims, and that there is a substantial difference of opinion between courts around the country that have considered whether the HEA preempts actions brought under state consumer protection laws. Additionally, Navient contends, an appellate reversal on the HEA preemption issue would streamline and simplify the case. The Commonwealth responds that there is not a substantial difference of opinion on this issue because of the "well-established presumption against preemption and Navient's limited sources supporting a different determination." (Doc. 57 at 13). It further argues that an appeal will not materially advance the ultimate termination of the litigation because the CFPA "copycat" issue should also not be certified for appeal, and "identical factual allegations" will remain for adjudication. (*Id.* at 13-14).

Like the CFPA "copycat" issue, the HEA preemption issue satisfies all elements of Section 1292(b) and will be certified for interlocutory appeal. The parties again do not

dispute that the HEA preemption issue is a controlling question of law, and the Court finds likewise. *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (citing, inter alia, *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 279 (3d Cir. 2006)) ("Repeatedly, the Third Circuit has recognized that preemption, by its very nature, lends itself to interlocutory appeals.").

The HEA preemption issue also presents substantial ground for difference of opinion. The Court went to considerable lengths in its Memorandum Opinion and Order to discuss the various decisions of those courts in other jurisdictions that have considered, with varying results, the HEA's possible preemptive effect on actions brought against student loan servicers for alleged violations of state consumer protection laws. (Doc. 47 at 36-42). The Commonwealth argues that this conflicting authority is outside of the Third Circuit, and so it should not weigh in favor of certification. (Doc. 57 at 11 (citing *Cosimano v. Twp. of Union*, No. CV 10-5710 (JLL), 2017 WL 4790381, at *2 (D.N.J. Oct. 23, 2017)). However, the Court finds that the lack of conflicting authority (or any authority at all, for that matter) within the Third Circuit on the HEA preemption issue merely reinforces the novelty and complexity of the issue. The conflicting authority on the preemptive effect of the HEA, whether within this Circuit or not, demonstrates that there is substantial ground for difference of opinion on this issue.

Finally, certifying the HEA preemption issue would materially advance the ultimate termination of the litigation for similar reasons with respect to the CFPA "copycat" issue. If

the Third Circuit reverses the Court on the HEA preemption issue, two of the Commonwealth's main CPL claims will be eliminated from the case. And though the parallel CFPA claims may survive (assuming the Third Circuit agrees with the Court on the CFPA "copycat" issue) the legal issues will be simplified for trial, as the CFPA and CPL standards for liability may differ on these particular claims. See 12 U.S.C. §§ 5531(c)-(d), 5536(a)(1) (setting forth unfair and abusive conduct standards under the CFPA). The HEA preemption issue is also one of nationwide importance, as attested by its prevalence in the many previous and still ongoing cases against student loan servicers. The issue's resolution in this Circuit could bear upon the ability of other litigants to sue student loan servicers for violations of state consumer protection law. Thus, the Court will certify the issue for interlocutory appeal.

### C. THE CPL INJUNCTIVE AUTHORITY ISSUE IS PROPER FOR INTERLOCUTORY APPEAL.

The CPL injunctive authority issue also satisfies the elements of Section 1292(b). Before analyzing the Section 1292(b) elements, the Court must address the disputed framing of the issue, which centers on the Commonwealth's basis under the CPL to bring this lawsuit.[1] Section 201-4 of the CPL provides that the Commonwealth can only bring an action to enforce the CPL through a suit seeking injunctive relief and where the Commonwealth "has reason to believe that any person is using or is about to use any

---

[1] Navient contends that the appropriate issue is "whether a court can enjoin conduct that the plaintiff (a) concedes ceased a decade ago and (b) fails to allege will recur." (Doc. 54 at 1). The Commonwealth argues that it is whether an injunction can issue under the CPL if the alleged unlawful conduct has ceased. (Doc. 57 at 14 (citing Doc. 47 at 49)).

