# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, By Attorney General Josh Shapiro,<br><br>Plaintiff,<br><br>v.<br><br>Navient Corporation and Navient Solutions, LLC,<br><br>Defendants. | Case No. 3:17-cv-1814<br><br>(Judge Mariani)<br><br>(Electronically Filed) |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO NAVIENT SOLUTIONS' MOTION TO MODIFY PROTECTIVE ORDER OR REFER DISCOVERY MATTERS TO SPECIAL MASTER VANASKIE

## INTRODUCTION

Plaintiff Commonwealth of Pennsylvania, by Attorney General Josh Shapiro ("Commonwealth"), respectfully submits its brief in opposition to Navient Solutions' Motion to Modify the Protective Order or Refer Discovery Matters to Special Master Vanaskie.

Discovery in this case is currently governed by a stipulated Confidentiality Agreement and Protective Order ("Protective Order" or "Order") that Defendants and the Commonwealth (collectively, the "Parties") jointly filed on May 4, 2018 (Doc. 31-2), which the Court ordered accepted on May 7, 2018 (Doc. 32).[1] On February 7, 2019, Navient Solutions ("Navient") filed the pending Motion to Modify the Protective Order or Refer Discovery Matters to Special Master Vanaskie (Doc. 62) ("Motion").

With its Motion, Navient is asking the Court to Amend the Protective Order to prohibit the Commonwealth from sharing "consumer data or individual borrower files" with any state or local law enforcement agencies outside Pennsylvania. Under Section 12.2 of the Protective Order, "Except as otherwise provided in this Order, its terms may be amended only by written stipulation of the

---

[1] The Commonwealth notes that although the Court recognized "the documents as agreements between the parties, and will accordingly enforce them as such," the Court was careful to express "no opinion as to the merits of the agreements and neither approves or disapproves of their contents." Doc. 32.

Parties or by order of the Court, on noticed motion, for good cause shown." Doc. 31-2 at § 12.2. Navient negotiated and agreed to the Protective Order, including the sharing provisions. Under the terms of the Protective Order, Navient must show the Court good cause to amend the Order. As explained herein, Navient has not shown good cause and, thus, the Commonwealth urges the Court to deny Navient's Motion and to decline to refer this dispute to Special Master Vanaskie.

## ARGUMENT

### I. Under the *Pansy* Factors, Navient Has Failed to Meet the Balancing Test to Show Good Cause to Amend the Protective Order

In determining whether good cause exists to amend a protective order, courts use a seven-factor test described by the Third Circuit in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994). The *Pansy* test may be used both in considering whether to issue a protective order in the first place and in considering whether to modify an existing protective order. *Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*, No. 3:14-CV-00853, 2017 WL 928917, at *1 (M.D. Pa. Mar. 8, 2017)(citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)). Navient's brief did not address the *Pansy* factors, but the Commonwealth believes they are relevant given that the Protective Order and courts have relied on them. The seven factors are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will

2

cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)(*citing Pansy*, 23 F.3d at 787-91). These factors, however, are "neither mandatory nor exhaustive." *Id*. "In addition, a Court deciding whether to modify an existing protective order must consider the parties' reliance on the protective order." *Bobrick*, 2017 WL 928917, at *1 (citing *Pansy*, 23 F.3d at 790).

Navient, "as the party seeking to modify the [Protective Order] must come forward with a reason to modify the order." *Bobrick*, 2017 WL 928917, at *2 (internal citations and quotations omitted). Like the plaintiff in *Bobrick*, Navient is seeking to modify a protective order to which it freely agreed. Navient's grievances that it believes warrant modification are, like those of *Bobrick*, "both overstated and entirely of its own making." *Id*. If Navient had wished to prevent the Commonwealth from sharing discovery materials with other law enforcement agencies, it could have negotiated such a prohibition. As discussed in Section II, below, it never did.

