## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, | ) |
| By Attorney General Josh Shapiro | ) |
| | ) Case No. 3:CV-17-01814-RDM |
| *Plaintiff,* | ) (Hon. Robert D. Mariani) |
| | ) |
| v. | ) DEFENDANTS' MOTION FOR |
| | ) JUDGMENT ON THE PLEADINGS |
| Navient Corporation, *et al.,* | ) |
| | ) Electronically Filed |
| *Defendants.* | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Daniel T. Brier
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503

Jennifer Levy
Patrick Brown
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington, DC  20004

Michael Shumsky
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, NW, Suite 1200
Washington DC 20005

*Counsel for Defendants Navient Corporation and Navient Solutions, LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................. 1

STANDARD OF REVIEW ................................................................... 5

ARGUMENT ....................................................................................... 5

I.     The "Allegation-by-Allegation" Review Required By The Third
       Circuit Demonstrates That Portions Of Counts II and IV Are Preempted
       By Federal Law. ........................................................................ 5

II.    Navient Is Entitled To Judgment On Counts III, V, VII, and IX Because
       12 U.S.C. § 5552(a)'s Purported Delegation Of Executive Power To
       State Attorneys General Is Unconstitutional ................................... 11

III.   Navient Is Entitled To Judgment On Counts I, IV, and V Because The
       Pleadings Concede The Challenged Conduct Ceased Years Ago And
       Admit There Is No Likelihood Of Recurrence. .............................. 15

CONCLUSION ................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 5

*Behar v. Pa. DOT*,
  791 F. Supp. 2d 383 (M.D. Pa. 2011) ..................................................... 5

*CFPB v. Navient Corp.*,
  No. 3:17-CV-101, 2017 WL 3380530 (M.D. Pa. Aug. 4, 2017) ........... 18

*Commonwealth of Pennsylvania v. Navient Corp.,*,
  967 F.3d 273 (3d Cir. 2020) ........................................... 1, 2, 6, 12, 13

*Crown Castle NG East LLC v. Pa. PUC*,
  ___ A.3d ___, 2020 WL 4152006 (Pa. July 21, 2020) ......................... 20

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.*,
  561 U.S. 477 (2010) .............................................................................. 13

*FTC v. Shire Viropharma, Inc.*,
  917 F.3d 147 (3d Cir. 2019) .............................................................22, 23

*In re Burlington Coat Factory Sec. Litig*,
  114 F.3d 1410 (3d Cir. 1997) ................................................................. 8

*In re Rockefeller Ctr. Props. Inc. Sec. Litig.*,
  184 F.3d 280 (3d Cir. 1999) ................................................................... 8

*New York v. Pennsylvania Higher Education Assistance Agency [PHEAA]*,
  No. 19-cv-9155, 2020 WL 2097640 (S.D.N.Y. May 1, 2020) .......... 9, 10

*Pennsylvania v. TAP Pharm. Products, Inc.*,
  36 A.3d 1997 (Pa. Commw. Ct. 2011 ...................................... 18, 19, 21

*Revell v. Port Auth. of N.Y. & N.J.*,
  598 F.3d 128 (3d Cir. 2010) ................................................................... 5

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) .............................................3, 12, 13, 14, 15, 17

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) ................................................................... 14

*Shaw v. Digital Equipment Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ...................................................... 8

*United States ex rel. Petratos v. Genentech Inc.,*
    855 F.3d 481 (3d Cir. 2017) ...................................................... 20

*United States v. Armstrong,*
    517 U.S. 456 (1996) ................................................................. 12

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) ....................................................... 4, 17, 21

*Williams v. Runyon,*
    130 F.3d 568 (3d Cir. 1997 ....................................................... 20

