# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| People of the State of Illinois,<br>    Plaintiff,<br><br>v.<br><br>Navient Corporation,<br>Sallie Mae Bank,<br>Navient Solutions, LLC,<br>Pioneer Credit Recovery, Inc.,<br>General Revenue Corporation,<br>    Defendants. | No. 17 CH 761<br>Calendar 15<br><br>Hon. Anna M. Loftus<br>Judge Presiding |

## MEMORANDUM OPINION & ORDER ON
### NAVIENT DEFENDANTS' MOTION TO RECONSIDER

This is a consumer protection action in which Plaintiff, the People of the State of Illinois, have filed suit against a variety of Defendants affiliated with Navient and Sallie Mae. The claims are lengthy, but at their core Plaintiff alleges Defendants undertook deceptive and unfair business practices in the course of originating and servicing student loans.

The Navient Defendants originally moved to dismiss the original Complaint, a motion the Court denied in its entirety. Those Defendants have now moved to reconsider. The Motion has been fully briefed, argued, and supplemented on a number of occasions by subsequent authority. The legal landscape for this type of claim has shifted in the time since the original ruling, and much of the Court's analysis is either new or substantially informed by novel precedent.

The Motion to Reconsider is granted in part and denied in part. The overwhelming majority of Plaintiff's claims were and remain properly brought, and the Court finds no error in its prior ruling. The Motion is, however, granted as to certain portions of the loan servicing claims.

## I. Relevant Procedural History

Plaintiff, the People of the State of Illinois ("the State"), filed its Complaint claiming Defendants[1] ("Navient") engaged in various unfair and deceptive practices while originating and servicing federal and private student loans in violation of the

---

[1] Relevant here are Navient Corporation, Navient Solutions, LLC, Pioneer Credit Recovery, Inc., and General Revenue Corporation; collectively, "Navient."

Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILL. COMP. STAT. 505/1, *et seq.* (the "Consumer Fraud Act" or "ICFA").

Specifically, the State's Complaint with respect to loan origination alleges that Navient preyed on vulnerable borrowers in violation of the Consumer Fraud Act when it deceptively offered risky, expensive subprime private loans knowing of the high likelihood these loans would default; obtained partial payment from the schools in the form of "credit enhancements" or "recourse" arrangements in order to shift the risk of default and, meanwhile, endeavored to collect the full amount of the loans from the borrowers; and failed to disclose this information to borrowers.

The State's claim relating to loan servicing alleges Navient was charged by the federal government with assisting financially-distressed student loan borrowers in identifying affordable repayment plans and it published on its website that it would find the best options for borrowers; however, it incentivized its employees to steer such borrowers into forbearance agreements, where interest accrues and capitalizes, and failed to disclose to borrowers the availability of more appropriate and less expensive repayment options. The State further alleges that Navient failed to provide borrowers who enrolled in income-driven repayment ("IDR") plans with necessary recertification information, and also provided them with inaccurate or misleading information, such that many were unable to maintain enrollment and avoid unaffordable increases in their payment amounts and other irreversible consequences which were detrimental to the borrower and profitable for Navient.

Navient moved to dismiss the State's Complaint under Section 2-619.[2] 735 ILL. COMP. STAT. 5/2-619. Navient argued the State's loan origination claims were expressly preempted by Section 1610 of the Truth in Lending Act, 15 U.S.C. §1600, *et seq.* ("TILA"), because they impermissibly seek to impose disclosure requirements that exceed those mandated by TILA. Navient further argued that the State's loan servicing claims were expressly preempted by Section 1098g of the Higher Education Act of 1965, 20 U.S.C. §1001 *et seq.* ("HEA"), because they impermissibly seek to impose disclosure requirements.

The Court examined and analyzed the arguments and cases relied upon by the parties, and issued an order denying Navient's motion in its entirety on July 10, 2018 (the "Order"). In the Order, the Court held that where the loan origination activities alleged by the State are not addressed by any of TILA's disclosure requirements, they are not preempted by Section 1610. As to the loan servicing claims, the Court concluded that the gravamen of the claims did not allege improper disclosures, but instead, at their core, they allege affirmative conduct which amounts to deceptive and unfair practices, and therefore, they were not expressly preempted by Section 1098g.

---

[2] Navient also moved to dismiss under Section 2-615, arguing plaintiff has failed to plead a proper cause of action, and under Section 2-603(b), arguing the complaint commingled various categories of claims and theories of liability. The Court denied Navient's motion on these bases. Navient seeks reconsideration of the July 10, 2018 order only as it pertains to the Court's ruling on Section 2-619 grounds. Because Navient does not seek reconsideration of the ruling under Sections 2-615 or 2-603(b), the Court will not address its findings under those sections here.

On August 9, 2018, Navient filed the present Motion to Reconsider, seeking to reconsider the denial of its Motion to Dismiss as to the origination and servicing claims. The Motion was briefed and the Court heard oral argument on January 9, 2019 and took the matter under advisement. While the present Motion was pending, the parties sought and the Court allowed the filing of supplemental authority.[3]

While briefing was being conducted on the Motion to Reconsider, and as a result of rulings as to Salle Mae, the State filed its First Amended Complaint ("FAC") on September 11, 2018. The amendments to the Complaint did not substantially change or moot Navient's present motion, but did change certain paragraph numbers referenced in the motion and briefing. Where possible, the Court will refer to the allegations by the paragraphs identified in the First Amended Complaint throughout this order in order to ensure there is no confusion as the litigation proceeds.

## II. Legal Standard

"The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶36. Where, as here, the claimed basis for reconsideration is an error in the application of existing law, the Court must examine the arguments raised in the prior decision. *Id.; see also, e.g., Caywood v. Gossett*, 382 Ill. App. 3d 124, 133–34 (1st Dist. 2008).

Here, the underlying motion was a Motion to Dismiss, brought pursuant to Section 2-619. A Section 2-619 motion targets the Complaint by introducing an "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILL. COMP. STAT. 5/2-619(a)(9). In such an analysis, the Court accepts as true all well-pleaded facts and inferences stemming therefrom.

As with any other pleadings challenge, should the allegations be insufficient, the Court may consider permitting or requiring amendment as appropriate. 735 ILL. COMP. STAT. 5/2-615(d), 2-616(a); *see also Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273–76 (Ill. 1992).

Here, Navient claims it is entitled to reconsideration because the Court ignored controlling authority and its Order mischaracterizes the operative facts, resulting in a misapplication of the law to those facts. Reply, pp. 1–2.

---

[3] The supplemental authority file in conjunction with the present motion includes: *People of the State of Calif. v. Navient Corp., et al.*, CGC-18-567732 (Super. Ct. of Cal., Dec. 20, 2018); *Davis v. Navient Corp.*, No. 17-CV-0992, 2019 U.S. Dist. LEXIS 14135 (W.D.N.Y. 2019), accepting and adopting the opinion of Magistrate Judge Jeremiah J. McCarthy in *Davis v. Navient Corp.*, No. 17-cv-0099-LJC-JJM, 2018 U.S. Dist. LEXIS 41365 (W.D.N.Y. 2018); *Chery v. Conduent Ed. Services, LLC*, 2019 U.S. Dist. LEXIS 53463 (N.D.N.Y. 2019); *Nelson v. Great Lakes Ed. Loan Services, Inc.*, 928 F.3d 639 (7th Cir. 2019); *New York v. Pa. Higher Educ. Assistance Agency*, 2020 U.S. Dist. LEXIS 77655 (S.D.N.Y. May 1, 2020); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269 (E.D.N.Y. 2020); and *Commonwealth of Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020).

### III. Origination Claims

Navient's Motion to Reconsider is denied as to the Court's ruling concerning the loan origination claims. In large part, the Motion is premised on Navient's reading of *Lanier*, a relevant Illinois Supreme Court case. *Lanier v. Assocs. Fin., Inc.*, 114 Ill. 2d 1 (Ill. 1986). Navient misreads *Lanier*, and the Court rejects its argument.

#### A. Navient's Arguments

Navient contends that in rejecting its preemption argument with respect to the origination claims, the Court ignored the controlling authority of *Lanier*, in which our Supreme Court concluded "the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure . . . than the disclosure required by the comprehensive provisions of the Truth in Lending Act." *Lanier*, 114 Ill. 2d 1, 17. Because the "core of the State's origination claims is that a Sallie Mae predecessor should have made disclosures that TILA does not require," Navient concludes the origination claim is preempted per *Lanier*. MTR, p.11.