12

method, act or practice declared by [Section 201-3] of this act to be unlawful, and that proceedings would be in the public interest." 73 Pa. Stat. and Cons. Stat. Ann. § 201-4. Section 201-8 of the CPL, which allows the Commonwealth to recover civil penalties for violations of the CPL, requires that the Commonwealth seek such penalties "[i]n any action brought under [Section 201-4] of this act." 73 Pa. Stat. and Cons. Stat. Ann. § 201-8. Therefore, by the plain language of the CPL, the Commonwealth must adequately plead a claim for injunctive relief to maintain a claim under the CPL and to recover civil penalties for violations of the CPL. With this understanding of the CPL in mind, the issue here for interlocutory appeal is whether the Commonwealth has adequately pled a claim for injunctive relief under the CPL for Navient's conduct regarding subprime student loan originations where all the relevant factual allegations in the Commonwealth's complaint relate to past misconduct (Doc. 1 ¶¶ 45-93) and the only prospective allegations are conclusory statements that Navient "[is] using, [has] used, or [is] about to use methods, acts or practices declared unlawful by Section 201-3 of the [CPL]," and that "citizens of the Commonwealth are suffering and will continue to suffer harm" absent injunctive relief (Doc. 1 ¶¶ 5, 12).

Turning to the Section 1292(b) elements, the Court finds that the CPL injunctive authority issue presents a controlling question of law upon which there is substantial ground for difference of opinion and as to which an immediate appeal may materially advance the ultimate termination of the litigation. First, the issue presents a controlling question of law

because as a matter of law the Commonwealth must properly plead its entitlement to injunctive relief to maintain its CPL claim. The controlling nature of this issue is particularly evident if the Third Circuit determines that an amendment to the complaint would be futile to state a claim for relief.

The CPL injunctive authority issue also offers substantial ground for difference of opinion. Understanding why this is the case requires a review of how the Court reached its conclusion to reject Navient's arguments in favor of dismissing the CPL claim. The Court's Memorandum Opinion and Order upholding the Commonwealth's CPL claim against dismissal (Doc. 47 at 48-51) was premised on how Pennsylvania state courts have interpreted the CPL in permitting past conduct to be a basis for injunctive relief:

> Specifically, we conclude: 1) that an injunction can issue to restrain future conduct based on prior unlawful activity; 2) that cessation of the offending conduct does not, in and of itself, bar a claim for injunctive relief; and 3) the Court may consider whether the offending conduct is likely to reoccur absent the grant of an injunction.

*Commonwealth v. TAP Pharm. Products, Inc.*, 36 A.3d 1197, 1238-43 (Pa. Commw. Ct. 2011) (citations omitted), *vacated on other grounds*, 94 A.3d 350 (Pa. 2014); *see also Commonwealth v. Percudani*, 844 A.2d 35, 45-46 (Pa. Commw. Ct. 2004). However, these cases are from an intermediate state court (the Pennsylvania Commonwealth Court). The Pennsylvania Supreme Court has not directly ruled on this particular issue, where the Commonwealth is challenging past conduct as alleged in Paragraphs 45-93 of the complaint

and the Commonwealth may not have sufficiently alleged that the conduct is likely to recur.[2] As a result, this Court made a prediction in the Memorandum Opinion and Order as to how the Pennsylvania Supreme Court would have ruled regarding Section 201-4 of the CPL and whether the Commonwealth's complaint sufficiently states a claim for relief. *See Montgomery Cty. v. MERSCORP Inc.*, 795 F.3d 372, 376 (3d Cir. 2015) (quoting *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006)) ("'[W]hen there is no decision from the state's highest court directly on point,' however, 'we are charged with predicting how that court would resolve the question at issue[,]'" and noting that courts should look to opinions of the state's intermediate courts for guidance).