### A. Disclosure to Law Enforcement Will Not Violate Privacy Interests

Turning to the *Pansy* factors, the first question is whether disclosure would violate privacy interests. It would not. Under Section 7.2(i) of the Protective Order,

3

the Commonwealth may only share discovery materials with another state law enforcement agency ("receiving agency") if the other agency signs a Declaration of Compliance with Confidentiality Agreement and Protective Order ("Declaration of Compliance"). In signing the Declaration of Compliance, a receiving agency must agree, *inter alia*, to: (1) be bound by the Protective Order, (2) refrain from re-sharing the data, (3) use the data *only* to investigate potential violations or and/or enforce any law, and (4) submit to the jurisdiction of this Court for the purpose of enforcing the Protective Order.[2]

Under the Protective Order, the Commonwealth is permitted to share discovery materials with a receiving agency *only if* the receiving agency is "empowered to investigate matters or prosecute laws, regulations, or rules which Pennsylvania determines may be implicated by documents or information subject to this Order." Thus, the Protective Order limits both the Commonwealth's ability to share the data and the receiving agency's ability to use it. No receiving agency can re-share the data or use it for anything other than a law enforcement purpose. Thus, keeping the existing Protective Order in place would not violate privacy

---

[2] Navient's brief incorrectly asserts that if the Commonwealth were to share the data with a receiving agency, the data would suddenly be "beyond the reach of this Court's jurisdiction and authority to protect." Doc. 62 at 5. The Declaration of Compliance explicitly binds any receiving agency to the terms of the Protective Order and requires them to submit to the jurisdiction of this Court.

interests because the order already provides complete protection of Navient's sensitive discovery materials.

### B. The Information is Being Sought for a Legitimate Purpose

Under the second *Pansy* factor, the Court should consider whether the information is being sought for a legitimate purpose or for an improper purpose. Here, the borrower data would be sought solely for law enforcement purposes. If the Commonwealth were to disclose it to another agency, it would do so only to allow that agency to use it for a law enforcement purpose. Navient has not alleged an improper purpose, nor is there any indication that the Commonwealth or another law enforcement agency seeks the data for an improper purpose. To the contrary, the purposes are entirely legitimate: to protect student loan borrowers from unlawful loan servicing practices.

Unlike the trade secret information at issue in *Bobrick*, the nature of the information in the borrower files is not a trade secret that could be improperly shared to benefit Navient's competitors. Nor would the law enforcement agencies have any incentive to use it improperly.

### C. Disclosure of the Information Will Not Cause a Party Embarrassment

The third *Pansy* factor asks the Court to consider whether disclosure will cause a party embarrassment. "As the Third Circuit recognized, 'it may be especially difficult for a business enterprise, whose primary measure of well-being

5

is presumably monetizable, to argue for a protective order on this ground.'" *Bobrick*, 2017 WL 928917, at *3 (quoting *Pansy*, 23 F.3d at 787). The confidential disclosure of the borrower data to other law enforcement agencies—which the agencies would be prohibited from re-sharing—does not pose any risk of embarrassment. Navient has not argued that potential embarrassment is a reason for modifying the order.

> **D.    Confidentiality is Not Being Sought over Information Important to Public Health and Safety, But the Information is Important to Public Welfare**

The fourth *Pansy* factor asks the Court to consider whether confidentiality is being sought over information important to public health and safety. In *Pansy*, the Third Circuit explained that "[c]ircumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety." *Pansy*, 23 F.3d at 787. This factor is not directly applicable here as the information would not be shared with the public at large but only law enforcement agencies who execute the Declaration of Compliance. However, the public policy arguments in favor of sharing the Navient data are similar to those in favor of sharing public health data. This lawsuit seeks to change corporate behavior and remedy Navient's harmful conduct that the Commonwealth alleges has cost student loan borrowers billions in additional interest charges. The borrower data will reveal the specific individual borrowers who suffered as a result

6

of Navient's conduct. The Commonwealth may identify borrowers who live in other states and who may benefit from a referral to other law enforcement. The benefit to public welfare and economic well-being of allowing such sharing is analogous to the benefit of sharing information that is important to public health and safety.

### E. Sharing of Information Among Litigants Will Promote Fairness and Efficiency

The fifth *Pansy* factor asks whether the sharing of information among litigants will promote fairness and efficiency. This factor weighs against modifying the Protective Order. The purpose of law enforcement investigations is to identify and remedy unlawful conduct, and to deter future unlawful conduct. This case and others against Navient are intended to prevent *unfair* acts and practices. Although the *Pansy* factor's "fairness" has a more general meaning than the specific "unfairness" prohibited by Federal and state law, this factor nonetheless supports the idea that a law enforcement agency should be able to refer violations of law to other law enforcement agencies. Moreover, within the context of this litigation, there is no element of unfairness implicated. The sharing of the information as contemplated would be serving legitimate law enforcement purposes.

### F. The Party Benefitting from the Protective Order is Not a Public Entity or Official

Sixth, the Court asks whether the party benefitting from the order of confidentiality is a public entity or official. Here, Navient is seeking to modify the protective order for its benefit, and Navient is not a public entity. Thus this factor weighs against modifying the Protective Order. *Bobrick*, 2017 WL 928917, at *4.

### G. The Case Involves Issues Important to the Public

Finally, the *Pansy* test asks whether the case involves issues important to the public. Clearly a nationwide case alleging billions of dollars in harm caused by the nation's largest originator and servicer of student loans involves issues important to the public. However, the case alone implicating public issues is not sufficient. In *Bobrick*, this Court held that "the fact that this litigation may have some public importance does not mean that modification of the [Protective Order] in order to permit" another employee of a party to view protected information "implicates any public interests." *Id.* In order for this factor to weigh against modification, we must consider whether disclosure to other law enforcement "implicates any public interests." Here the public interest weighs against modifying the Protective Order, as it would impair the ability to share with other law enforcement agencies seeking to enforce their own law. Thus, the *Pansy* factors collectively weigh against modifying the Protective Order.


## II. The Parties Have Relied on the Protective Order for Nearly a Year; Navient Negotiated and Agreed to the Protective Order Knowing that the Commonwealth Was Requesting Nationwide Borrower Data

"The Court must also consider the parties' reliance on" the Protective Order. *Bobrick*, 2017 WL 928917, at *4. Here, the Protective Order has been in place for nearly a year, and both Parties have relied on it in producing confidential information. Importantly, Navient agreed to the Protective Order *after* the Commonwealth served its first discovery requests seeking nationwide servicing data. Therefore, Navient was on notice from the outset that this information was being sought by the Commonwealth and it was completely foreseeable that such information would be produced. Nonetheless, the Protective Order that was eventually agreed upon contained no limitation on distribution of servicing data to other law enforcement entities.

Further, Navient did not raise the idea of amending the Protective Order with the Commonwealth in the time between the first discovery request and the Court's December 17, 2018 Order denying the Motion to Dismiss.

Both Parties have benefited and relied upon the Protective Order in the months since it went into effect. As this Court has written,

> The parties' reliance on the [Protective Order] throughout the course of litigation weighs against [the] request for modification. *See Phillips Petroleum*, 158 F.R.D. at 47 ("[B]oth parties have used and benefitted from the agreed upon Protective Order, recognizing that certain confidential or sensitive information, including commercial data, would be sought in discovery. The parties did not negotiate the terms

9

>of the Protective Order in a vacuum, and voluntarily reached their agreement to facilitate discovery, based in part upon their experiences in past related litigation.")

*Bobrick*, 2017 WL 928917, at *4. The Court should not modify the Protective Order because the parties have negotiated and relied upon it. The negotiation did not happen in a vacuum; both parties were aware of the nationwide scope of the data being sought by the Commonwealth.

### III. The Sensitivity of the Data Poses No Reason to Preclude Sharing

In its October 16, 2018 Opinion ordering Navient to produce borrower records, this Court rejected Navient's argument that the sensitivity of the information prohibited its disclosure to the Commonwealth and therefore the information sought was the proper subject of a discovery request under the Federal Rules of Civil Procedure. Doc. 44 at 9-10 (rejecting argument that FISMA trumps a proper state agency request for records under Rule 34). The issues as addressed in that Opinion accurately reflect the fact that civil discovery process by its very nature involves the sharing of sensitive documents and data. The Federal Rules of Civil Procedure provide a mechanism for courts to impose protective orders when warranted. Navient requested and negotiated a protective order. The process is working as intended, and the Protective Order allows the Commonwealth to share under limited circumstances, as described above.

10

Navient would have the various state attorney general offices "walled off" from one another, but these entities must be permitted the opportunity to share information in order to perform their core duties of protecting the public. The sharing of this information in this instance should not be equated to opening Pandora's box; any enforcement actions by other agencies would still be subject to safeguards.

**IV.     The Court Should Not Refer This Dispute to Special Master Vanaskie**

As an alternative argument, Navient raises the prospect of referring this matter to Special Master Vanaskie. Respectfully, the narrow issue at hand does not necessitate the Special Master's involvement. Navient's position is clear: it wants to fully prohibit the Commonwealth from sharing nationwide borrower data with other state law enforcement entities. Navient has not proposed any type of compromise sharing arrangement which might require the repeated application of a balancing test. While certain aspects of this case may be complex, this narrow issue of whether Navient has shown good cause to amend the Protective Order can be decided by the Court.

## **CONCLUSION**

For the forgoing reasons, Navient's Motion to Modify the Protective Order or Refer Discovery Matters to Special Master Vanaskie should be denied.

Dated: March 13, 2019                    Respectfully submitted,

Josh Shapiro
*Attorney General*

\_\_/s/ John M. Abel_____
John M. Abel, PA 47313
(Email: jabel@attorneygeneral.gov)
(Phone: 717-783-1439)
(Fax: 717-705-3795)
*Senior Deputy Attorney General*
Attorney for Plaintiff
Commonwealth of Pennsylvania
15th Floor, Strawberry Square
Harrisburg, PA 17120

Nicholas F. B. Smyth, PA 307972
(Email: nsmyth@attorneygeneral.gov)
(Phone: 412-880-0475)
(Fax: 412-880-0196)
*Senior Deputy Attorney General*
Attorney for Plaintiff
Commonwealth of Pennsylvania
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

Jesse F. Harvey, PA 63435
(Email: jharvey@attorneygeneral.gov)
(Phone: 412-565-2883)
(Fax: 412-880-0196)
*Senior Deputy Attorney General*
Attorney for Plaintiff
Commonwealth of Pennsylvania
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

Jill Ambrose, PA 323549
(Email: jambrose@attorneygeneral.gov)
(Telephone: 412-565-3050)
(Fax: 412-880-0196)
*Deputy Attorney General*
Attorney for Plaintiff

Commonwealth of Pennsylvania
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA, 15222

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, <br> By Attorney General Josh Shapiro, <br><br> Plaintiff, <br><br> v. <br><br> Navient Corporation and Navient Solutions, LLC, <br><br> Defendants. | Case No. 3:17-cv-1814 <br><br> (Judge Mariani) <br><br> (Electronically Filed) |

## **CERTIFICATE OF COMPLIANCEWITH LOCAL RULE 7.8(b)(3)**

I, John M. Abel, hereby certify that the foregoing Memorandum of Law in Opposition to Navient Defendants' Motion to Modify the Protective Order or Refer Discovery Matters to Special Master Vanaskie is in compliance with Local Rule 7.8(b)(3). The brief contains 2,960 words as computed by Microsoft Office Word.

/s/ John M. Abel

Date: March 13, 2019

14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, <br> By Attorney General Josh Shapiro, <br><br> Plaintiff, <br><br> v. <br><br> Navient Corporation and Navient Solutions, LLC, <br><br> Defendants. | Case No. 3:17-cv-1814 <br><br> (Judge Mariani) <br><br> (Electronically Filed) |

## CERTIFICATE OF SERVICE

I, John M. Abel, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Opposition to Navient Defendants' Motion to Modify the Protective Order or Refer Discovery Matters to Special Master Vanaskie was served upon all counsel of record who are deemed to have consented to electronic filing through the Court's CM/ECF system on this 13th day of March, 2019.

/s/ John M. Abel
John M. Abel, PA 47313
(Email: jabel@attorneygeneral.gov)
(Phone: 717-783-1439)
(Fax: 717-705-3795)
*Senior Deputy Attorney General*
Attorney for Plaintiff
Commonwealth of Pennsylvania

15th Floor, Strawberry Square
Harrisburg, PA 17120