**Constitutions, Regulations, Rules and Statutes**

1 Pa. Const. Stat. § 1921(b) (1972) ................................................. 20

1 Pa. Const. Stat. § 1921(c)(5) (1972) ............................................. 20

12 U.S.C. § 5491(c) ........................................................................ 16

12 U.S.C. § 5496(a) ........................................................................ 14

12 U.S.C. § 5496(b) ........................................................................ 14

12 U.S.C. § 5496a(b) ...................................................................... 16

12 U.S.C. § 5531(a) ........................................................................ 18

12 U.S.C. § 5552(a) ............................................. 3, 4, 12, 13, 15, 16, 17

20 U.S.C. § 1094(e)(5) .................................................................... 16

20 U.S.C. § 1098g .......................................................................... 5, 6

34 C.F.R. § 601.21(c)(5) ................................................................. 16

34 C.F.R. § 682.215(e)(3)(i) ........................................................... 17

73 Pa. Cons. Stat. § 201-4 (1978) ............................................... 20, 24

Fed. R. Civ. P. 12(b)(6) ............................................................................ 5

Fed. R. Civ. P. 12(c) ............................................................................ 1, 5

*Federal Perkins Loan Program, Federal Family Education Loan Program, and*
   *William D. Ford Federal Direct Loan Program,*
   77 Fed. Reg. 66,088 (Nov. 1, 2012) ................................................. 19

Pub. L. No. 110-315, § 493, 122 Stat. 3078 (Aug. 14, 2008) ................................ 18

U.S. CONST. Art II, § 1 .................................................................... 11, 12

U.S. CONST. Art II, § 3 .................................................................... 11, 12

## INTRODUCTION

Defendants Navient Corporation and Navient Solutions, LLC (together "Navient") respectfully seek entry of judgment on the pleadings as to Counts I, III, IV, V, VII, and IX of the Complaint. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). And in accordance with the Third Circuit's instruction that this Court should "conduct a closer, allegation-by-allegation, assessment of [the Complaint's claims] in the first instance in accord with this opinion," *see Commonwealth of Pennsylvania v. Navient Corp.*, 967 F.3d 273, 292 (3d Cir. 2020), Navient likewise seeks entry of judgment as to discrete portions of Count II.

Three principal arguments support the requested relief. ***First***, the Third Circuit's recent opinion makes clear that the Higher Education Act preempts key portions of the state-law loan-servicing claims in Counts II and IV. It held that the Commonwealth's claims can proceed only "[t]o the extent these allegations hold Navient accountable for its affirmative misconduct" and, therefore, that "[t]he Commonwealth cannot fault Navient for failing to provide consumers with more information about IDR plans or recertification" unless those claims also are tied to an alleged "affirmative misrepresentation." 967 F.3d at 291. Given this new standard for determining whether the Commonwealth's claims are preempted, the Third Circuit indicated "that on remand (especially if Navient again moves for

dismissal) the District Court may need to conduct a closer, allegation-by-allegation, assessment of which claims in the Commonwealth's complaint are based on affirmative misrepresentations and which are possibly based on failures of disclosure.  It would need to do so in the first instance in accord with this opinion." *Id*. at 292.

Faithful application of the Third Circuit's decision at a minimum requires this Court to enter judgment for Navient on the claims pleaded in Count II ¶ 177(b) (alleging Navient violated Pennsylvania's Consumer Protection Law ("CPL") simply because the Company "failed to meaningfully disclose to borrowers struggling to make their payments that the federal government offers IDR plans"); Count IV ¶ 184(b) (alleging Navient violated the CPL because it did not disclose every possible "consequence a borrower will face in failing to submit a timely income driven repayment plan recertification"); and Count IV ¶ 184(c) (alleging Navient violated the CPL solely because its email communications regarding renewal "included no information about the purpose or contents of the notice in the subject line or body of the email").  Each of those stand-alone claims faults Navient for not disclosing information about federal student loans—not for affirmatively misrepresenting something about those loans.   And precisely because the Commonwealth has pleaded these claims as free-standing violations of the CPL (rather than as factual assertions supporting alleged affirmative misrepresentations),

2

Navient is entitled to judgment as a matter of law on these pure non-disclosure claims.

**Second**, the Supreme Court's recent decision in *Seila Law LLC v. CFPB* makes clear that Pennsylvania cannot lawfully enforce the federal Consumer Financial Protection Act ("CFPA") in this litigation. 140 S. Ct. 2183 (2020). That decision declared the CFPB's structure unconstitutional because it vested core components of the President's Article II "executive Power" (including "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court—a quintessentially executive power") in an independent director whom the President could not remove from office at will. *Id.* at 2200, 2204 (citing U.S. CONST. Art. II).

Section 5552(a)'s delegation of the President's executive Power to State Attorneys General ("AGs") suffers from precisely the same constitutional defect. Just as the CFPA delegated the President's executive Power to enforce federal law to the CFPB's director, § 5552(a) grants State AGs this same executive Power "to enforce" federal law. 12 U.S.C. § 5552(a). Just as the President could not remove the CFPB's director at will, the President cannot remove a State AG at will (nor, given basic principles of federalism, could he do so even for cause). And just as Congress cannot lawfully evade Article II by transferring the President's executive Power to an independent federal law enforcement official, it assuredly can't do so

3

by transferring that same executive Power to sovereign state law enforcement officials—who are even further removed from Presidential oversight. Article II thus forecloses Pennsylvania's attempt "to bring federal civil enforcement actions in order to enforce the [CFPA]," Compl. ¶ 6, and Navient is entitled to judgment on Counts III, V, VII, and IX.

*Finally*, Navient is entitled to judgment on Counts I, IV, and V because the Complaint admits the challenged conduct ceased years ago and offers no well-pleaded factual allegations that the challenged conduct is likely to recur. While a federal court's power to enter prospective relief does not *necessarily* evaporate whenever the challenged conduct ceases, the Supreme Court long ago made clear that "the moving party [still] must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Both the CFPA and Pennsylvania's CPL are consistent with this Article III limitation on the judicial power: Each requires the plaintiff to establish an ongoing need for relief. But again, the Complaint contains no well-pleaded allegations that the conduct challenged in these counts is likely to recur and indeed, its only allegations establish that it cannot recur. Navient therefore is entitled to judgment on Counts I, IV, and V.

4

## STANDARD OF REVIEW

The only "difference between [Rule 12(b)(6) and Rule 12(c) motions] is procedural—a motion for judgment on the pleadings is filed after the pleadings are closed, and a motion to dismiss is filed in lieu of an answer." *Behar v. Pa. DOT*, 791 F. Supp. 2d 383, 403 (M.D. Pa. 2011). Accordingly, "[a] motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). To survive Rule 12(c), the Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I. The "Allegation-by-Allegation" Review Required By The Third Circuit Demonstrates That Portions Of Counts II and IV Are Preempted By Federal Law.

The Third Circuit's recent decision in this case makes clear that federal law expressly preempts portions of Counts II and IV. Though Navient does not believe the Third Circuit's interpretation of 20 U.S.C. § 1098g went far enough and fully reserves its right to continue advocating for broader federal preemption in post-judgment appellate proceedings, even the appellate court's more-limited view of § 1098g makes clear that Pennsylvania cannot maintain the freestanding non-

5

disclosure claims pleaded in ¶¶ 177(b), 184(b), and 184(c).  As the Third Circuit explained, § 1098g expressly preempts any claim that is not tied to a provable affirmative misrepresentation: "Section 1098g does not expressly preempt claims *to the extent they are alleging affirmative misrepresentations rather than failures of disclosure*."  967 F.3d at 290 (emphasis added); *see also id.* at 291 ("To the extent [the Complaint's] allegations hold Navient accountable for its affirmative misconduct, they are not preempted.  The Commonwealth cannot fault Navient for failing to provide consumers with more information about IDR plans or recertification, but it can fault Navient for providing misinformation.").

The stand-alone claims pleaded in ¶¶ 177(b), 184(b), and 184(c) fall squarely on the non-disclosure side of the Third Circuit's line between permissible "affirmative misrepresentation" claims and preempted "non-disclosure" claims. Start with ¶ 177(b), which claims Navient violated the CPL simply because "[i]n phone calls, [it allegedly] failed to meaningfully disclose to borrowers struggling to make their payments that the federal government offers IDR plans to help borrowers avoid default."  That is a pure non-disclosure claim: It would impose liability simply because Navient allegedly failed to make a disclosure about IDR—not because Navient allegedly provided false information to borrowers.  In this critical respect, Paragraph 177(b) thus differs from ¶ 177(c), which *does* allege a *possible* affirmative misrepresentation: Unlike ¶ 177(b), ¶ 177(c) seeks to impose liability because

Navient allegedly affirmatively "[m]isrepresented that Defendants would 'work with' borrowers struggling to pay their loans, 'help [borrowers] make the right decision for [their] situation'; and 'help [borrowers] by identifying options and solutions, so [borrowers] can make the right decision for [their] situation' when, in fact, Defendants in many instances did not do so."  Compl. ¶ 177(c) (alteration in original).  That allegation is demonstrably false (as we explain below), but the key point here is that—in stark contrast to ¶ 177(b)—it at least ties Navient's alleged non-disclosure of information to an alleged affirmative misrepresentation.

That difference matters, and not just because the Third Circuit held that the Commonwealth's claims could proceed only "to the extent they are alleging affirmative misrepresentations rather than failures of disclosure."  967 F.3d at 290. It directly impacts the type of proof needed to establish liability for the alleged CPL violations: While a pure non-disclosure claim like ¶ 177(b) arguably would require proof only that Navient did not disclose IDR to a particular borrower, the affirmative-misrepresentation claim pleaded in ¶ 177(c) instead requires individualized proof that Navient affirmatively misrepresented something to a given borrower—which turns on (1) the interpretation of the representations Navient actually made to that borrower and (2) Navient's subsequent conduct, including communications, with respect to that particular borrower, rather than (3) the mere fact of non-disclosure.

As the record demonstrates, with respect to the claim pleaded in ¶ 177(c), Navient did not remotely represent that it would disclose IDR to every single borrower during every single telephone call regardless of the borrower's circumstances and irrespective of what the borrower told Navient.  Instead, the Company's website (which is incorporated by reference in the Complaint, but selectively quoted) represented that Navient "*can help* you find an option that fits your budget, simplifies payment, and minimizes your total interest cost," *see* Exh. A at 2 (emphasis added), and "*can help* you by identifying options and solutions, so you can make the right decision for your situation," *id.* at 3 (emphasis added).  Those statements not only were (and are) entirely true, but Navient lived up to them: Its website in fact provided borrowers with information about IDR both directly below and right beside those statements, *id.* at 2-3, and there is not any allegation, anywhere in the Complaint, that Navient subsequently refused (or otherwise was unable) to help borrowers navigate those options when a given borrower asked Navient to do so.[1]  The Third Circuit's line between affirmative-misrepresentation and non-

---

[1]     This Court can consider materials referenced in the Complaint without converting this motion to one for summary judgment. *See, e.g.*, *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 184 F.3d 280, 292 (3d Cir. 1999) (citing *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

disclosure claims entitles Navient to raise these defenses and put the Commonwealth to its proof.

Indeed, that is precisely what other courts have held in addressing materially indistinguishable claims. In *New York v. Pennsylvania Higher Education Assistance Agency [PHEAA]*, No. 19-cv-9155, 2020 WL 2097640 (S.D.N.Y. May 1, 2020), for example, the Southern District of New York addressed similar claims such as: (1) like ¶ 177(c) here, that loan servicer PHEAA "'[f]alsely [held] itself out as a reliable source of information and assistance to borrowers,'" *id.* at *15 (quoting *PHEAA* Compl. ¶¶ 350(e), 355(e), 359(e)), and (2) like ¶ 177(b) here, that "'PHEAA misrepresents the options available to borrowers by often failing to mention the option to enter IDR.'" *Id.* (quoting *PHEAA* Compl. ¶ 287). Consistent with the Third Circuit's opinion, *PHEAA* ultimately held that (1) the former claim could proceed because it was based on an alleged affirmative misrepresentation (*i.e.*, that PHEAA lied about its willingness to help borrowers), but that (2) the latter claim was preempted because it was "premised on a failure to disclose certain information [about IDR], rather than an affirmative misrepresentation, and would impose additional disclosure requirements beyond those in the HEA." *Id.* Indeed, the *PHEAA* Court expressly rejected New York's attempt to conflate these distinct theories of liability:

> The affirmative representation that NYAG points to is that "PHEAA voluntarily held itself out to borrowers as a source of reliable

information 'to help ease that [financial] stress and find a solution that works for you and your budget' but, when borrowers sought help pushed them into choosing forbearance rather than more beneficial IDR plan." But the affirmative representation, that PHEAA held itself out as a reliable source of information, does not relate to an affirmative misrepresentation about repayment options. Rather, it suggests, maybe that PHEAA's representation that it is a reliable source of information is incorrect, the basis of another aspect of the NYAG's state law claims (that PHEAA "[f]alsely [held] itself out as a reliable source of information and assistance to borrowers").

*Id.* (internal citations omitted). Informed by the Third Circuit's recent decision, this Court should draw the same distinction *PHEAA* did between permissible affirmative misrepresentation claims and prohibited non-disclosure claims.

The claims pleaded in ¶¶ 184(b) and (c) run even further afield. Unlike the IDR disclosure claims—which at least are tied to an alleged affirmative misrepresentation in their ¶ 177(c) form (though not their freestanding ¶ 177(b) form)—these two claims do not implicate an affirmative misrepresentation at all. Instead, they hinge purely on alleged non-disclosures regarding (1) every possible consequence of failing to recertify and (2) the contents of Navient's IDR recertification notices. *See* Compl. ¶ 184(b) (alleging Navient violated the CPL because it did not disclose every "consequence a borrower will face in failing to submit a timely [IDR] plan recertification"); *id.* ¶ 184(c) (alleging Navient violated the CPL simply because its email communications regarding renewal "included no information about the purpose or contents of the notice in the subject line or body of the email"). Neither of these claims alleges the information Navient provided was

10

false in any way or that Navient otherwise promised to disclose the additional information Pennsylvania now demands; instead, these claims are based exclusively on the alleged fact of non-disclosure and therefore are preempted. *See* 967 F.3d at 291 (*"**The Commonwealth cannot fault Navient for failing to provide consumers with more information about IDR plans or recertification**, but it can fault Navient for providing misinformation."*) (emphasis added).

## II. Navient Is Entitled To Judgment On Counts III, V, VII, and IX Because 12 U.S.C. § 5552(a)'s Purported Delegation Of Executive Power To State Attorneys General Is Unconstitutional.

Navient also is entitled to judgment on each of the Complaint's federal CFPA claims. *See* Compl. Counts III, V, VII, IX. Each of those claims arises under 12 U.S.C. § 5552(a), which purportedly authorizes "the attorney general … of any State … *to enforce* provisions of this title or regulations issued under [it]." 12 U.S.C. § 5552(a) (emphasis added). But *Seila Law* now makes clear that any such delegation of federal law enforcement authority to Presidentially unaccountable State officials violates the Constitution. *See* 140 S. Ct. at 2200-04; *see also* U.S. CONST. Art II, § 1 ("The executive Power shall be vested in [the] President."); *id.* Art. II § 3 ("[The President] shall take Care that the Laws be faithfully executed.").

Because the Commonwealth therefore has no lawful basis to enforce the CFPA, Navient is entitled to judgment on Counts III, V, VII, and IX in their entirety.[2]

As *Seila Law* explained, Article II provides that "[t]he **entire** 'executive Power' belongs to the President alone." 140 S. Ct. at 2197 (emphasis added); *id.* at 2191 ("Under our Constitution, the 'executive Power'—**all of it**—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'") (emphasis added; quoting U.S. CONST. Art. II, §§ 1, 3). While that does not bar the President from enlisting subordinates to "help him discharge his constitutional responsibility" to enforce federal law, *United States v. Armstrong*, 517 U.S. 456, 464 (1996), it does mean that **anyone** who exercises the President's executive Power "must remain accountable to the President, whose authority they wield." *Seila Law*, 140 S. Ct. at 2197. Accordingly, no delegation of executive Power is lawful unless the President can remove the delegee charged with enforcing federal law, because "'[w]ithout such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else.'" *Id.* at 2191 (quoting

---

[2]    Navient previously argued that § 5552(a) does not authorize the Commonwealth's "copycat claims," but this Court and the Third Circuit rejected Navient's statutory arguments. While Navient respectfully disagrees with those rulings and, if necessary, reserves its right to seek further review of the statutory question in post-judgment appellate proceedings, the point here is that the Third Circuit expressly deferred judgment on Navient's constitutional arguments and left Navient free to raise them now. 967 F.3d at 287 n.11 ("We ... do not address [Navient's] constitutional arguments at this stage.").

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010); alteration added).

Given those principles, *Seila Law* held that the CFPB's structure was unconstitutional to the extent it vested core Article II executive Power in an independent director whom the President could not remove at will—including "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court—a quintessentially executive power," *id.* at 2200, and to "bring the coercive power of the state to bear on millions of private citizens and businesses, imposing even billion-dollar penalties through administrative adjudications and civil actions." *Id.* at 2200-01. Citing the Constitution's text and history, *Seila Law* held that the CFPA's transfer of federal law enforcement authority from the President to a Presidentially unaccountable independent actor was unconstitutional: "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Id.* at 2197 (quoting James Madison, 1 Annals of Cong. 463 (1789)).

If Congress cannot circumvent Article II by vesting the CFPB's independent director with federal law enforcement authority, it cannot do so by vesting independent State AGs with such authority. Yet that is precisely what Section 5552(a) does: It authorizes State AGs "***to enforce***" the CFPA, 12 U.S.C. § 5552(a) (emphasis added), by "seek[ing] daunting monetary penalties against private parties

13

on behalf of the United States in federal court—*a quintessentially executive power*." *Seila Law*, 140 S. Ct. at 2200 (emphasis added). And just as the Constitution bars Congress from transferring this "quintessentially executive power" to a CFPB director whom the President cannot remove *without cause*, it assuredly bars Congress from vesting such power in State AGs—whom the President cannot remove *even for cause*, because "each State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

Indeed, § 5552(a)'s trans-sovereign delegation of executive Power renders § 5552(a) even more unconstitutional than § 5491(c)'s for-cause limitation on the President's ability to remove the CFPB's director. Whether or not the President could remove the CFPB's director at will, the CFPB's exercise of "quintessentially executive power" at least remained subject to *some* direct federal supervision: The CFPA requires the CFPB to submit to regular congressional and presidential oversight, 12 U.S.C. § 5496(a)-(b), and to be audited annually by the Comptroller General, *id.* § 5496a(b), though even those features were not enough to legitimate the CFPA's vesting of federal law enforcement authority in an independent director.

Section 5552(a), however, lacks even those modest safeguards: It allows federal law to be "enforce[d]" by sovereign State actors, who are not directly accountable to the federal government at all. And if it is unconstitutional to transfer this "quintessentially executive power" to an official that the President *can remove*

14

*for cause* and otherwise *remains subject to direct federal oversight*, it is patently unconstitutional to vest this power in State officials who *cannot be removed even for cause* and otherwise *are immune from direct federal oversight*. Upholding section 5552(a)'s transfer of "executive Power" to State AGs thus would blast a gaping hole in Article II, by opening the floodgates for Congress to effectively prevent the President from supervising the execution of federal law simply by delegating federal law enforcement authority to the States. *Seila Law* makes clear that such a scheme is anathema to our constitutional structure, and because the Complaint's CFPA claims each arise under § 5552(a)'s unconstitutional transfer of "quintessentially executive power" from the President to Presidentially unaccountable State officials, Navient is entitled to judgment on Counts III, V, VII, and IX.

### III.   Navient Is Entitled To Judgment On Counts I, IV, and V Because The Pleadings Concede The Challenged Conduct Ceased Years Ago And Admit There Is No Likelihood Of Recurrence.

This Court previously recognized that (1) "by the plain language of the CPL, the Commonwealth must adequately plead a claim for injunctive relief to maintain a claim under the CPL and to recover civil penalties for violations of the CPL," Dkt. 70 at 13, and (2) the Complaint's basis for seeking injunctive relief at best is dubious because (a) "all the relevant allegations [regarding Navient's loan-origination activities] relate to past misconduct," *id.*, and (b) "the only prospective allegations

are conclusory statements" devoid of well-pleaded factual support, *id.* Indeed, the Complaint ***admits*** the challenged loan-origination conduct ***cannot*** recur because of structural changes in the student lending market and new federal regulations that postdate the Complaint's allegations (and with which Navient admittedly has complied). Compl. ¶ 50 ("After 2007, new regulations were imposed on preferred lending due to the many known and unmanaged conflicts of interest of the financial aid offices."); *see also* Higher Education Opportunity Act, Pub. L. No. 110-315, § 493, 122 Stat. 3078, 3315 (Aug. 14, 2008) (amending the HEA to prohibit "any offer of funds to be used for private education loans … in exchange for … providing the lender with … a preferred lender arrangement") (codified at 20 U.S.C. § 1094(e)(5)); 34 C.F.R. § 601.21(c)(5) (same). Indeed, the Complaint admits the FFELP program at the heart of its origination allegations ended in 2010. Compl. ¶ 32.

Those findings apply equally to Count IV's IDR recertification claims. Here, too, the allegations relate solely to past misconduct; lack any well-pleaded allegations of prospective misconduct necessitating injunctive relief; and concede the challenged conduct cannot recur due to federal regulatory changes with which Navient admittedly has complied. *See, e.g.*, Compl. ¶¶ 135-38, 146, 184(a)-(c) (alleging that Navient's ***"pre-December 2012"*** notices did not inform borrowers exactly when to recertify and "failed to advise borrowers of the likely consequences

of submitting incorrect or incomplete information," but conceding that "Defendants [have] made several enhancements to their email" that remediated the alleged defects); *see also* ED, *Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 77 Fed. Reg. 66,088, 66,108 (Nov. 1, 2012) (describing the new regulations with which Navient admittedly has complied); 34 C.F.R. § 682.215(e)(3)(i) (same).

Given the Complaint's admissions that Navient ***has not*** engaged in the challenged conduct for years because it ***cannot*** do so given (1) changed circumstances in the student loan marketplace and (2) new regulations that Navient admittedly has followed, Navient is entitled to judgment. While it generally is the case that a "court's power to grant injunctive relief survives discontinuance of the illegal conduct," that is true only to the extent the plaintiff can justify the exercise of such authority with well-pleaded allegations of prospective misconduct warranting prospective relief: "[T]he moving party [still] must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W.T. Grant*, 345 U.S. at 633 (citations and quotations omitted).

Consistent with those well-established limitations on this Court's Article III power, the CPL's plain language authorizes suit only where the Commonwealth adequately pleads that a defendant presently "***is using*** or ***is about to use*** any

17

[prohibited] method, act or practice." 73 Pa. Cons. Stat. § 201-4 (1978) (emphasis added). So does the CFPA, which likewise requires a live controversy over ongoing conduct by authorizing "a civil action [only] '*to prevent* a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law,' 12 U.S.C. § 5531(a)." *CFPB v. Navient Corp.*, No. 3:17-CV-101, 2017 WL 3380530, at *5 (M.D. Pa. Aug. 4, 2017) (emphasis added). Whether viewed through the lens of this Court's authority under Article III *or* as a matter of statutory interpretation under the CPL or the CFPA, this Court lacks authority to grant any relief under Counts I, IV, and V given the absence of any well-pleaded allegations that the challenged conduct is likely to recur and, thus, that prospective relief is needed.

Navient recognizes that this Court previously allowed the Commonwealth's state-law claims to proceed based on its interpretation of a non-controlling Pennsylvania Commonwealth Court decision which (like *W.T. Grant*) held **in part** that "cessation of the offending conduct does not, **in and of itself**, bar a claim for injunctive relief." Dkt. 47 at 49 (quoting *Pennsylvania v. TAP Pharm. Products, Inc.*, 36 A.3d 1997, 1238-43 (Pa. Commw. Ct. 2011); emphasis added here). But as this Court later recognized, *see* Dkt. 70 at 15-16, its initial interpretation of Pennsylvania law is doubtful. First, even *TAP* made clear that a court facing claims for injunctive relief under the CPL still "should consider whether the offending

18

conduct *is likely to reoccur* absent the grant of an injunction." *TAP*, 36 A.3d at 1242 (emphasis added); *see also id*. at 1238. Second, *TAP* recognized that the CPL "is modeled" on the Federal Trade Commission Act ("FTCA"), *id*. at 1241-42, and the Third Circuit now decisively has held that the FTCA's plain language unambiguously bars claims based on "showing a violation in the distant past and a vague and generalized likelihood of recurrent conduct. Instead, 'is' or 'is about to violate' means what it says—the FTC must make a showing that a defendant is violating or is about to violate the law." *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 159 (3d Cir. 2019).

This Court did not have the benefit of *Shire*'s interpretation of the CPL's predicate statute when it rendered its original decision, and has acknowledged that its opinion cannot be squared with *Shire*'s interpretation of the FTCA. Dkt. 70 at 15 ("[T]he Circuit reached a different conclusion than this Court in analyzing a similar statute under similar factual circumstances."). There is no reason to think the Third Circuit would reach a different conclusion in post-judgment proceedings from an adverse verdict in this case. Nor is there any reason to think that, were it to consider this issue in the first instance, the Pennsylvania Supreme Court would reject the Third Circuit's plain-language analysis or construe a statute that, in relevant part, parallels the FTCA to mean something entirely different. Instead, the Pennsylvania Supreme Court applies the same interpretive rules that prompted the Third Circuit's

holding in *Shire*. *See, e.g.*, *Crown Castle NG East LLC v. Pa. PUC*, ___ A.3d ___, 2020 WL 4152006, *6 (Pa. July 21, 2020) ("The best indication of legislative intent is the plain language of the statute. In ascertaining the plain meaning, we consider the statutory language in context and give words and phrases their common and approved usage. When statutory language is clear and unambiguous, courts must give effect to the words of the statute and must not disregard the text to implement its objective.") (citations and quotations omitted); *see also* 1 Pa. Const. Stat. § 1921(b), (c)(5) (1972) (directing courts to apply the plain meaning of statutes and, where the meaning is not clear, to consider the interpretation of "other statutes upon the same or similar subjects," like the FTCA here).

Finally, law-of-the-case principles are no bar to properly resolving this issue now, before the parties waste millions of dollars and years of discovery (including burdensome third-party discovery), motions practice, and possible trial time on claims the Third Circuit assuredly will reject in light of *Shire*. "[I]nterlocutory orders remain open to trial court reconsideration, and do not constitute the law of the case." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (internal quotation and alteration omitted); *see also id.* ("The law of the case doctrine … 'does not limit the power of trial judges to reconsider their [own] prior decisions.'") (quoting *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) (alteration in original)). Indeed, it would be particularly strange to apply law-of-the-

case principles here because no party has relied on this Court's prior construction of the CPL: This case has been stayed ever since the Court certified its decision for interlocutory review. *See* Dkt. 75 (stay order). Given the Third Circuit's intervening decision in *Shire*; *TAP*'s recognition that, consistent with § 201-4's plain language, courts must evaluate "whether the offending conduct is likely to reoccur absent the grant of an injunction," *TAP*, 36 A.3d at 1242; well-established U.S. Supreme Court precedent regarding constraints on the power of federal courts to grant injunctive relief, *W.T. Grant*, 345 U.S. at 633; and the Complaint's lack of any well-pleaded allegations that recurrence of the challenged conduct is probable, Navient is entitled to judgment on Counts I, IV, and V.

## CONCLUSION

For the foregoing reasons, this Court should enter judgment for Navient on Counts I, III, IV, V, VII, and IX in their entirety and the above-referenced portions of Count II.

Dated:  September 18, 2020

Respectfully submitted,

By:   /s/ Daniel T. Brier
     Daniel T. Brier (PA 52348)
     Myers Brier & Kelly, LLP
     425 Spruce Street, Suite 200
     Scranton, PA 18503
     dbrier@mbklaw.com
     Tel: 570-342-6100
     Fax: 570-342-6147

Jennifer Levy (DC 461921)
Patrick Brown (DC 1033415)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200

Michael Shumsky
HYMAN, PHELPS &
MCNAMARA, P.C.
700 Thirteenth St. NW, Suite 1200
Washington, DC 20005
Tel: 202-737-5600
Fax: 202-737-9329

*Counsel for Defendants
Navient Corporation and
Navient Solutions, LLC*

22

## CERTIFICATE OF COMPLIANCE
## <u>WITH LOCAL RULE 7.8(b)(3)</u>

I, Daniel T. Brier, hereby certify that the foregoing Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings is in compliance with Local Rule 7.8(b)(3).   The brief contains 4991 words as computed by Microsoft Office Word.

<u>/s/ Daniel T. Brier</u>

Date:  September 18, 2020

## **CERTIFICATE OF SERVICE**

I, Daniel T. Brier, hereby certify that, on September 18, 2020, I filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Daniel T. Brier
Daniel T. Brier