Further, Navient contends that the Court's determination that the State has not challenged Navient's failure to disclose, but instead has alleged these facts as the basis for unfair and deceptive acts under the ICFA, is not an accurate characterization of the Complaint, and that such characterization attempts to limit *Lanier* "beyond recognition." MTR, p.12 (citing Order, p.29).

Based upon its belief that the State's origination claim requires disclosures not required by TILA, Navient complains that the Court's continued reference to compliance with TILA is "mystifying." Reply, p.11. The whole point, argues Navient, is that the State's claim alleges the failure to disclose information that is *not* required to be disclosed under TILA. Moreover, Navient argues the Court allegedly erred in requiring Navient to prove it complied with TILA on a Motion to Dismiss, which is designed to test the sufficiently of the allegations and not to require proof that the allegations are untrue. MTR, p.12.

Finally, Navient argues the Court misapplied the "active and direct fraud" "exception" to *Lanier*, which allows claims of affirmative false statements to borrowers to go forward (as opposed to a failure to disclose information claim), given the State's origination claim fails to allege any affirmative misrepresentations. MTR, p.13.

#### B. State's Argument

The State contends the Court properly analyzed *Lanier* and properly noted that Navient's apparent compliance with TILA did not provide immunity from liability for fraudulent schemes alleged in its origination claim. Moreover, the State argues the Court properly identified the origination claim as a claim for unfair and deceptive practices as opposed to one alleging a failure to disclose.

Finally, the State reiterates that there is no conduct alleged in the origination claim that would trigger a duty to disclose under TILA. Notably, the State does not

directly address Navient's argument that the origination claim is preempted pursuant to *Lanier*, because it alleges Navient failed to disclose information that is *beyond* what is required by TILA.

### C. Reconsideration

Navient misreads *Lanier*. That case did not hold that all ICFA claims are barred if they require more extensive disclosure than TILA requires. Instead, the *Lanier* court concluded that where TILA is implicated in a claim, the court cannot impose greater disclosure requirements under ICFA than those mandated by TILA. It is undisputed that the allegations in the State's origination claim do not implicate TILA, and therefore, *Lanier* does not preempt or in any other way affect the claim.

Because *Lanier* is not implicated, it follows that the so-called "active and direct" exception to *Lanier* is similarly inapplicable.

Finally, the Court properly characterized the State's origination claim as one alleging a fraudulent scheme unrelated to TILA. To the extent Navient believes that any reference to "failure to disclose" in a complaint constitutes the "implication of TILA," the Court rejects that premise.

### 1. *Lanier v. Associates Finance*

Navient's understanding of *Lanier* is incorrect. As the Court ruled in its Order, *Lanier* and its progeny do not hold that all ICFA claims seeking to enforce disclosures not contemplated by TILA are preempted. Order, p. 28. Instead, these cases hold that where TILA is implicated in a claim, the court cannot impose greater disclosure requirements than those mandated by TILA. *Lanier*, 114 Ill. 2d at 17 ("we perceive . . . a consistent policy against extending disclosure requirements under Illinois law beyond those mandated by the Truth in Lending Act, in situations *where both the Act and the Illinois statutes apply*" (emphasis added)). *See also Jenkins v. Mercantile Mortgage Co.*, 231 F. Supp. 2d 737, 752 (N.D. Ill. 2002) (the *Lanier* court "held only that, where TILA was implicated and the defendant was in compliance, Illinois law does not impose greater disclosure requirements that those mandated by federal law"); *Jackson v. S. Holland Dodge*, 197 Ill. 2d 39, 49–50 (Ill. 2001) (plaintiff alleged a violation of TILA where an exemption applied; violation of Consumer Fraud Act would improperly impose disclosure requirements beyond those mandated by federal law.)

*Lanier* involved an ICFA claim alleging the failure to disclose that directly implicated TILA. Plaintiff there argued that the loan originator had an obligation to explain the "Rule of 78's" at the time the loan was issued, because it effectively increased her annual interest rate from the rate stated in her agreement if she paid off her loan early. 114 Ill. 2d at 5–7. She further argued that the application the Rule penalized those who chose early repayment. *Id.* Defendant maintained that it complied with the disclosure requirements of TILA and that compliance with TILA is a defense to liability under the Consumer Fraud Act. *Id.* at 11, 18.

TILA regulates how creditors must disclose the APR and the loan finance charges to potential borrowers. *Id.* at 9–10. In arguing that defendant loan

originator's disclosures were insufficient, therefore, plaintiff's ICFA claim in *Lanier* implicated TILA, which regulated consumer credit loan transactions. *Id.* at 11. In that context, the court concluded that any ICFA claim brought by plaintiff in *Lanier* could not require a more detailed disclosure than what TILA required. *Id.* at 17. After holding that the loan originator had not violated the statute in failing to explain the operation of the Rule of 78's, *id.* at 14, the *Lanier* court concluded that compliance with TILA was a proper defense to the ICFA claim in that case, *id.* at 18.

Here, the State's origination claim does not implicate TILA. As the Court noted, the core of the claim alleges that Navient "unfairly and deceptively offered risky subprime loans to vulnerable borrowers in order to obtain placement on schools' preferred lender lists and increase its bottom line." Order, p.24. The State's claim is "an attempt[ ] to enforce a state consumer protection statute," and "complying with other statutory, regulatory and contractual obligations does not relieve Navient of its obligations to refrain from committing acts that are unlawful under the [ICFA]." Order, p.29. Therefore, the holding in *Lanier* is inapplicable. Navient has not shown how this conclusion was in error.

Navient appears to recognize that TILA is not implicated by the origination claim, but still insists that the State cannot seek to hold Navient liable for more extensive disclosures than required by TILA. It points to the following disclosure allegations in the State's origination claim:

- Navient's failure to disclose the existence of the contractual arrangements it had with schools. FAC, ¶529(b).
- Navient's failure to disclose to borrowers that it was highly likely their loans would default. FAC, ¶529(d).
- Borrowers had no idea they were more likely to default than pay back their loans. FAC, ¶181.
- Borrowers did not know a deal was made with the borrower's school to cover a portion of the loan. FAC, ¶194.

*See* MTR, pp. 11–12.

But *Lanier* does not prohibit all ICFA claims in the consumer loan context. As explained above, alleging solely that a loan originator failed to disclose information to a borrower that is not required by TILA, without any alleged violations of TILA, does not result in the preemption of the claim. *Lanier*, 114 Ill. 2d at 17. For the origination claim to implicate TILA, the State would have to allege a failure to comply with the requirements of TILA, which it has not done. If such a claim were alleged, the State could not seek to hold Navient liable for a failure to disclose additional information not regulated by TILA.

As the Court set forth in detail in its Order, the fact that Navient may have complied with TILA does not bar the State's ICFA claims that Navient engaged in deceptive practices. Order, p.29. Indeed, *Lanier* did not confer a blanket immunization from Consumer Fraud Act liability. *Price v. Philip Morris, Inc.,* 219 Ill.

2d 182, 247 (Ill. 2005) ("mere compliance with applicable federal regulations is not necessarily a shield against liability under the Consumer Fraud Act."). To close the circle, the Court pointed out that Navient has not established compliance with TILA nor has the State conceded any such compliance. Order, p.29. There is nothing mystifying about this.

### 2. "Active and Direct" Fraud

Finally, and without much analysis, Navient argues that the Court misapplied the "active and direct" fraud "exception" to *Lanier*, citing *Price v. Philip Morris*. 219 Ill. 2d at 249. Because there are no allegations of affirmative misrepresentations as required by the exception, but instead, only allegations that Navient failed to disclose information to borrowers, Navient contends the State's Consumer Fraud Act origination claim cannot survive. MTR, p.13.

First, and as discussed above, because *Lanier* does not apply to the present case (i.e., TILA is not directly implicated), the Court need not discuss an "exception" to *Lanier*.

Second, a review of *Jackson v. S. Holland Dodge*, 197 Ill.2d 39 (2001), the case relied upon by *Price*, reveals that the term "active and direct" is an "exception" to *Lanier* because compliance with TILA cannot be a defense to a Consumer Fraud Act claim—even when TILA is implicated—where the TILA violation arises out of a fraudulent scheme. This makes sense; compliance with TILA cannot be a defense to a consumer fraud claim where a party schemed to make false statements on that very disclosure.[4] The "but I provided the disclosure" defense cannot defeat a claim that the disclosure itself constitutes fraud.

Here, the State has alleged a Consumer Fraud Act claim based upon Navient's scheme to offer borrowers predatory subprime loans that defaulted at extraordinary high rates for its own economic gain. Order, p. 30. As noted multiple times, TILA is not implicated here, so the "active and direct" distinction as set forth in *Jackson* (and referenced in *Price*) is irrelevant. And an "active and direct" fraud claim as identified by *Jackson* is not the counterpoint to a failure to disclose claim, as Navient seems to imply. The fact that the origination claim includes allegations that Navient failed to disclose the details and effects of its fraudulent scheme to borrowers does not change

---

[4] In *Jackson*, the court held that the assignee of a financing statement was not liable for TILA violations initiated by the dealership; the violations were not apparent on the face of the document, and therefore, the TILA assignee exemption applied. *Id.* at 50; 15 U.S.C. §1641(a) (basis for exception covering assignee liability). Therefore, following *Lanier*, compliance with the disclosure requirements of TILA was a defense to the ICFA claim against the assignee. *Id.* Later, the court noted in dicta that a ICFA claim could be brought against the assignee if the fraud was active and direct and occurred prior to the assignment (i.e., TILA assignee exemption would not apply). *Id.* at 52. For example, if the facts established "the assignee met with the dealership [pre-assignment] and concocted a scheme to put false statements on the financing statement, an assignee would not be exempt from a state fraud action from a duped buyer." *Id.* The import of this decision is that if a party directly engages in a fraudulent scheme related to a consumer financing disclosure, the fraudulent nature of the action constitutes a proper ICFA claim, and ultimate compliance with TILA will not bar that claim.

the character of the claim nor, as stated above, does it result in the preemption of the claim.

In sum, the State properly brings an origination claim pursuant to the Consumer Fraud Act alleging a fraudulent scheme by Navient that includes the failure to disclose the consequences of that scheme to borrowers. The origination claim does not implicate TILA, and therefore, the inclusion of allegations concerning disclosures not required by TILA does not result in preemption.

Navient's Motion to Reconsider the Court's Order concerning the State's origination claim is denied.

## IV. Servicing Claims

This portion of the Motion is particularly susceptible to the supplemental authorities and cases decided since the original denial of Navient's Motion to Dismiss. In predominant part, the Court concludes the allegations as to Navient's conduct plead affirmative misrepresentations, rather than failures to disclose. The claim is therefore properly brought, though certain allegations are stricken in part or in full.

### A. Navient's Argument

The Court erred, according to Navient, by improperly narrowing the scope of the HEA's express preemption provision—Section 1098g—in evaluation the State's servicing claims. Navient points to the Court's reliance on the language cited from *Genna v. Sallie Mae, Inc.,* 2012 U.S. Dist. LEXIS 54044 (S.D.N.Y. 2012).[5] *Genna* provides, in essence, that Section 1098g preemption applies only to formal written communications to borrowers that are required in federal regulations. *Id.* at **21–24; Order, p.16.

Navient also takes specific issue with the Court's failure to even mention, let alone accord deference to, the Department of Education's 2018 Federal Register notice[6] affirming that "'disclosure requirements' under section 1098g . . . encompass informal or non-written communications to borrowers . . . ."[7] 83 Fed. Reg. 10619, 10621 (Mar. 12, 2018). In addition, Navient criticizes the Court's failure to consider the District Court's opinion in *Nelson v. Great Lakes Educ. Loan Servs.* in ruling on

---

[5] Though Navient cites only to the Court's Order which concluded that allegations involving day-to-day communications with borrowers are not preempted, the language the Court cited in its Order is taken directly from *Genna.*

[6] The document is formally titled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers." 83 Fed. Reg. 10619 (Mar. 12, 2018) ("Federal Register Notice").

[7] Although the parties spill considerable ink on whether the Federal Register notice should be given deference, the Court need not address it. As set forth below, the Court is persuaded by the reasoning in *Nelson,* which analyzed the plain language of Section 1098g (and notably chose not to rely on the Federal Register notice) to conclude that certain day-to-day communications are regulated by HEA, and thus, preempted. Moreover, the Court agrees with the analysis in *Nelson* regarding its decision to give little weight to the notice. *Nelson,* 928 F.3 at 651, n.2.

its Motion to Dismiss. 2017 U.S. Dist. LEXIS 208331 (S.D. Ill. 2017), *rev'd*, 928 F.3d 639 (7th Cir. 2019).[8]

Navient further argues the Court erred in concluding the State's servicing claim was not preempted after characterizing the forbearance-steering and recertification aspects of the claim as something other than failures to disclose. Specifically, the Court characterized the State's claims as a scheme by Navient "to steer borrowers into forbearances, not just that Navient failed to disclose the availability of IDR plans." Order, p.12. Regardless of the reference to a scheme, Navient argues that the State's claims target its alleged non-disclosure of information regarding forbearance and recertification to borrowers and seeks to hold it liable for failing to disclose the information as evidenced by the use of the phrase "failed to disclose" (or its variants) throughout the servicing claim.[9] MTR, p.7.

### B. State's Argument

The State responds that the Court properly relied on the language of *Genna* in interpreting the scope of Section 1098g to preclude the servicer's day-to-day counseling of borrowers. Response, pp. 10–11. Further, the State contends that the Court properly afforded no deference to the Federal Register notice, because the Notice was not subject to a notice and comment period, and therefore did not have the force and effect of the law; the position expressed was new and inconsistent with prior positions; and it is poorly reasoned. Response, pp. 5–6.

Finally, the State maintains that the Court did not merely label the allegations within the servicing claims as affirmative fraudulent misrepresentations as opposed to failures to disclose, but appropriately concluded after over ten pages of analysis that the State alleged a scheme to steer borrowers into forbearances, making HEA preemption inapplicable. Response, pp. 12–13.

---

[8] At the time of the Motion to Reconsider, *Nelson* stood as a District Court decision. But, following the briefing and oral argument on Navient's Motion, the Seventh Circuit reversed. *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639 (7th Cir. 2019). As such, the Court will disregard Navient's arguments raised in its Motion proper. When the *Nelson* reversal occurred, the State submitted the Seventh Circuit's opinion as supplemental authority. Navient submitted a brief argument to the Court in its Response to that Motion to Supplement, which the Court addresses herein.

[9] In a footnote in its Motion to Reconsider, Navient takes issue with the Court's conclusion in its Order that Navient waived any argument concerning conflict preemption in its Motion to Dismiss. MTR, p.10, n.4. In finding waiver, the Court noted Navient conceded in its Reply brief in support of its Motion to Dismiss that it was only asserting that the HEA expressly preempted the State's claims. Order, p.13, n.8. There is no question that the issue was waived. Even though waived, however, Navient contends the Court would still be entitled to consider such arguments on reconsideration, in the "interest of preserving a sound and uniform body of precedent." MTR, p.10, n.4. The Court declines Navient's invitation to reconsider whether conflict preemption bars the State's servicing claim. Even if the Court was inclined to address a waived issue, raising such a complex argument in a footnote with absolutely no analysis is not sufficient to apprise the Court (or the State) of Navient's argument that conflict preemption applies here.

### C. Reconsideration

The Court reconsiders its reliance on the language in *Genna*, and concludes that the scope of preemption set forth in Section 1098g is broader than previously held. Specifically, recent jurisprudence persuades the Court that the "disclosure requirements" referenced within the HEA include day-to-day counseling communications between servicer and borrowers in financial distress pursuant to Section 1083. *See* 20 U.S.C. §1083(e)(2).

While the Court reiterates that the main thrust of the State's servicing claim is the scheme by Navient "to steer borrowers into forbearances," on reconsideration, the Court concludes that there are certain phrases and allegations in particular that seek to hold Navient liable for its failure to disclose information during communications with borrowers, which are preempted. However, the majority of the servicing claim allegations address affirmative misrepresentations made by Navient concerning the alleged forbearance scheme and the alleged deceptive and unfair recertification communications, which are not preempted.

As the parties have pointed out, there is a moderate-sized body of case law that has developed with respect to the very issues present here, some cases published after the underlying Order was issued and even after the Motion to Reconsider was fully briefed and argued.[10] The parties have supplemented their briefs by providing the Court with copies of the pertinent orders and their limited advocacy concerning these orders. *See* note 2 *supra*. This makes for a unique Motion to Reconsider, in that the Court must analyze the arguments that it erred in its application of existing law as set forth in the written Motion to Reconsider and briefs, and must also consider new caselaw that developed between the hearing on the Motion and the writing of this Opinion without full briefing.[11]

### 1. Scope of Section 1098g

Navient contends the Court erred in narrowing the scope of Section 1098g's preemption by excluding day-to-day communications between the servicer and the borrowers, reiterating its belief that the preemption applies to *any* disclosure requirements period. MTR, pp. 6–7. Certainly, it argues, allegations of Navient's alleged failure to inform borrowers in financial distress of the option of income-driven repayment plan are encompassed in its scope. *Id.*

The HEA sets forth an express preemption provision for "disclosures." Specifically, Section 1098g provides—in its entirety—that "Loans made, insured, or

---

[10] The Court issued its Order on Navient's Motion to Dismiss on July 10, 2018. The Motion to Reconsider was fully briefed on October 3, 2018, and hearing was held January 9, 2019. The opinions this Court finds most persuasive—*Nelson v. Great Lakes Educ. Loan Servs*, 928 F.3d 639 (7th Cir. 2019), *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020), and *Commonwealth of Pennsylvania v. Navient Corp.*, 967 F.3d 273, 290 (3rd Cir. 2020) ("*Penn*")—were issued June 27, 2019, April 10, 2020 and July 27, 2020 respectively.

[11] While the parties did not have an opportunity to fully brief the application of the subsequently issued cases to the instant case, the Court is disinclined to invite sur-briefing into an already protracted process. The parties briefly set forth their positions while moving to supplement the record. To the extent its appropriate, the Court analyzes and applies the new cases and sets forth its reasoning.

guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 shall not be subject to any disclosure requirements of any State law." 20 U.S.C. §1098g. Many courts have grappled with the meaning of "disclosure requirements," a term which is not defined within the HEA. The Court finds the analysis set forth in the Seventh Circuit's opinion in *Nelson* particularly persuasive. *Nelson v. Great Lakes Educ. Loan Servs., Inc.,* 928 F.3d 639 (7th Cir. 2019). *See also Lawson-Ross,* 955 F.3d 908 (11th Cir. 2020) (citing *Nelson* with approval); *Penn,* 967 F.3d 273, 290 (3rd Cir. 2020) (same).

Contrary to Navient's advocacy, the *Nelson* court found that Congress did not intend to impose broad preemption on *any* state laws that apply to student loan servicing, given the explicit disclosure requirements on lenders and loan servicers set forth in Section 1083.[12] *Id.* at 647–48. Moreover, the court was also guided by the existence of several "fairly specific" preemption provisions in the HEA, in addition to Section 1098g, which show that Congress considered the issue of preemption and decided to preempt on particular topics instead of broad preemption of any state laws.[13]

Despite this conclusion, the court rejected Nelson's argument that sought to narrow the scope of Section 1098g further; specifically that the term "disclosure requirements" in Section 1098g pertains solely to "standardized, prescribed provision of the terms and conditions and facts of a student lending transaction, and not to counseling borrowers in financial difficulty." *Id.* at 648.

The *Nelson* court pointed to Section 1083(e)(2) of the HEA. It provides:

> Information provided to a borrower having difficulty making payments. Each eligible lender shall provide to a borrower who has notified the lender that the borrower is having difficulty making payments on a loan made, insured, or guaranteed under this part with the following information in simple and understandable terms:
>
> (A) A description of the repayment plans available to the borrower, including how the borrower should request a change in repayment plan.
>
> (B) A description of the requirements for obtaining forbearance on a loan, including expected costs associated with forbearance.
>
> (C) A description of the options available to the borrower to avoid defaulting on the loan, and any relevant fees or costs associated with such options.

---

[12] Section 1083 sets forth required disclosures by eligible lenders to borrowers (a) before disbursement of loans, (b) before repayment of loans, and (e) during repayment of loans. 20 U.S.C. §1083.

[13] 20 U.S.C. §1078(d) (usury laws), §1091a(a)(2) (statutes of limitations), §1092a(a–b) (collection costs and infancy defenses), and §1095a(a) (garnishment requirements). *Nelson,* 928 F.3d at 648.

20 U.S.C. §1083(e)(2). Given these required disclosures, the *Nelson* court concluded that the phrase "disclosure requirements" in Section 1098g encompasses "information that must be given to borrowers who are struggling to repay their loans," which is often given over the phone on a day-to-day basis when a borrower calls up the servicer. *Id.* at 648. *See also Lawson-Ross v. Great Lakes Higher Educ. Corp.,* 955 F.3d 908, 917 (11th Cir. 2020) ("the term 'disclosure requirements' [in §1098g] refers to the [Education Act]'s requirements that certain information be communicated to borrowers during the various stages of a loan, as laid out in §1083 of the statute. Thus, the domain §1098g preempts is the type of disclosures to borrowers that §1083 requires"); *Penn v. Navient Corp.,* 967 F.3d 273, 288–89 (3d Cir. 2020) (agreeing with *Lawson-Ross'* analysis of the scope of the Education Act's express preemption provision, Section 1098g).

While the *Nelson* court did not reference *Genna* in its discussion of the scope of Section 1098g, its analysis rejects *Genna's* conclusion, which was previously adopted by this Court:

> In contrast [to the facts in Chae], statements at issue here were neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law. There is nothing in the HEA that standardizes or coordinates how customer service representative of a third-party loan servicer like Sallie Mae shall interact with a customer like Genna in the day-to-day servicing of his loan outside of the circumstances of pre-litigation informal collection activity.[14]

*Genna,* 2012 U.S. Dist. LEXIS 54044, at \*\*23–24. *See also* Order, p.16 (adopting same).

On reconsideration, the Court is persuaded by the scope analysis in *Nelson* and a direct review of Section 1083(e)(A-C) of the HEA in particular. The Court concludes

---

[14] This language cited by the Court from *Genna* involved an attempt by the *Genna* court to distinguish the case from *Chae v. SLM Corp,* 593 F.3 936 (9th Cir. 2010). Specifically, *Genna* noted that in *Chae,* the plaintiffs challenged written statements that were explicitly regulated and sanctioned by Federal Law. The focus of the allegations in *Genna* were that Sallie Mae had made affirmative misrepresentations through email and phone conversations that plaintiff's auto-debits would continue without interruption once Sallie Mae took over servicing, that his re-enrollment with auto-pay was pending, and that Sallie Mae would grant plaintiff a forbearance and enroll him in the auto-debit program. *Id.* at 2-4. The *Genna* court ultimately found that these claims were not expressly preempted because it determined the day-to-day communications between the Sallie Mae representative and the borrower were not considered "required disclosures" as set forth in 1098g. 2012 U.S. Dist. LEXIS 54044, \*\*23–24. Of course, more recent jurisprudence followed by this Court concludes that day-to-day communications required by Section 1083 are indeed considered "required disclosures." Notably, pursuant to *Nelson* and related cases, the *Genna* court could have appropriately concluded that the claims were based on affirmative misrepresentations that the servicer was not required to make during a counseling session (i.e., telling Genna that he would be placed into forbearance but failing to do so) and not failures to disclose, requiring preemption.

that claims based on the servicer's day-to-day communications with borrowers in financial difficulty constitute "required disclosures" pursuant to Section 1098g, and are therefore preempted.

### 2. Failure to Disclose and Affirmative Misrepresentations

Having set forth the scope of Section 1098g, the Court now turns to the nature of the State's claims to determine whether they are based on failures to disclose, as Navient contends, or affirmative misrepresentations, as the State contends. The Court reiterates that the main thrust of the State's servicing claim is the scheme by Navient "to steer borrowers into forbearances," which sets forth an affirmative misrepresentation claim. On reconsideration, however, the Court concludes that there are certain phrases and allegations in particular within the servicing claim that seek to hold Navient liable for its failure to disclose information to borrowers as required by Section 1083(e), which are preempted.

Based upon the Court's review of *Nelson*, *Penn*, and *Lawson-Ross*, which are persuasive, it is clear that the jurisprudence on preemption recognizes a distinction between claims alleging the failure to disclose and those alleging affirmative misrepresentations which are made voluntarily, the former of which is preempted and the latter of which is not. In brief summation, these cases hold that when the claim alleges a servicer failed to make a required disclosure, or that the servicer should have made additional related disclosures beyond those required, the claims are preempted. When the claim alleges the servicer made statements it was not required to make, and those statements were misrepresentations or simply false, those claims are not preempted.

#### i. *Nelson v. Great Lakes*

In *Nelson*, the borrower's claims were substantially similar to those present here; in addition to alleging the servicer steered her into forbearance, Nelson alleged the servicer failed to disclose other options besides forbearance, such as IDR plans. 928 F.3d at 644–46. The district court dismissed Nelson's claims in their entirety, concluding that they were expressly preempted under Section 1098g because they alleged in substance that the servicer failed to disclose certain information. *Id.* at 642. The Seventh Circuit remanded the case, finding the district court's ruling overly broad. *Id.*

Specifically, the *Nelson* court concluded that Section 1098g does not expressly preempt state consumer protection laws to the extent they target affirmative misrepresentations like the ones alleged by Nelson, which did not touch on existing disclosure requirements or impose additional disclosure requirements, but instead, "alleged the servicer said something false that it was not required to say." *Id.* at 649–50. Indeed, Nelson alleged that the servicer made statements on its website that its expert representatives would work for Nelson's benefit, but instead, they steered her into a forbearance plan that was detrimental to her financially. *Id.* at 644–46. She complained about deceptive statements that the servicer chose to make voluntarily, not because federal law required it. *Id.* at 649. In distinguishing the affirmative

misrepresentation claims from preempted "failure to disclose" claims, the *Nelson* court reasoned that if the claim is that the servicer said something false to borrowers that it was not required to say in the first place, "the claim does not necessarily imply a disclosure requirement" and would not be preempted. *Id.*

Furthermore, as noted above, the *Nelson* court concluded that a "required disclosure" within Section 1098g encompassed the disclosures required by Section 1083(e)(2), and therefore, it rejected Nelson's argument that sought to limit preempted disclosures to standardized disclosures on loan origination and billing forms. *Id.* at 648. In so doing, the court concluded that claims involving day-to-day communications with borrowers to discuss their options as set forth within Section 1083(e)(2) were properly preempted. *Id.*

Ultimately, the court remanded the case to allow the district court to evaluate the claims further to confirm that the claims of misrepresentations did "not become a vehicle for state law to impose new disclosure requirements." *Id.* at 650.

### ii. *Pennsylvania v. Navient*

In *Penn,* the state's core allegations were similar to those in *Nelson* and the instant case: the servicer (there, Navient) improperly steered consumers into costly forbearances and made misrepresentations to consumers regarding the recertification of their IDR plans. 967 F.3d 273, 290 (3rd Cir. 2020). Specifically, the plaintiff alleged that Navient represented that it would help her make the right decision to minimize her interest cost, but instead, misrepresented that her only option for loan assistance was forbearance (despite the fact that she qualified for an IDR plan),[15] *id.* at 280–81, misrepresented that it would provide a date certain to submit a renewal application for IDR plans, *id.* at 281–82, and misrepresented the consequences of failing to timely renew their IDR plans, *id.*[16]

The *Penn* court noted "[t]he Commonwealth cannot fault Navient for failing to provide consumers with more information about IDR plans or recertification, but it can fault Navient for providing misinformation." *Id.* at 291. The Third Circuit concluded "to the extent these allegations hold Navient accountable for its affirmative misconduct, they are not preempted." *Id.* As with *Nelson,* the *Penn* court remanded the case for the lower court to conduct a closer assessment as to which claims were based on affirmative misrepresentations and which were possibly based on the failure to disclose. *Id.* at 292.

---

[15] Notably, unlike *Nelson* and the instant case, the plaintiff in *Penn* did not allege that the servicer failed to disclose options besides forbearance, such as IDR Plans when pushing her toward forbearance. Instead, the allegations focused on the servicer's misrepresentation that forbearance was the only option "despite the fact that [the consumer] qualified for an IDR plan." 967 F.3d at 290.

[16] Navient's website provided "[o]ur representatives can help you by identifying options and solutions, so you can make the right decision for your situation" and "[w]e can help you find an option that fits your budget, simplifies payment, and minimizes your total interest cost." *Penn v. Navient Corp.,* 354 F. Supp. 3d 529, 537 (M.D. Pa. 2018).

### iii. *Lawson-Ross v. Great Lakes*

In reversing the District Court, the 11th Circuit in *Lawson-Ross* did not remand the case for further analysis as to whether the claims constituted affirmative misrepresentations or failures to disclose. 955 F.3d 908, 919 (11th Cir. 2020). This was because the claims there, although based upon communications during the repayment stage of the borrowers' loans, clearly did not trigger the disclosure requirements of Section 1083. The borrowers claimed the servicer made affirmative misrepresentations to them when they inquired whether they met the requirements for the Public Service Loan Forgiveness ("PSLF") Program for those employed in public service jobs. *Id.* at 917.

Specifically, Great Lakes told plaintiff she was "on track to benefit [from] PSLF, that her loans qualified under that program, and that she would not need to complete any additional forms until her 10 years of public service was completed." *Id.* at 913. Almost ten years later, the servicer advised plaintiff that she was ineligible for the PSLF Program, that most of her loans were ineligible, and therefore that none of her payments made during those ten years counted toward the Program. *Id.*

The court concluded the servicer's misrepresentations as to whether an individual borrower was on track to qualify for the PSLF Program were distinct from the requirements set forth in Section 1083, which requires the servicer to provide a description of repayment plans or options to prevent default. *Id.* at 917. Plaintiff was not seeking an alternative plan due to financial difficulty or fear of default. *Id.* The *Lawson-Ross* complaint contained no allegations that the servicer failed to provide borrowers with any information that it had an obligation to disclose under Section 1083. *Id.* at 918. "Rather, the borrowers alleged that when [the servicer] chose to provide them with information it was not required to disclose . . . it gave false information." *Id.* The court concluded that the borrowers did not allege the servicer had a duty to disclose anything about the PSLF program, and therefore, Section 1098g of the HEA did not expressly preempt the borrower's claims. *Id.* at 919–20.

Together, all three of *Nelson, Penn,* and *Lawson-Ross* evidence a clear distinction between affirmative misrepresentations and failures to disclose, providing a framework to analyze the allegations in the instant case. Before beginning, the Court discusses *Chae v. Sallie Mae* and a footnote in *Penn* which will further guide its analysis.

### iv. *Chae v. Sallie Mae*

Courts have recognized that in some circumstances, a claim styled as an "affirmative misrepresentation" is, upon further inspection, a claim for failure to disclose. *Chae* is cited often for this premise, and the Court discusses it in some detail here. *Chae v. SLM Corp,* 593 F.3d 936 (9th Cir. 2010). *See, e.g., Linsley v. FMS Inv. Corp.,* 2013 U.S. Dist. LEXIS 53735, at **10–12 (D. Conn. 2012) (citing *Chae*); *Daniel v. Navient Sols., LLC,* 328 F. Supp. 3d 1319, 1324 (M.D. Fla. 2018) (same).

In *Chae,* plaintiffs brought claims under California's consumer protection statute and accused Sallie Mae of both "misrepresent[ation]" and "improper . . .

disclosure" of information to borrowers about federal student loans. *Chae*, 593 F.3d at 942–43. Specifically, plaintiffs claimed in part that Sallie Mae employed unfair and fraudulent business practices by using billing statements and coupon books—subject to statutory and regulatory requirements—that trick borrowers into thinking that interest is being calculated via the installment method, when Sallie Mae really used a simple daily calculation. *Id.* at 942. While the plaintiffs sought to prevent Sallie Mae from misleading borrowers through written documents, the court "consider[ed] these allegations in substance to be a challenge to the allegedly misleading method Sallie Mae used to communicate with the plaintiffs about its practices." *Id.* at 942–43. The court concluded that the documents complied with federal regulations governing such instruments. The claims were subject to express preemption under 1098g, because "[a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims." *Id.* at 942.

In distinguishing *Chae* from the facts before it, *Nelson* noted that Chae alleged the servicer failed to disclose key information in specific ways so that it was understandable to borrowers, such as loan terms and repayment requirements. *Id.* at 649–50. In *Chae,* the servicer was *required* to disclose that information by federal law and the Ninth Circuit concluded that the servicer had disclosed it in ways permitted by federal law. *Id.* Therefore, the court found that the plaintiffs in *Chae* were implicitly seeking to impose additional disclosure requirements under state law. *Id.*

Nelson's affirmative misrepresentation claims, on the other hand, were based upon her servicer's voluntary statements about finding the best options for borrowers, when in reality, it was going to enroll them in forbearance despite the fact they would qualify for more financially beneficial options. With this claim, Nelson did not argue that the servicer failed to make a required disclosure or should have made additional disclosures in order to make the required disclosure more understandable. The servicer in *Nelson* "could have avoided liability under state law by remaining silent (or telling the truth) on certain topics." *Id.* at 650. By affirmatively misrepresenting, the *Nelson* servicer opened itself to liability. *See Lawson-Ross*, 955 F.3d at 919 (district court's reliance on *Chae* to conclude borrowers' affirmative misrepresentation claims were simply restyled failure to disclose claims held improper; claims did not allege servicer disclosed information in a misleading manner which it was required to disclose).

### v. *Penn* and "Material Omissions"

In a footnote, the *Penn* court noted the distinction set forth in *Nelson* and *Lawson-Ross* between claims alleging failures to disclose and those alleging affirmative misrepresentations, but pondered where a material omission fits into the picture. *Penn*, 967 F.3d at 292, n.12. Specifically, if a servicer told a borrower that her "best option for resolving loan repayment issues was forbearance but failed to mention a more appropriate IDR plan, is the failure to mention the IDR plan a material omission or an affirmative misrepresentation?" *Id.* The *Penn* court declined to rule on the issue. *Id.*

Given the allegations in the case at hand, however, it is necessary for the Court to address this query today. After review of the relevant cases, this Court concludes the factual scenario identified by *Penn* would constitute an affirmative misrepresentation. Telling a borrower forbearance is the *best* option available to him or her—when it is not—is an affirmative misrepresentation. The fact that the servicer fails to tell the borrower that another option is also available in furtherance of its attempt to steer the borrower toward forbearance does not change the claim itself into one based upon a material omission or failure to disclose—*unless* the plaintiff seeks to hold the servicer liable for that failure. *See Nelson*, 928 F.3d at 650 ("plaintiff may proceed on her claims based on affirmative misrepresentations, as distinct from those that require proof that defendant failed to disclose information.").

Certainly a servicer is required to disclose alternatives to forbearance pursuant to Section 1083, and its failure to do so would constitute a preempted claim. See *Nelson, supra.* But if the thrust of the claim is telling borrowers that forbearance is the "best option" when it is not, it is not preempted. Therefore, even if the servicer disclosed all options to borrowers, including IDR plans, but told them forbearance was the *best* option for the borrowers' circumstances as a matter of course, and that statement was false, an affirmative misrepresentation claim survives.

The question then becomes what has the State alleged and how those allegations fit into the above framework? The *Nelson* and *Penn* courts remanded for an allegation-by-allegation examination. The Court therefore undertakes that analysis here.

## V. Analysis of Servicing Claim Allegations

In conjunction with its reconsideration, and as a result of this recent jurisprudence, the Court will conduct an allegation-by-allegation assessment of the State's servicing claim to determine whether the claim, or parts thereof, are preempted and should be stricken.

### A. Forbearance Scheme

One focus of the State's servicing claim is Navient's alleged scheme to steer borrowers into forbearance. Within these allegations, the State has set forth both affirmative misrepresentations by Navient to steer borrowers into forbearance, as well as material omissions for its failure to disclose alternatives to forbearance—including IDR plans.

### 1. Failure to Disclose

The Court looks to the individual allegations as well as the claim as a whole to evaluate whether it seeks to hold Navient liable for its failure to disclose. The following allegations include references to Navient's failure to discuss options besides forbearance with borrowers seeking assistance ("disclosure phrases"):[17]

---

[17] The "disclosure phrases" are italicized by the Court for identification.

- "Until at least the fall of 2014, Navient's compensation policies for its customer service representatives have incentivized them to push numerous borrowers into forbearance *without adequately offering income-driven repayment plans to those borrowers*, and in some cases, *without even mentioning income-driven repayment plans at all.*" Complaint, ¶313 (emphasis added).

- "A review of a sample of 200 calls revealed that despite Navient's assurances to borrowers that it would offer assistance regarding repayment options, when on the phone with borrowers it offered deferments or forbearances *without mentioning any other options* over 50% of the time." FAC, ¶340 (emphasis added).

- "Navient representatives sometimes initially responded to borrowers' inability to make a payment by placing them in voluntary forbearance *without adequately advising them about available income-driven repayment plans . . . .*" FAC, ¶345 (emphasis added).

- "By enrolling them in multiple consecutive forbearances, and *failing to inform those borrowers about income-driven repayment plans* at the time of live contact, Navient placed borrowers in serial forbearance, which imposed a staggering financial cost on this group of borrowers . . . ." FAC, ¶354 (emphasis added).

- "Had Navient *talked to those borrowers about getting on an affordable payment plan,* as it promised to do on its website, those borrowers would not have incurred those costs."[18] FAC, ¶355 (emphasis added)

- "After several years of making payments, the consumer lost her job. At that time, she contacted Navient, and was told by different representatives that she would be placed into a "deferment" or a "forbearance" but in either instance the "government would pay" her interest until she got back on her feet. *Navient did not inform her of [sic] or counsel her on income-driven repayment options.* Navient notified the consumer that after a year, she would need to resume payments." FAC, ¶ 358 (emphasis added).

---

[18] Reading ¶355 in context with ¶354, it alleges the failure to discuss other options besides forbearance which is preempted. The Court notes that this allegation, or some form of it, would not necessarily be out of place if alleged as part of the affirmative misrepresentation claim identified in Part V.A.2 *infra*. In the latter claim, the State is not seeking to hold Navient liable for its failure to disclose other options. Instead, the State argues Navient is liable for stating that it would help borrowers find the best option, but that it did not do so in recommending forbearance.

The alleged failure by Navient to disclose other options such as IDR plans could be construed as an act in furtherance of the forbearance scheme, and therefore, not a separate allegation the State wishes to hold Navient accountable for. For instance, omitting all other options from the discussion except forbearance would make a borrower more likely to accept forbearance. The scheme is thus accomplished.

However, the disclosure phrases in the State's servicing claim do separately allege Navient failed to disclose information to borrowers. First, the disclosure phrases fall squarely within the disclosure requirements set forth in Section 1083(e)(2), in which servicers are required to provide struggling borrowers with a description of the repayment plans available to them. The crux of the disclosure phrases is that Navient failed to inform borrowers about other options besides forbearance to avoid defaulting on the loan, including IDR Plans.

Second, the intent of these disclosure phrases is made clear in Paragraph 530(b) of the First Amended Complaint, which sets forth Navient's alleged "Violations" that constitute its liability under the ICFA:

> 530. While engaged in trade or commerce ... the Servicing Defendants committed the following unfair and/or deceptive acts or practices, with intent that consumers rely on such acts or practices declared unlawful under Section 2 of the Consumer Fraud Act, 815 ILCS 505/2:
>
> . . .
>
> b. In many instances, failing to disclose to borrowers struggling to make their payments who call Servicing Defendants that the federal government offers income-driven repayment plans to help borrowers avoid default;

Paragraph 530(b) explicitly seeks to hold Navient liable for "failing to disclose" options besides forbearance. This failure to disclose allegation is not couched within the forbearance scheme allegations, but instead, stands alone at the end of the pleading to sum up the claim brought against Navient. To rebut the State's allegations identified above, Navient would have to produce evidence to show that it, in fact, discussed income driven repayment plans with borrowers in addition to forbearance. Thus, the disclosure phrases and ¶530(b) are preempted.

The State may wish to excise the preempted disclosure phrases and salvage the remaining portions of the allegations, as some would appear to survive as part of the forbearance scheme claim. *See* Part V.A.2 *infra*. Leave will be granted to do so. Paragraph 530(b), however, is premised entirely on the failure to disclose, and is therefore stricken in its entirety.

### 2. Affirmative Misrepresentations

Even when the disclosure phrases and ¶530(b) are stricken, an affirmative misrepresentation servicing claim based upon steering borrowers into forbearance survives. Specifically, the State alleges that Navient schemed to steer borrowers into

forbearance plans by telling them it could "help them make the right decision for their situation"[19] and then represented forbearance was the best option for the borrowers when it was not.[20] The misrepresentations were that Navient would help them make the right decision (when it was going to push forbearance no matter what) and that forbearance was the best option, including serial forbearances (when maybe an IDR plan would have better suited the borrower's financial situation). Analyzing the individual allegations as well as the claim as a whole reveals proper affirmative misrepresentation claims.

Navient argues the State's claims are distinct from those affirmative misrepresentation claims brought by the plaintiff in *Nelson* which that court concluded would not be preempted. Specifically, Navient argues the servicer in *Nelson* "made specific, affirmative promises to the plaintiff," but that the State here has not. Response to Motion for Leave, p.2.[21] Navient contends that the State makes no allegation that any borrower relied on similar specific, voluntary misrepresentations. *Id.* p.3.

On the contrary, the alleged misrepresentations set forth in the State's pleading are substantially similar to those set forth by the plaintiff in *Nelson*. In *Nelson*, the servicer represented that its trained experts would "work on [her] behalf" and "understand all of [her] options." *Nelson*, 928 F.3d at 641–42. Nelson claimed that despite these representations, the servicer did not "work on her behalf" in steering her toward forbearance to her detriment. The court concluded her allegations that "defendant said something false that it was not required to say in the first place . . . [did] not necessarily imply a disclosure requirement." *Id.* at 649.

---

[19] "Navient represented to borrowers that they should call Navient, and Navient would help them make the right decision for their situation." FAC, ¶284. *See also* ¶¶306, 307.

[20] "Despite assuring borrowers that it would help them find the right repayment option for their circumstances, Navient routinely steered borrowers experiencing long-term financial hardship, including Illinois Borrowers, into costly payment relief designed for borrowers experiencing short-term financial problems, before or instead of affordable long term repayment options that were more beneficial to them in light of their financial situation." FAC, ¶287.

"Nevertheless, from at least January 2010 through the present, despite publicly inviting borrowers to call Navient and talk to representatives for assistance identifying an appropriate, affordable repayment plan, and despite Navient's internal training guidelines, Navient has routinely steered borrowers experiencing long-term distress or hardship into forbearance." FAC, ¶312.

"As a result of the incentives imposed by Navient's compensation policies, Navient has routinely failed to invest the time and effort necessary to talk to financially distressed borrowers and help them identify affordable repayment plans most appropriate or their financial situation at the time the borrower is on the phone with Navient." FAC, ¶332.

"Despite Navient's statements to borrowers to contact them so they can "identify options and solutions" and "help you make the right decision for your situation", it did no such thing for borrowers." FAC, ¶342.

[21] Specifically, this is the Response, filed July 3, 2019, to the Motion for Leave to Cite Supplemental Authority, filed July 1, 2019. That was the parties' first exchange discussing the then-recent *Nelson* case, *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639 (7th Cir. 2019).

The misrepresentations were made by the servicer when it could just have remained silent or told the truth. *Id.* at 649–50; *accord Penn,* 967 F.3d at 291 (affirmative statements on servicer's website offering borrowers help in finding options to minimize their total interest costs were not preempted by Section 1098g, because there is no provision of law that required it to make false statements to borrowers).

As set forth in the Court's prior Order, the State sets forth in its pleading that Navient's website made the following affirmative representations to borrowers in distress before allegedly steering them into forbearance plans:

- "We can work with you to help you get back on track . . . let us help you make the right decision for your situation." FAC, ¶306(a).

- "[P]lease contact us. Our representatives can help you by identifying options and solutions . . ." FAC, ¶306(b).

- "[W]hen we can talk to a struggling federal loan customer we can help him or her get on an affordable payment plan and avoid default."[22] FAC, ¶306(c).

Order, pp. 13–17. The State concludes: "Despite Navient's statements to borrowers to contact them so they can 'identify options and solutions' and 'help you make the right decision for your situation,' it did no such thing for borrowers." FAC, ¶342.

While the representations by Navient on its website do not mention the word "expertise" as in *Nelson,* the servicers in both cases held their representatives out as being able to help borrowers in financial distress to identify options and to make the right decision for their situation, giving borrowers a false impression of authority or expertise. And both servicers are alleged to have steered borrowers into forbearance as the best option, when in fact it was not the best option available to them.

Like the servicers in *Nelson* and *Penn,* Navient was not required to make these representations on its website, but it chose to do so. *Nelson,* 928 F.3d at 648 (plaintiff complained of false and misleading statements to help her find the best option that Great Lakes made voluntarily, not required by federal law); *Penn,* 967 F.3d at 291 (Navient did not cite to any provision of the law that required it to misrepresent to borrowers it will help them "make the right decision for [their] situation;" voluntary statements were similar to those the *Nelson* court concluded were not preempted). Therefore, there is no concern that the State's forbearance steering claims are merely relabeled disclosure claims, as was feared in *Chae.*

---

[22] The State also alleges that Navient's "website previously stated that it was 'committed to giving you the information and tools you need to understand and evaluate your student loan payment options. We can help you find an option that fits your budget, simplifies payment, and minimizes your total interest cost.'" FAC, ¶307.

Moreover, imposing liability for these voluntary but allegedly deceptive statements does not impose additional "disclosure requirements" on Navient. *See Nelson*, 648–49. With these particular allegations, the State is not alleging Navient should have disclosed something more, but instead, that its representations to borrowers that it would help them find the best option to avoid default were false. The nature of the State's claim is that had Navient's representatives actually evaluated the borrowers' needs, they would have actually found the best option to help them. Instead, they steered borrowers directly to forbearance. The ultimate conclusion that maybe IDR plans were the "right decision" for borrowers instead of forbearance does not mutate this claim into one that is preempted. Moreover, during the course of litigation, the parties may dispute whether an IDR plan was a better option for borrowers than forbearance, but this anticipated discovery does not trigger preemption unless the State seeks to hold Navient liable for this specific failure to disclose.

### B. Recertification Claim

Navient argues that the State's recertification claim is preempted because it seeks to impose disclosure requirements within the plain meaning of Section 1098g. Navient identifies the following allegations to establish the character of the recertification claim as one involving the "failure to disclose:"

- "*[f]ailing to disclose* a date certain" for IDR recertification. FAC, ¶530(e) (emphasis added).[23]

- "*did not inform* borrowers" of the IDR recertification deadline. FAC, ¶368 (emphasis added).[24]

- "*failing to adequately notify*" borrowers regarding IDR renewals. FAC, ¶530(h) (emphasis added).[25]

MTR, p.7. As with the forbearance scheme claim, the Court looks at the individual allegations as well as the claim as a whole to determine whether the State's recertification servicer claim is based upon the "failure to disclose" or on affirmative misrepresentations per *Nelson* and *Penn*. In doing so, the Court will provide the context surrounding the identified phrases, context which is missing from Navient's argument.

---

[23] Navient cites to ¶469(e) from the Complaint; the same allegation is included in the FAC at ¶530(e). Because it is the operative pleading, the Court cites to the FAC instead. *See* Part I *supra*.
[24] Navient cites to ¶307 from the Complaint; the same or similar allegation is included in the FAC at ¶368.
[25] Navient cites to ¶469(h) from the Complaint; the same allegation is included in the FAC at ¶530(h).

### 1. Date Certain to Recertify IDR Plans

The State alleges that since 2010, Navient has been required to send at least one written notice setting forth the requirements to renew enrollment in an IDR plan in advance of the deadline. FAC, ¶366. At the time of enrollment in an IDR plan, Navient sent a notice with the following information to borrowers:

- You'll be notified in advance when your loan(s) is up for renewal for the [income driven repayment] plan. At that time, you'll be provided with a date to submit a new application. FAC, ¶367.

The next paragraphs of the First Amended Complaint further allege:

- However, between at least January 1, 2010 and December 2012, Navient's annual renewal notices for IDR plans sent through the U.S. mail did not inform borrowers of the actual date by which they had to submit the renewal application, including documentation of income, to avoid expiration of the twelve-month period. FAC, ¶368.

- Instead, Navient's notices between at least January 1, 2010 and December 2012 stated vaguely that the borrower's income-driven repayment period would "expire in approximately 90 days." FAC, ¶369.

- By stating that the plan would expire in "approximately 90 days," Navient provided no date certain by which borrowers needed to submit their required paperwork for renewal in order to avoid the negative consequences that would ensue. FAC, ¶370.

Notably, neither party has alleged or argued that the HEA or any other authority regulates the specific information that must be provided to borrowers in the required notice regarding IDR recertification, including whether the notice must contain a date certain for the renewal application. As plead, this voluntary statement promising future action, which was not fulfilled, constitutes an affirmative misrepresentation. Navient did not need to provide a date certain to borrowers, but once it said it was going to do so, it was required to follow through. Instead of simply remaining silent, Navient provided false and misleading information.[26] *Lawson-Ross*, 955 F.3d at 918 (servicer had no duty to speak about loan forgiveness; offering false information set forth an affirmative misrepresentation claim). This claim is not preempted.

---

[26] To the extent servicers are statutorily obligated to provide a date certain to borrowers, then Navient may raise the issue in a motion for partial summary judgment with respect to this portion of the servicing claim.

### 2. Consequences of Delay in Recertification of IDR Plans

The State further alleges that the notices Navient sent to borrowers misrepresented the consequences of submitting incorrect or incomplete information in the recertification application. FAC, ¶371. Specifically, the State contends:

- The notices simply warned borrowers that "by providing incorrect or incomplete information the [renewal] process will be delayed." Thus, Navient falsely implied that the only consequence a borrower would face in providing incorrect or incomplete information was a delay in the renewal process, when in fact, the borrower would face many more serious consequences, such as an increased payment amount. FAC, ¶372.

The "Violation" alleged by the State related to this subsection of the recertification claim also focuses on the misrepresentation and not the failure to disclose:

- Representing, expressly or by implication, that the only consequence a borrower will face in failing to submit a timely income driven repayment plan recertification is a delay in processing, when in fact the borrower will likely face the following consequences:
(1) the borrowers' monthly payment amount will immediately increase from the income-driven payment to one that is substantially higher;
(2) A capitalization even of any unpaid interest that has accrued;
(3) The Loss of an applicable interest subsidy provided by the federal government for the first three years of enrollment in an income-driven repayment plan for each month until the borrower renews her enrollment; and
(4) Delayed progress toward loan forgiveness because the borrower is no longer making qualifying payments that count towards loan forgiveness. FAC, ¶530(g).

Again, neither party argues or alleges that servicers are required by the HEA or any other authority to notify borrowers enrolled in IDR plans of all the potential consequences of failing to properly recertify. As plead, the State's allegations set forth that Navient made a voluntary misrepresentation that it was not required to make, implying the consequences are simply delay, when indeed they are much more dire. The thrust of the claim is that Navient's voluntary statements lulled borrowers enrolled in IDR plans into thinking that there would be minor consequences for failing to properly recertify. Although it had no obligation to provide information on the consequences, when it did provide such information, it must be correct and not misleading. *Lawson-Ross*, 955 F.3d at 918 (claim based on affirmative misrepresentation when servicer chose to provide borrowers with information it was not required to disclose, and then gave false or misleading information).

The State's claim, therefore, sets forth an affirmative misrepresentation which is not preempted by §1098g.[27]

### 3. Renewal Notice Email

The State further alleges that Navient's email communications with borrowers who consented to receive electronic communications regarding the renewal of IDR plans were unfair and deceptive. It points out that the subject line and the body of the IDR recertification email sent by Navient did not identify the purpose of the email, but simply read "Your Sallie Mae Account Information," and later, "New Document Ready to View." FAC, ¶377–79. The State further alleges:

- The body of the email did not provide any greater detail. Until mid-2015, the body of the email stated only that "a new education loan document is available. Please log in to your account to view it." FAC, ¶380.

Therefore, upon receipt of the email, borrowers would have to open the email, despite the fact that the subject line provided no information as to the purpose of the email, and review the body of the email itself, which also provided no information as to the purpose. Only when a borrower clicked on an attached link and logged in would they learn that the email provided important information about recertification. FAC, ¶376.

These allegations are not focused on the failure of Navient to disclose renewal information to borrowers. Instead, the State criticizes the manner in which the renewal notice was sent—hidden within a nondescript email, requiring the borrower to open and read the email and click on another link before figuring out that it provided important information that they needed in order to timely and properly rectify.[28]

In its "Violations" section related to these allegations, the State alleges Navient committed the following unfair and/or deceptive acts or practices, with intent that consumers rely on such acts or practices:

- Unfairly failing to adequately notify borrowers who consented to receive electronic communications on the existence of the renewal notice because the email it sent to them that purportedly provided such notice included no information about the purpose or contents of the notice in the subject line or body of the email. FAC, ¶530(h).

---

[27] If servicers are statutorily required to convey the consequences of failing to correctly or completely renew borrowers' IDR plans, Navient may raise the issue of whether the State's allegations constitute a failure to disclose claim in a motion for partial summary judgment with respect to this portion of the servicing claim.

[28] This claim is distinct from *Chae* where the plaintiffs alleged the content of the communication, which was required under federal law, was misleading. *See* Part IV.C.2.iv *supra*.

Although it could be better phrased, the State is not alleging that Navient failed to provide the information; presumably the email ultimately does disclose information relevant to renewal of an IDR plan. Instead, the claim is that Navient made the process to uncover the information unreasonably difficult and unfair; thus, it was inadequate. The allegations connected with this violation set forth the deceptive and unfair presentation of the email that gives borrowers no idea the purpose of the email and requires them to investigate whether the email is important and or relevant to their loan. Given the number of emails borrowers may receive in any given day, they would not be alerted to the importance of the nondescript email sent by Navient and may miss the opportunity to timely recertify.[29] Such a claim does not fall within the ambit of a preempted failure to disclose claim.

## VI. A Note on Repleading

The bulk of the Motion to Reconsider is denied. Certain specific allegations are stricken, with leave to replead. Normally, the Court would set a date certain for the repleading, require an Answer thereafter, and proceed from there.

In this case, however, Defendant Sallie Mae has moved to dismiss the First Amended Complaint, a motion which is still pending. So, even if a Second Amended Complaint were filed, the Court (and parties) would still need to address the First Amended Complaint. If the Court granted or denied the Motion in its entirety, then this would be a moot point. But if the Court did anything else—e.g., dismissing portions of the claim without prejudice, as it has done twice before now—the parties might then be faced with a Third Amended Complaint, and any work done preparing the Second (or an Answer thereto) might be in vain.

All of which is to say that the Court's strong preference is to lockstep the parties to a single operative pleading, if possible. The Court will permit repleading of certain stricken allegations, but such repleading is stayed for the time being, pending ruling on Sallie Mae's Motion.

The Court reaffirms, however, that—with the exception of the specific allegations discussed above and indicated below—the bulk of the State's claims against Navient survive. Discovery on those claims may proceed.

\*     \*     \*

---

[29] Indeed, the State alleges that as a result of these deceptive and unfair emails, the percentage of borrowers who did not timely renew their enrollment in income-driven repayment plans during the relevant timeframe regularly exceeded 60%. FAC, ¶383. After Navient made revisions to its electronic notices to notify borrowers of the purpose and importance of the emails, the renewal rate more than doubled. FAC, ¶386.

## VII. Orders

Navient's Motion to Reconsider the Court's denial of its Motion to Dismiss is granted in part and denied in part:

- The Motion is denied as to the State's Origination Claim, which stands as pled.

- The Motion is granted in part and denied in part as to the State's Servicing Claim. The "disclosure phrases" and ¶530(b) of the forbearance steering section of the Servicing Claim are preempted.

- The Motion is denied as to the remainder of the State's Servicing Claim.

The State is given leave to file a Second Amended Complaint as to Navient. Re-pleading is stayed pending the Court's ruling on Sallie Mae's Motion to Dismiss the First Amended Complaint.

A status date on this case will be set forth in the forthcoming ruling on Sallie Mae's Motion to Dismiss. For the time being, the matter remains off-call.

ENTERED:

*Anna M. Loftus*
Judge Anna M. Loftus, No. 2102