The difference of opinion with respect to the CPL injunctive authority issue lies in consideration of the Third Circuit's recent ruling in *FTC v. Shire Viropharma, Inc.*, -- F.3d --, No. 18-1807, 2019 WL 908577 (3d Cir. Feb. 25, 2019), where the Circuit reached a different conclusion than this Court in analyzing a similar statute under similar factual circumstances. In *Shire*, the Third Circuit analyzed the reach of the FTC's injunctive authority under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). The Third Circuit found that Section 13(b), which

---

[2] *TAP* was appealed to the Pennsylvania Supreme Court, but that court did not reach the issue contested here. In *TAP*, the Pennsylvania Supreme Court vacated the monetary component of the Commonwealth Court's judgment against the defendants in the matter, a number of drug manufacturers, for the Commonwealth Court's "failure, by any measure, to offer a rational accounting for the billion dollars in rebate monies which Commonwealth agencies received from the drug manufacturers it has haled into court." 94 A.3d at 352. As noted by the Commonwealth Court upon the subsequent remand of the case to the Commonwealth Court, the Pennsylvania Supreme Court did not directly address the injunctive authority issue. *Commonwealth v. TAP Pharm. Products, Inc.*, No. 212 M.D. 2004, 2015 WL 9915456, at *1 (Pa. Commw. Ct. Jan. 27, 2015) ("[I]t appears that the Supreme Court's determination is limited to the rebate/restoration issue. Under these circumstances, and in the absence of explicit direction to the contrary, this Court reasserts its prior findings and conclusions, except those related to the rebate issue . . . .").

allows the FTC to seek an injunction in federal court when it "has reason to believe . . . that any person, partnership, or corporation *is violating, or is about to violate,* any provision of law enforced by the FTC," § 53(b) (emphasis added), cannot "be satisfied by showing a violation in the distant past and a vague and generalized likelihood of recurrent conduct." *Shire*, 2019 WL 908577, at *9. The Third Circuit did not determine the "outer reach of 'about to violate,'" but noted that "the facts in [*Shire*] do not approach it." *Id.* at *11.

The CPL is modeled after the FTC Act and contains similar language regarding the propriety of an injunction. 73 Pa. Stat. and Cons. Stat. Ann. § 201-4 (the Commonwealth the authority to bring an action to seek a temporary or permanent injunction when it "has reason to believe that any person *is using or about to use* any method, act or practice declared by . . . this act to be unlawful, and that proceedings would be in the public interest") (emphasis added); *see also TAP Pharm. Products, Inc.*, 36 A.3d at 1238-43 (noting the CPL is modeled on the FTC Act). The similar statutory scheme of the CPL as the FTC Act and similar factual circumstances in *Shire* to this case lead the Court to determine it proper to present the CPL injunctive authority issue to the Third Circuit for resolution. This Court recognizes that the Circuit is the proper forum for a predictive analysis of how the Pennsylvania Supreme Court would interpret Section 201-4 of the CPL and the Commonwealth's complaint in this matter.

Finally, an immediate appeal of the CPL injunctive authority issue would materially advance the ultimate termination of the litigation. If the Third Circuit, after engaging in a

16

predictive analysis of the Pennsylvania Supreme Court's resolution of the issue, determines that a claim filed by the Commonwealth under Section 201-4 that seeks injunctive relief (but contains only detailed factual allegations of past misconduct and not the likelihood of future misconduct) is inadequate as a matter of law, the Third Circuit would dismiss the claim. Alternatively, the Third Circuit could hold that the Pennsylvania Supreme Court would adopt the reasoning of the Pennsylvania Commonwealth Court in past decisions and hold that Section 201-4 would permit the Commonwealth to seek injunctive relief for past conduct in the circumstances pled here. In either case, the Third Circuit could also determine under *Twombly/Iqbal*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that the Commonwealth's complaint should be dismissed without prejudice with leave to amend to better state a nexus between the factual allegations and the claim for injunctive relief. Any of these possible rulings would clarify the issues in this matter.

Thus, the Court will grant certification of the CPL injunctive authority issue.

## IV. CONCLUSION

For the reasons outlined above, the Court will grant Navient's Motion for Certification in its entirety and will certify the December 17, 2018 Order for interlocutory appeal to include review of the CFPA "copycat" issue, the HEA preemption issue, and the CPL injunctive authority issue. Pursuant to 28 U.S.C. § 1292(b), within ten days of entry of the Court's order, Navient must submit an application to the Third Circuit.

A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge